# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

BRIAN MCNEAL

CIVIL ACTION

VERSUS

NO. 18-736-JWD-EWD

LOUISIANA DEPARTMENT OF
PUBLIC SAFETY & CORRECTIONS
JAMES LEBLANC, TIM HOOPER
ROBIN MILLIGAN, UNKNOWN DOES 1-10,
ABC INSURANCE COMPANIES

## RULING AND ORDER

This matter is before the Court on a *Motion for Summary Judgment on False
Imprisonment Claim* (Doc. 12) filed by Brian McNeal ("Plaintiff" or "Mr. McNeal") In response,
Defendant Louisiana Department of Public Safety & Corrections (the "Department of
Corrections" filed a *Memorandum in Opposition to Plaintiff's Motion for Summary Judgment*
(Doc. 21.) In reply, Plaintiff filed a *Reply in Support of Plaintiff's Motion for Summary Judgment
on False Imprisonment.* (Doc. 25.)[1]  In addition, the Department of Corrections, James LeBlanc,
Timothy Hooper, and Robin Milligan (together "Defendants") filed a *Motion for Summary
Judgment.* (Doc. 17.) In response, Plaintiff filed an *Opposition to Defendants' Motion for
Summary Judgment.* (Doc. 24.) In reply, Defendants filed *Reply to Plaintiff's Memorandum in
Opposition to Summary Judgment.* (Doc. 36.) Oral argument is not necessary. Having considered
the facts, the parties' arguments, the applicable law, and for the reasons explained below, the
Court will grant Plaintiff's *Motion for Summary Judgment on False Imprisonment Claim* (Doc.
12) and deny Defendants' *Motion for Summary Judgment* (Doc. 17).

---

[1] Plaintiff also filed two supplements providing legal authority relating to the application of *Heck v. Humphrey* in the
overdetention context. (Docs. 45 and 48.)

<u>RELEVANT FACTS</u>

Mr. McNeal brought this action against the Department of Corrections, Secretary James LeBlanc, Timothy Hooper, and Robin Milligan on June 20, 2018 in state court. (Doc. 1-2.) Defendants removed the case to this Court on August 8, 2018. (Doc. 1.)

On October 26, 2015, Mr. McNeal pled guilty to possession of cocaine and drug paraphernalia in Orleans Criminal District Court, and was sentenced to a five-year sentence, suspended, and with five years of active probation. (Doc. 1-2 at ¶ 19.) Pursuant to a July 2017 arrest, on August 3, 2017, Mr. McNeal's probation was revoked and he was sentenced to be incarcerated for ninety days at the Steve Hoyle Program, in the Bossier Parish Correctional Center. (Doc. 1-2 at ¶ 20-21.) On August 22, 2017, the Department of Corrections sent a release letter to the Steve Hoyle program directing it to release Mr. McNeal on November 1, 2017. (Doc. 12-3 at 3.) The letter states, "This is your authority to release the offender on 11/01/2017, as having completed said sentence that was imposed at the time of revocation." (Doc. 12-7 at 1.) On September 5, 2017, Mr. McNeal was determined to be unfit for the Steve Hoyle Program and was incarcerated at the Elayn Hunt Correctional Center (Doc. 1-2 at ¶23.) The Department of Corrections did not forward Mr. McNeal's release letter to the Elayn Hunt Correctional Center. (Doc. 12-3 at 7.)

November 1, 2017 was Mr. McNeal's correct and legal release date. (Docs. 12-7 at 1; and 12-3 at 3.) Mr. McNeal was not released on November 1, 2017. (Doc. 12-7 at 1.) On November 15, 2017, Mr. McNeal wrote the Warden asking why he was not allowed to go to court, because he was "suppose[d] to be released into a drug program." (Doc. 12-5 at 1) Mr. McNeal asked the Warden for his help to "find out what's going on" and "fix this matter." (Doc. 12-5 at 1.) Mr. McNeal also informed the Warden that his phone pin stopped working so he could not call anyone for help. (*Id.*) A handwritten response to the letter rejecting it reads, "the transfer

documents would have been sent for you to be transported" and "you must contact the phone department in regards to your telephone." (*Id.*)

After November 1, 2017, Plaintiff's girlfriend Crystal made phone calls on his behalf. (Doc. 12-6 at 4.) For example, on December 6, 2017, Crystal spoke with Mr. Peter Pobocik, Plaintiff's probation officer and a Department of Corrections employee, who informed her that Mr. McNeal was supposed to have been released on November 1, 2017. (Doc. 12-6 at 4.) Mr. Pobocik's Narrative Report details, "CC with subject's GF Crystal. She reports that he is still being held at Hunt. Subject was doing a 402 and scheduled to be released 11/1/17. Cajun shows he was released on that date. Forwarded to supervisor for clarification." (Doc. 12-6 at 4.) On December 8, 2017, Department of Corrections was made aware of Mr. McNeal's overdetention. (Doc. 12-4 at 3-4.) On December 11, 2017, Jennifer Bush at the Department of Corrections emailed Elayn Hunt Correctional Center writing, "the offender was thought to be at a different facility," and the attached release letter states, "[t]his is your authority to release the offender as of 11/1/2017, as having completed said sentence that was imposed at the time of revocation." (Doc. 12-7.)

The Louisiana Department of Corrections imprisoned Mr. McNeal from November 1, 2017 to December 12, 2017, excepting for trips to court. (Doc. 12-3 at 2.) Mr. McNeal was released from Elayn Hunt Correctional Center on December 12, 2017. (Doc. 12-3 at 7.) Therefore, Mr. McNeal was held for 41 days past his legal release date. (Doc. 12-3 at 8.)

Plaintiff does not allege that he previously invalidated the nature and duration of his confinement. (Doc. 1-2.) He has not been a part of any other civil action, other than the present action. (Doc. 1-2.) Outside of his letter to the Warden, Plaintiff did not utilize the grievance

procedure or file any Administrative Remedy Procedures pertaining to his incarceration. (Doc. 17-3 at 9.)

PARTIES' ARGUMENTS

*a. Plaintiff's arguments in support of summary judgment on false imprisonment.*

Plaintiff argues that there is no genuine dispute of material fact as to either element of the tort of false imprisonment under Louisiana law. (Doc. 12-1 at 3-4.) Plaintiff maintains that false imprisonment occurs "when one 'restrains another against his will without a warrant or other statutory authority. Simply stated it is restraint without color of legal authority.'" (Doc. 12-1 at 4 (quoting *Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La., 1977)).) As such, the elements to prove false imprisonment are "(1) proof of imprisonment and (2) lack of legal authority." (Doc. 12-1 at 4 (citing *Prisk v. Palazzo*, (La. App. 4 Cir. 1/19/96668) So.2d 415, 417).) Plaintiff argues that under Louisiana law, there is no intent or other knowledge requirement. Therefore,

> The fact that the jailer is without personal knowledge that the prisoner is held unlawfully does not constitute a defense to an action for false imprisonment . . . In such circumstance, as in the one before us, ignorance of the law is no excuse.

(Doc. 12-1 at 4 (quoting *Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1968)).)

Plaintiff argues that the first element, whether there was an imprisonment, is undisputed. (Doc. 12-1 at 5.) The parties agree that Mr. McNeal was imprisoned at the Ealyn Hunt Correctional Center from August 1, 2017 to December 12, 2017. (Doc. 12-1 at 5.) Likewise, Plaintiff argues that the second element, whether there was a lack of legal authority, is met because the sentence expired on November 1, 2017. (Doc. 12-1 at 5.) The parties agree that Mr. McNeal was held for 41 days past his legal release date. (Doc. 12-1 at 6.) As both elements for the tort of false imprisonment have been met, Plaintiff argues his *Motion for Summary Judgment on False Imprisonment Claim* should be granted. (*Id.*)

*b. Defendants' response and arguments in support of summary judgment.*

1. Plaintiff's claim is barred by *Heck v. Humphrey* and its progeny.

Defendant argues that *Heck v. Humphrey* applies to bar the Plaintiff's claim because the false imprisonment claim bears on the validity and duration of his confinement. (Docs. 17-1 at 4-5; 21 at 2-3.) Defendants assert that *Heck v. Humphrey* "held that a prisoner's § 1983 claims [are] not cognizable where 'a judgment in favor of the Plaintiff would necessarily imply the invalidity of his conviction or sentence.'" (Doc. 17-1 at 4 (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).) Defendants maintain that the progeny of *Heck*, hold:

> [A] state prisoner's § 1983 action is barred (absent prior invalidation—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to a conviction or internal prison proceedings)—if success in that action would *necessarily demonstrate the invalidity of the confinement or its duration*.

(Doc. 17-1 at 5 (quoting, *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005)).) Defendants' argue that if Plaintiff proves his case, then he would "inherently demonstrate that (1) the *nature* of his confinement was illegal (that the defendants had no authority to hold him) and that (2) the *duration* of his confinement was illegal (he was held for 41 days past his release date)." (Doc. 17-1 at 5.) Therefore, Defendants argue *Heck* applies. (Doc. 17-1.)

Defendants point to the fact that Plaintiff's confinement has not been previously invalidated. (Doc 17-1 at 6.) Defendants argue that "[u]nder *Heck*, a § 1983 case is barred unless the plaintiff can demonstrate that the nature and duration of his confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal or called into question by a federal court's issuance of a writ of habeas corpus." (Doc. 17-1 at 6.). Because Plaintiff has not sought to invalidate his confinement, Defendants maintain that *Heck* applies and the claim is barred. (Doc. 17-1 at 6-7.)

2. Plaintiff's claim is barred because he failed to exhaust his administrative remedies prior to filing suit.

Defendants argue in the alternative that because Plaintiff failed to pursue available

administrative remedies under the Louisiana Prison Litigation Reform Act ("LA PLRA"), his

claims should be dismissed. (Doc. 17-1 at 7.) The LA PLRA states:

> No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention of this Paragraph, the court shall dismiss the suit without prejudice.

(Doc. 17-1 at 7 (quoting La. R.S. 15:1184(A)(2)).) Defendants assert that the LA PLRA defines

"civil action with respect to prison conditions" or "prisoner suit" to mean

> any civil proceeding with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include post conviction relief or habeas corpus proceedings challenging the fact or duration of confinement in prison.

(Doc. 17-1 at 7 (citing La. R.S. 15:1181).) Defendants reason that because this is a civil

proceeding challenging the effects of actions by government officials on the lives of persons

confined in prison it is a "prisoner suit" under the LA PLRA. (Doc. 17-1 at 7.) The LA PLRA

further defines "prisoner" to mean:

> any person subject to incarceration, detention, or admission to any prison who is accused of, convicted of, sentenced for, or adjudicated delinquent for a violation of criminal law or the terms or conditions of parole, probation, pretrial release, or a diversionary program. Status as a "prisoner" is determined as of the time the cause of action arises. Subsequent events, including post trial judicial action or release from custody, shall not affect such status.

(Doc. 17-1 at 8 (quoting La. R.S. 15:1181(6)).) Again, Defendants reason that because the state

law causes of action arose during his confinement at the Elayn Hunt Correctional Center,

Plaintiff is a prisoner under the LA PLRA. (Doc. 17-1 at 8.) Therefore, Defendants maintain that

Plaintiff was required to exhaust the available administrative remedies before filing the civil suit,

which he did not. (Doc. 17-1 at 8-9.) Defendants argue that it is appropriate to therefore dismiss

Plaintiff's claims under the LA PLRA. (*Id.*)

    *c.* *Plaintiff's response and reply to Defendants' arguments.*

        1. <u>*Heck* does not apply because Plaintiff does not challenge his conviction or his sentence.</u>

Plaintiff argues that the application of *Heck v. Humphrey* is an affirmative defense that

was not pled in Defendants' answer and is therefore waived pursuant to Fed. R. Civ. P. 15(h).

(Doc. 24 at 2.) Plaintiff also argues that in challenging his overdetention, he does not seek to

invalidate either his conviction or sentence, so therefore *Heck v. Humphrey* does not apply. (Doc.

24 at 3.) Plaintiff also argues that applying *Heck* to an overdetention case would lead to absurd

results because a 41-day overdetention is not sufficient to obtain a ruling from a tribunal. (Doc.

24 at 3.) Further, Plaintiff details that there is no cause of action allowing an overdetention to be

expunged or reversed. (Doc. 24 at 3.)

        2. <u>LA PLRA's exhaustion requirement does not apply to the Plaintiff.</u>

            *a.* <u>*The federal PLRA not the Louisiana PLRA applies in federal court.*</u>

Plaintiff argues that under Fifth Circuit precedent, the federal and not the LA PLRA

applies in federal Court. (Doc. 24 at 4.) Plaintiff directs the Court to *Ferrington v. Louisiana*

*Department of Corrections*, 315 F.3d 529 (5th Cir. 2002), which states, "*Ferrington* is

proceeding in federal, not state court, and his claim is procedurally governed by federal law."

315 F.3d 529, 532 (5th Cir. 2002). Plaintiff argues that under the federal PLRA, a former

prisoner does not have to exhaust administrative remedies. (Doc. 24 at 4-5 (citing *Bernal v.*

*Bexar Cty.*, 757 F. App'x 316, 320 (5th Cir. 2018) ("At the time of his complaint, Bernal was not

incarcerated. Rather, he had served his time. And he sued after his release. The district court was

wrong that Bernal had to exhaust his administrative remedies. It thus erred in dismissing his

complaint.")).) As such, Plaintiff maintains that Mr. McNeal did not have to exhaust administrative remedies to bring his claim. (Doc. 24 at 4-5.)

       *b.  <u>The Louisiana PLRA applies to suits by current prisoners, not former prisoners</u>*

In the alternative, if the Court applies the LA PLRA, Plaintiff argues that the LA PLRA applies only to suits by current prisoners, not former prisoners. (Doc. 24 at 5.) Plaintiff cites *Hebert v. Maxwell*, No. 03-1739, 2008 WL 1733233, at *1–2 (W.D. La. Apr. 14, 2008), which states:

> The plain language of these statutes suggests that the limitations apply only to suits by current prisoners, not former prisoners, and the jurisprudence bears this out. Because the Louisiana statute is so similar to the federal statute, and because we can find no Louisiana cases on point, we rely on federal jurisprudence.

(Doc. 24 at 5.) Because there is no case law applying the LA PLRA to former prisoners, Plaintiff maintains that it does not apply. (Doc. 24 at 5.)

       *c.  <u>Plaintiff was not a prisoner during his overdetention</u>*

In the alternative, Plaintiff argues that under the plain language of the LA PLRA, Mr. McNeal was not a prisoner during his overdetention. (Doc. 24 at 6.) As previously discussed, prisoner is defined by the LA PLRA as:

> any person subject to incarceration, detention, or admission to any prison who is accused of, convicted of, sentenced for, or adjudicated delinquent for a violation of criminal law or the terms or conditions of parole, probation, pretrial release, or a diversionary program.

(Doc. 24 at 6 (citing La. R.S. 15:1181(6).) Plaintiff argues that under this definition, to be a prisoner there must be "(1) actual imprisonment, (2) resulting from legal process. (The actual imprisonment must be linked [to] the legal process, because otherwise a person locked in a private person's basement who was separately accused of a crime would be subject to the L[A] PLRA – an absurd result.)." (Doc. 24 at 6.)

Plaintiff outlines that "once Mr. McNeal's sentence expired, he was no longer a person "accused of, convicted of, sentenced for, or adjudicated delinquent" of any crime. (Doc. 24 at 6.) Therefore, he no longer fit within the definition of prisoner. (*Id.*) This interpretation is consistent, Plaintiff maintains, with the interpretation of the federal PLRA. (Doc. 24 at 6 (citing *Williams v. Block*, No. 97-3826 WJR, 1999 WL 33542996, at *6 (C.D. Cal. Aug. 11, 1999) ("Once Plaintiffs were entitled to be released, any "jail term" that may have existed expired. Therefore, they were not prisoners at the time the alleged injury occurred."); *Watson v. Sheahan*, No. 94 C 6891, 1998 WL 708803, at *3 (N.D. Ill. Sept. 30, 1998) ("This case, however, involves claims by persons who were legally released from the above correctional facilities but were detained over 10 hours before being physically released from custody. Thus, the PLRA is not applicable to this case."); *Lee v. State, Dep't of Corr. Servs.*, No. 97 CIV. 7112, 1999 WL 673339, at *4 (S.D.N.Y. Aug. 30, 1999) ("Second, and more importantly, the PLRA does not apply to the instant case. Section 1997e(h) defines the term "prisoner" as "any person incarcerated, or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." 42 U.S.C. § 1997e(h). Here, Plaintiff's son does not fall within the express terms of the statutory definition, because even though he was detained, he was never accused or convicted of a crime.")

> d. *The Louisiana PLRA does not bar Plaintiff's claims because the 90-day administrative grievance window had not passed when he was released.*

In the alternative, Plaintiff argues that the LA PLRA does not apply because Mr. McNeal was released before the deadline expired to file a grievance under La. R.S. 15:1172(B)(1). (Doc. 24 at 7.) Plaintiff asserts that under La. R.S. 15:1172(B)(1), an offender has 90 days to file an administrative grievance. (Doc. 24 at 7.) Therefore, because he was released before that deadline, he did not have access to the prison grievance system. (Doc. 24 at 7.) Further, Plaintiff maintains

that under the Louisiana Administrative Code § 101(C), the Administrative Remedy Procedure is for offenders and not ex-offenders. (Doc. 24 at 7, (citing *see also Evans v. Cameron*, No. 3:09-CV-17-KRG-KAP, 2009 WL 3415160, at *2 (W.D. Pa. Oct. 22, 2009)).)

      *e.*  *Plaintiff sent the warden a letter asking for help.*

Plaintiffs also argue that because Mr. McNeal sent the Warden a letter asking him to correct the overdetention, which was rejected, the purpose of the LA PLRA was satisfied. (Doc. 24 at 7-8.)

   d.  *Defendants' reply to Plaintiff's response in opposition*
      1.  <u>*Heck v. Humphrey* applies to bar Plaintiff's claim.</u>

Defendants argue that because *Heck* applies to imprisonment, and substantive determinations as to the length of confinement, it applies in this case. (Doc. 36 at 2, (citing *Wilkinson v. Dotson*, 544 U.S. 74, 84 (2005)).) Defendants point the Court to *Randell v. Johnson* in which the Fifth Circuit held, "Because Randell is seeking damages pursuant to § 1983 for unconstitutional imprisonment and has not satisfied the favorable termination requirement of *Heck,* he is barred from any recovery." (Doc. 36 at 2 (citing *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000)).) Defendants maintain that courts in Texas, Louisiana, and Mississippi apply *Heck* to claims of illegal imprisonment. (Doc. 36 at 3.) [2]

---

[2] Defendant cites among other cases from Texas: *Gurrola v. Perry*, No. V-13-006, 2013 U.S. Dist. LEXIS 46374, at *3 (S.D. Tex. Feb. 4, 2013) (applying *Heck* to bar claim for illegal imprisonment when Plaintiff "pursuant to prior Texas law, [] would now be entitled to release on parole because his good-time credits plus flat time served equals or exceeds his ten-year sentence."); *Redo v. BOT Warehouse Classification Dep't*, No. H-09-0679, 2009 U.S. Dist. LEXIS 51450, at *2 (S.D. Tex. June 17, 2009) (applying *Heck* when Plaintiff sued for illegal imprisonment when his supervised release date was changed because an "audit revealed an error in his first jail date. The records were corrected to reflect that his first jail date was October 7, 1991, not August 2, 1990. This caused Redo's projected release date and maximum discharge date to be postponed."); *Gaddis v. Beaumont*, No. 1:12cv547, 2012 U.S. Dist. LEXIS 183015, at *1 (E.D. Tex. Dec. 3, 2012) (applying *Heck* to bar a claim that prison officials did not properly calculate his sentence under the good time law.). Defendant cites among other cases from Louisiana: *Sam v. Avoyelles Corr. Ctr.*, No. 10-CV-1264, 2010 U.S. Dist. LEXIS 138554, at *1-2 (W.D. La. Nov. 8, 2010) (applying *Heck* to bar a claim when "Plaintiff was convicted of an unknown sex offense and is currently serving the resulting prison sentence. . .. He alleges that his good time release date has passed, yet he is still confined at AVC."); *Fox v. Terrell*, No. 2:12-cv-3161, 2013 U.S. Dist. LEXIS 128536, at *2 (W.D. La. Aug. 7, 2013) (applying *Heck* to bar a claim against prison officials who "refused to credit him with time served in custody in Arkansas."); *Adger v. LeBlanc*, No. 15-0390-BAJ-EWD, 2016 U.S. Dist. LEXIS 182334, at *1 (M.D. La. Dec. 6, 2016) (applying *Heck* to

Defendants also argue that the *Heck* procedural bar is not waived when it is not pled as an affirmative defense because it is similar to sovereign immunity and cannot be waived through removal. (Doc. 36 at 4-5.)

    2.  <u>Plaintiff was required to exhaust remedies under the LA PLRA.</u>

Defendants also argue that the LA PLRA applies, and that Plaintiff was required to exhaust his administrative remedies before bringing state law claims. (Doc. 36 at 6.) First Defendants insist that the federal PLRA applies to claims brought under federal law, not claims brought in federal court. (Doc. 36 at 6 (citing 42 U.S.C. 1997e(a)).)

Second, Defendants argue that the LA PLRA applies to "prisoners" and to "prisoner suits" as defined under the statute. (Doc. 36 at 6.) Defendants assert that the definition of "prisoner" provides that "status as a prisoner is determined as of the time the cause of action arises. Subsequent events including post trial judicial action or release from custody, shall not affect such status." (Doc. 36 at 6 (citing La. R.S. 15: 1181(6)).) Similarly, Defendants contend that the Louisiana Corrections Administrative Remedy Procedure defines "offender" as "an adult or juvenile offender who is in the physical or legal custody of the Department of Public Safety and Corrections, . . . Any subsequent event, including posttrial judicial action or release from custody, shall not affect status as an "offender" for the purposes of this Part." (Doc. 36 at 6 (citing La. R.S. 15:1174(2)).) "Prisoner suit" under the LA PLRA is defined as "any civil proceeding with respect to the conditions of confinement or the effects of actions by government

---

bar a claim that "prison officials have violated his constitutional right to due process by improperly confiscating an excessive amount of his accrued good time credits toward early release."). Defendant cites among other cases from Mississippi: *Hudson v. Mississippi*, No. 3:15CV151-MPM-JMV, 2017 U.S. Dist. LEXIS 30439, at *1 (N.D. Miss. Mar. 3, 2017) (applying *Heck* to bar a claim where "The plaintiff alleges that the defendants improperly revoked his post-release supervision on a cyberstalking charge."); *Loucks v. Epps*, No. 2:12-cv-63-KS-MTP, 2013 U.S. Dist. LEXIS 8456, at *1 (S.D. Miss. Jan. 22, 2013) (applying *Heck* to bar a claim that "MDOC will not place him in "trusty status" or provide him with good-time credits or earned time credits because they have incorrectly classified his offense as a sex offense.")

officials on the lives of persons confined in prison, but does not include post conviction relief or habeas corpus proceedings challenging the fact or duration of confinement in prison." (Doc. 36 at 7 (quoting La. R.S. 15:1181(5)).) Defendants argue that because he was confined at Elayn Hunt Correctional Center, Mr. McNeal was a prisoner under the Act and that this is a prisoner suit under the Act. (Doc. 36 at 6-7.)

Third, Defendants maintain that the Louisiana Administrative Code provides that under La. R.S. 15:1174(2)'s definition of "offender," Mr. McNeal still had to abide by the exhaustion procedure because release from custody does not change the status of the "offender." (Doc. 36 at 7.) Defendants also outline that an offender who has been released from custody has access to the grievance system because the Louisiana Administrative Code provides:

> If an offender is discharged before the review of an issue is completed that affects the offender after discharge, or if he files a request after discharge on an issue that affects him after discharge, the institution shall complete the processing and shall notify the offender at his last known address. All other requests shall be considered moot when the offender discharges and the process shall not be completed.

La. Admin. Code Tit. 22, Pt I, § 325. As such, Defendants maintain that Plaintiff needed to, at a minimum, follow the administrative remedy procedure before filing the suit, alerting the Department of Corrections that he was seeking damages. (Doc. 36 at 7-8.)

Last, Defendants maintain that regardless of whether Plaintiff's letter to the warden constituted an action under the LA PLRA, he did not take action at the departmental level, so he failed to exhaust his administrative remedies. (Doc. 36 at 8.)

<u>APPLICABLE STANDARD</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the

material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir.1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1263 (5th Cir. 1991).

## ANALYSIS

*a. The elements of false imprisonment under Louisiana law.*

Under Louisiana law, "[a]claim for false arrest requires the following elements: (1) detention of the person; and (2) the unlawfulness of the detention. *Richard v. Richard*, 11-0229 p. 5 (La. 10/25/11), 74 So. 3d 1156, 1159 (citing *Kennedy v. Sheriff of East Baton Rouge,* 05–1418 (La.7/10/06), 935 So.2d 669.) Further, "[m]alice is not a necessary element of the tort of false imprisonment and is immaterial except as it may affect the question of damages." *Tabora v. City of Kenner*, 94-613 p. 8 (La. App. 5 Cir. 1/18/95), 650 So. 2d 319, 322, *writ denied,* 95-0402 (La. 3/30/95), 651 So. 2d 843. The Fifth Circuit has explained:

> Detention of a prisoner for over "thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process." *Douthit v. Jones,* 619 F.2d 527, 532 (5th Cir.1980). Our precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison. We have explained that "[w]hile not a surety for the legal correctness of a

13

> prisoner's commitment, [a jailer] is most certainly under an obligation, often statutory, to carry out the functions of his office. Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release." *Whirl v. Kern,* 407 F.2d 781, 792 (5th Cir.1969) (internal citations and footnote omitted).

*Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1968) ("The tort of false imprisonment is an intentional tort. It is committed when a man intentionally deprives another of his liberty without the other's consent and without adequate legal justification. Failure to know of a court proceeding terminating all charges against one held in custody is not, as a matter of law, adequate legal justification for an unauthorized restraint. Were the law otherwise, Whirl's nine months could easily be nine years, and those nine years, ninety-nine years, and still as a matter of law no redress would follow. The law does not hold the value of a man's freedom in such low regard.")

There is no genuine dispute as to any material fact regarding the elements of false imprisonment. Both parties agree that Mr. McNeal was imprisoned at the Ealyn Hunt Correctional Center for 41 days following his correct release date. Although the elements of false imprisonment are established, Defendants' *Motion for Summary Judgment* and the Department of Correction's opposition, argue that there are procedural bars that apply to prohibit Plaintiff's claims.

b. *Does Heck v. Humphrey bar Plaintiff's claim?*

Defendants seek to apply *Heck v. Humphrey* to bar Plaintiff's claims relating to his overdetention in the Ealyn Hunt Correctional Center.[3] Chief Judge Shelly Dick, of this District

---

[3] As is clear from the complaint, Plaintiff was released from incarceration at the time his lawsuit was filed and one might understandably argue that, since he is no longer in custody and cannot seek habeas corpus relief, it is impossible for him to satisfy the favorable termination rule and therefore, if *Heck* applies literally, he is left with no remedy for his overdetention. Indeed, in his concurring opinion in *Heck*, Justice Souter anticipated this problem and thought *Heck* should not apply to persons released from custody because such persons, no longer having access to the habeas remedy, would be denied any federal forum in which to pursue their claim for deprivation of federal rights. 512 U.S. at 500 (Souter, J., concurring). Such a result would clearly run afoul of the aspiration, if not the rule, announced in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 162-63 (1823): "If he has a right, and the right has been

violated, do the laws of this country afford him a remedy? The very essence of civil liberty consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection." This ideal derives from the British common law: "that every right, when with-held, must have a remedy, and every injury its proper redress." William Blackstone, Commentaries on the Laws of England, 23; *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 162-63 (1823).

However, Justice Scalia, writing for the Court in *Heck*, countered Souter's concern this way:

Justice Souter also adopts the common-law principle that one cannot use the device of a civil law tort action to challenge the validity of an outstanding criminal conviction, but thinks it necessary to abandon that principle in those cases (of which no real-life example comes to mind) involving former prisoners who, because they are no longer in custody, cannot bring postconviction challenges. We think the principle of barring collateral attacks – a longstanding and deeply rooted feature of both the common law and our own jurisprudence – is not rendered inapplicable by the fortuity that a criminal is no longer incarcerated."

*Id.* at 490 n.10. A February 17, 2019 article from The Times-Picayune gives examples of prisoners who served more time than they were sentenced to serve. Richard Webster and Emily Lane, *Louisiana Routinely Jails People Weeks, Years After Their Release Dates*, https://expo.nola.com/news/g66I-2019/02/3eb5c1dfa86460/louisiana-routinely-jails-people-weeks-months-years-after-their-release-dates.html (last visited March 16, 2019).

Since *Heck*, some circuits (the Second, Fourth, Sixth, Seventh, Ninth, Tenth, and Eleventh) have adopted the approach suggested by Justice Souter's concurring opinion in *Heck*. *See Burd v. Sessler*, 702 F.3d 429, 435 n.3 (7th Cir. 2012); *Cohen v. Longshore*, 621 F.3d 1311, 1316–17 (10th Cir. 2010); *Wilson v. Johnson*, 535 F.3d 262, 267–68 (4th Cir. 2008); *Powers v. Hamilton Cty. Pub. Defender Comm'n*, 501 F.3d 592, 602–03 (6th Cir. 2007); *Harden v. Pataki*, 320 F.3d 1289, 1301–02 (11th Cir. 2003); *Nonnette v. Small*, 316 F.3d 872, 876–77 (9th Cir. 2002); *Huang v. Johnson*, 251 F.3d 65, 75 (2nd Cir. 2001); *see also* Alice Huang, *When Freedom Prevents Vindication: Why the Heck Rule Should Not Bar a Prisoner's § 1983 Action in Deemer v. Beard*, 56 B.C. L. Rev. E. Supplement 65 (2015); John P Collins, *Has All Heck Broken Loose? Examining Heck's Favorable Termination Requirement In the Second Circuit after Proventud v. City of New York*, 42 Fordham Urban L.R. 451 (December 2014).

But the Fifth Circuit is not among those which have taken the Souter view of *Heck*. *See Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000); *Black v. Hathaway*, 616 F. App'x 650 (5th Cir. 2015). In Black, the plaintiff argued that the 2004 case of *Muhammad v. Close*, 540 U.S. 749 (2004), had made clear that the issue of whether Heck applied to one released from incarceration is an undecided one, relying on footnote 2, which states "Members of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the *Heck* requirement. This case is no occasion to settle the issue." 540 U.S. at 752 n.2 (citations omitted). But the Fifth Circuit rejected that argument, albeit with some hesitation: "We recognize that *Muhammad* comes into tension with our decision in *Randell*. Muhammed indicates that *Heck*'s statement that the favorable termination rule applies to former prisoners is dicta; *Randell*, in contrast, relied on the fact that the *Heck* court had reached an 'unequivocal []' holding to conclude that the rule extended to former prisoners. But *Muhammed* only stated that the application of the favorable-termination rule after a prisoner's release remains unsettled. *Muhammed* failed to effect a change in the law that would allow this panel to revisit the court's decision in *Randell*." Id. at 653-54; *See Walker v. Munsell*, No. 06-867-JJB-SCR, 2007 WL 3377202 (M.D. La. Oct. 1, 2007).

Were the Court deciding this issue with a clean state, it would endorse the conclusion and language of Judge Bennet of the Northern District of Iowa who, in adopting Justice Souter's position in *Heck*, stated that "[i]n order to ensure the protection of an individual right, more than mere enumeration of that right is required. Without also a means of redress, an individual right becomes illusory due to the inability to enforce that right." *Dible v. Scholl*, 410 F. Supp. 2d 807, 808 (N.D. Iowa 2006). Applying *Heck* to those no longer incarcerated would render those rights, in Judge Bennet's words, "nothing more than a mirage – appearing to exist at first glance, but transforming into an illusion upon careful inspection due to the lack of a federal forum in which to enforce them." *Id.* But, of course, the Court is bound by the Fifth Circuit's opinions in *Randell* and *Black*. If this case merely involved a formerly incarcerated individual bringing a § 1983 action, the Court would be bound to apply *Heck*. However, as the Court explains in this case, *Heck* does not apply because the false imprisonment claim does not challenge the validity or duration of his confinement.

recently explained the applicability of *Heck v. Humphrey* in an overdetention case that is factually similar to this case. Judge Dick stated:

> Defendants also move to dismiss Plaintiff's claims, arguing that the *Heck v. Humphrey* doctrine bars Plaintiff's claims because they bear on both the validity and duration of his confinement. In *Heck*, the Supreme Court held that a convicted person cannot collect damages for an unconstitutional conviction or imprisonment under Section 1983 unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ..., or called into question by a federal court's issuance of a writ of habeas corpus." Such a complaint must be dismissed if a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Plaintiff maintains that he does not, in any way, challenge his underlying conviction or sentence, and this *Heck* argument has been rejected by Louisiana district courts. Plaintiff is correct.

This Court rejected the same arguments raised by the DOC and LeBlanc in *Thomas v. Gryder*. The Court explained:

> The "favorable termination" requirement of Heck prohibits a criminal defendant's collateral attack on the defendant's conviction or sentence. Here, however, Plaintiff does not seek to collaterally attack either his conviction or his sentence. Instead, all parties agree that on January 23, 2013, Plaintiff pleaded guilty in Orleans Criminal District Court and was sentenced as follows: (1) Count 1: sexual malfeasance in prison – five years; (2) Count 2: sexual battery – two years; and (3) Count 3: second degree kidnapping – five years. The parties further agree that Plaintiff's correct release date was June 5, 2015. Nothing in the instant action would invalidate either Plaintiff's conviction or sentence, and Defendants cite the Court to no cases in which the unique fact pattern at issue here was considered. Accordingly, the Court finds that Plaintiff's claims are not *Heck* barred.

The *Traweek* court reached the same conclusion:

> By seeking to impose the *Heck* procedural bar to Mr. Traweek's claims, the defendants emphasize form over substance, begin from a faulty assumption, and ignore a critical component of *Heck* that is absent here. If Mr. Traweek succeeds on the merits, neither his underlying conviction for aggravated battery nor his seven-month sentence will be impliedly invalidated. *See id.* at 486, 114 S.Ct. 2364 (the favorable termination rule does not bar a § 1983 suit when "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff."). Here, Mr. Traweek challenges neither his conviction nor his sentence. He accepts both. Therefore, the reasoning underlying *Heck*'s favorable termination prerequisite is simply not

implicated: it would be illogical to require Mr. Traweek to first seek to invalidate his conviction or sentence in order to proceed in this lawsuit. The constitutional violation he advances here is that he was imprisoned 20 days past his release date; he does not take issue with his criminal judgment of conviction or the sentence rendered, but, rather, challenges the constitutionality of the administration of his release after he had served his sentence. Mr. Traweek alleges that his jailers failed to timely release him once the legal basis to incarcerate him had expired by court order. The only conduct the factfinder will probe is that performed by jail officials in administering his release after his release date.

Another Section of this Court has rejected Secretary LeBlanc's attempt to invoke Heck in a factually-similar overdetention context, *Grant v. Gusman*, 17-cv-02797, R. Doc. 46 (E.D. La. March 27, 2018) (Brown, C.J.). There, the plaintiff, who had served seven years in state custody, was arrested upon his release based on a warrant issued years earlier for a different crime predating the one for which he served the seven-year prison term. The plaintiff pled guilty and the state court sentenced him to "a one year sentence, with credit for time served for the seven years he had just served." *Id.* at 3. Like Mr. Traweek, an administrative logjam between OPSO and DOC caused the plaintiff to be detained an additional 27 days after his sentencing, notwithstanding the state trial court's order (and the judge's email directly to OPSO's attorney directing) that Grant's release be expedited. *Id.* at 3-5. In moving to dismiss Grant's § 1983 claims, Secretary LeBlanc also invoked *Heck*. Chief Judge Brown rejected the argument, noting "[p]laintiff does not argue that his conviction or sentence were invalid.... [H]e contends that DOC Defendants violated his constitutional rights by failing to release him from prison. Therefore, *Heck v. Humphrey* is not applicable to this case." *Id.* at 32. This reasoning applies equally to Mr. Traweek, who, like Grant, challenges neither his conviction nor the length of his court-ordered sentence; he simply alleges that the overdetention by his jailers' failure to timely process his release following his court-ordered time-served judgment exceeds constitutional bounds.

 Mr. Traweek's lawsuit, if successful, will not demonstrate or imply the invalidity of any criminal judgment or court-imposed sentence. He simply alleges that the procedures and action (or inaction) that caused him to be incarcerated for 20 days longer than his criminal judgment permitted unconstitutionally deprived him of his right to due process. *Heck*'s procedural bar is patently inapplicable.

Based on the foregoing, the Court finds that *Heck v. Humphrey* does not bar Plaintiff's claims relating to his alleged over-detention.

*Ellis Ray Hicks v. Department Of Public Safety & Corrections*, No. 19-108-SDD-RLB, 2020 WL

428116, at *6–9 (M.D. La. Jan. 27, 2020) (internal footnotes omitted); *see Thomas v. Gryder*,

No. CV 17-1595-EWD, 2019 WL 5790351, at *4–5 (M.D. La. Nov. 6, 2019); *Chappelle v. Varano*, No. 4:11-CV-00304, 2013 WL 5876173, at *12–13 (M.D. Pa. Oct. 30, 2013); *Leamer v. Fauver,* 288 F.3d 532, 542 (3d Cir. 2002); *Griffin v. Allegheny Cty. Prison*, No. CV 17 - 1560, 2018 WL 6413156, at *4 (W.D. Pa. Nov. 5, 2018), *report and recommendation adopted,* No. CV 17-1560, 2018 WL 6411363 (W.D. Pa. Dec. 6, 2018).

The Court agrees with Judge Dick's analysis and holds that *Heck v. Humphrey* does not bar Plaintiff's claims relating to his overdetention. Defendant's *Motion for Summary Judgment* is DENIED on this issue.

   c.   *Is Plaintiff's claim barred because he failed to exhaust his administrative remedies?*

Plaintiff brings the following causes of action under federal law: (1) a § 1983 claim for the violation of Mr. McNeal's 14th Amendment Rights; and (2) a *Monell* liability claim and a failure to train/supervise claim against Secretary LeBlanc and Warden Hooper. (Doc. 1 at 6.) Defendants do not argue that Plaintiff's federal law claims should be dismissed for failure to exhaust administrative remedies, and therefore the Court does not address the applicability of the federal PLRA to Plaintiff's claims under federal law.

Plaintiff also brings the following causes of action under state law: (a) false imprisonment; (b) negligence; (c) violation of Article One, Section Two of the Louisiana Constitution; (d) *respondeat superior* liability against Secretary LeBlanc and Warden Hooper; and (e) indemnification of claims against any state employees. (Doc. 1.) Defendants argue that the LA PLRA applies to these state law claims and therefore the Court must dismiss the Plaintiff's state law claims because he did not exhaust his administrative remedies prior to filing suit.

1. The LA PLRA applies to state law claims pursued in federal court.

Plaintiff argues that the Court should apply the federal PLRA, not the LA PLRA, because the case is proceeding in federal court. The Fifth Circuit explained that state law concerning an exhaustion requirement applies when courts apply state law, stating:

> Under the Supreme Court's decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts hearing state-law claims apply state substantive law and federal procedural law. But the line between substance and procedure can be a murky one, and exhaustion requirements are among those "matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either." *Hanna v. Plumer*, 380 U.S. 460, 472, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Because the Federal Rules of Civil Procedure do not address administrative exhaustion, we determine whether we should treat the issue as substantive or procedural by looking to "the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws" . . . . *Id.* at 468, 85 S.Ct. 1136. Litigants would engage in forum shopping if federal courts and state courts applied different administrative exhaustion regimes, because some claims could proceed in one court system but not the other. Further, it would be unfair for non-diverse litigants to be able to proceed in state court when diverse but otherwise identically situated litigants could not proceed because their case was in federal court. Thus, we treat administrative exhaustion as substantive for *Erie* purposes and therefore apply Mississippi law. *See Autobahn Imports, L.P. v. Jaguar Land Rover N. Am., L.L.C.*, 896 F.3d 340, 345 (5th Cir. 2018) ("Sitting in diversity, we apply Texas substantive law on the exhaustion question....").

*Lamar Co., L.L.C. v. Mississippi Transportation Comm'n*, 786 F. App'x 457, 460–61 (5th Cir. 2019). Therefore, although this case is in federal court, the Court will apply the LA PLRA and not the federal PLRA to the alleged state law claims. *See Morales v. McCulloh*, No. CV 18-808-SDD-RLB, 2019 WL 2774324, at *3 (M.D. La. July 2, 2019) (applying the LA PLRA to a former inmates state law claims); *Kleinpeter v. Kilbourne*, No. 13-357-JWD-RLB, 2015 WL 7568656, at *8 (M.D. La. Nov. 24, 2015) (applying the LA PLRA).

2. The LA PLRA does not apply because Mr. McNeal was not a "prisoner", and this is not a "prisoner suit."

The LA PLRA states "No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention

of this Paragraph, the court shall dismiss the suit without prejudice." La. R.S. 15:1184A.(b)(2).

Prisoner suit is defined under the statute as:

> [A]ny civil proceeding with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include post conviction relief or habeas corpus proceedings challenging the fact or duration of confinement in prison.

La. R.S. 15:1181(2). Further, prisoner is defined as

> [A]ny person subject to incarceration, detention, or admission to any prison who is accused of, convicted of, sentenced for, or adjudicated delinquent for a violation of criminal law or the terms or conditions of parole, probation, pretrial release, or a diversionary program. Status as a "prisoner" is determined as of the time the cause of action arises. Subsequent events, including post trial judicial action or release from custody, shall not affect such status.

La. R.S. 15:1181(6); *see See Morales v. McCulloh*, No. CV 18-808-SDD-RLB, 2019 WL 2774324, at *3 (M.D. La. July 2, 2019) ("The Court finds that the provisions of the Louisiana PLRA apply to Morales' state law claims because her claims arose while she was incarcerated.")

Louisiana courts consistently hold that the LA PLRA exhaustion requirement applies to prisoner suits. *See Duhe v. St. John the Baptist Par. Sheriff's Dep't*, 17-599 p.8 (La. App. 5 Cir. 4/11/18), 245 So. 3d 1244, 1247, writ denied, 18-0764 (La. 9/21/18), 252 So. 3d 898 ("In the present case, the record is devoid of any evidence that Mr. Duhe pursued administrative remedies prior to filing this lawsuit in the trial court. Because Mr. Duhe failed to exhaust his administrative remedies prior to filing suit, the trial court lacked subject matter jurisdiction to consider his claims."); *see Morales v. McCulloh*, No. CV 18-808-SDD-RLB, 2019 WL 2774324, at *3 (M.D. La. July 2, 2019).

Plaintiff argues that he is not a prisoner under the statute because once Mr. McNeal's sentence expired, he was no longer a person "accused of, convicted of, sentenced for, or adjudicated delinquent" of any crime. Defendant argues that because Plaintiff was confined in

the Elayn Hunt Correctional Center, he is considered a prisoner and that this is a "prisoner suit."[4] The plain language of the statute supports Plaintiff's reasoning that he was not a prisoner. Once he had served all 90 days of his sentence, he was no longer a prisoner because he was not "subject to incarceration, detention, or admission to any prison who is accused of, convicted of, sentenced for, or adjudicated delinquent for" any criminal law. *See Williams v. Block*, No. CIV.97-3826 WJR, 1999 WL 33542996, at *6 (C.D. Cal. Aug. 11, 1999) ("Here, Plaintiffs were entitled to be released and were then detained for varying periods of time until their release could be effectuated. Therefore, Plaintiffs were not "prisoners" within the meaning of § 1997e(h) as they did not fit into any of the definitions provided therein. Indeed, "[c]ontinued confinement cannot legally make [a plaintiff] a 'prisoner' when the jail term has expired; in the eyes of the law plaintiff is no longer a 'prisoner.' " *Sullivan,* 12 Cal.3d at 717."); *see Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) ("[A] jailer has a duty to ensure that inmates are timely released from prison.")

As Defendant points out, however, the definition of "prisoner suit" is broader and encompasses "the effects of actions by government officials on the lives of persons confined in prison." Therefore, Defendant reasons that although Mr. McNeal was no longer a prisoner, during his overdetention he was a "person confined in prison" making this case a prisoner suit.

---

[4] The Louisiana Third Circuit Court of Appeals ruled that the LA PLRA did not apply to a suit in which the plaintiff alleged malicious prosecution and false imprisonment against the district attorney and sheriff for his arrest and prosecution. *Godfrey v. Reggie*, 11-1575 p. 12 (La. App. 3 Cir. 5/2/12), 94 So. 3d 82, 84. The court reasoned:

> the PLRA defines a "prisoner suit" or a "civil action with respect to prison conditions" as "any civil proceeding with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include post conviction relief or habeas corpus proceedings challenging the fact or duration of confinement in prison." La.R.S. 15:1181. The plaintiff's suit does not, as contemplated by La.R.S. 15:1181, challenge the conditions of his confinement or the effects of actions by government officials on his life. Accordingly, we find no merit to the plaintiff's argument concerning the applicability of the PLRA to his suit.

*Godfrey*, 94 So. 3d 82, 91. While *Godfrey* acknowledges that the tort of false imprisonment may fall outside the bounds of the LA PLRA, the plaintiff in *Godfrey* did not allege any claims against the Department of Corrections and is therefore not applicable.

However, Louisiana courts also recognize that the PLRA does not extend to all matters concerning incarceration. *Frederick v. Ieyoub*, 99-0616 p.7 (La. App. 1 Cir. 5/12/00), 762 So. 2d 144, 149, *writ denied,* 00-1811 (La. 4/12/01), 789 So. 2d 581. Specifically, when examining if the PLRA's strike provisions applied to suits challenging the duration of confinement, the Louisiana First Court of Appeals explained:

> The PLRA was enacted by Acts 1997, No. 731, § 1, and became effective on July 9, 1997. The purpose of enacting the PLRA was to provide for civil actions with respect to prison conditions. The definition provision of the PLRA, La.R.S. 15:1181, shows that the legislative intent was to provide for civil actions with respect to prison conditions or effects of officials' actions on prisoners' lives, as opposed to matters concerning incarceration vel non.

> The language of La.R.S. 15:1187, when read in the context of the PLRA as a whole, indicates that the [PLRA strike] sanction is not to apply to all types of civil actions that a prisoner possibly could bring, but only those with respect to prison conditions or officials' actions affecting the lives of those confined in prison. Thus, an action concerning supervision of a person no longer incarcerated does not appear to be an action that might trigger the sanction. Certainly, the sanction would not appear to apply if a person waited until after release from incarceration (even if still on parole) to bring the action.

> The legislative intent of enacting the PLRA and the definition section of the act create, at the very least, an ambiguity as to whether the sanction provisions in La.R.S. 15:1187 are to apply to all civil actions filed by prisoners who are incarcerated or detained, or just to those civil actions that challenge a condition of their confinement or the effects of actions by government officials on their lives.

*Frederick v. Ieyoub*, 99-0616 p.8-9 (La. App. 1 Cir. 5/12/00), 762 So. 2d 144, 149, *writ denied,* 00-1811 (La. 4/12/01), 789 So. 2d 581; *see Williams v. LaSalle Corr. Ctr. L.L.C.*, 51,260 p.4 (La. App. 2 Cir. 4/5/17), 217 So. 3d 1219, 1222, *writ denied,* 17-0759 (La. 9/22/17), 227 So. 3d 825, ("The definition provision of the PLRA, La. R.S. 15:1181, shows that the legislative intent was to provide for civil actions with respect to prison conditions or effects of officials' actions on prisoners' lives, as opposed to matters concerning incarceration *vel non*.").

The Fifth Circuit addressed Louisiana's administrative remedies in *Dillon v. Rogers,* 596 F.3d 260 (5th Cir. 2010). There, the Fifth Circuit explained the availability of administrative remedies under the Louisiana grievance process:

> When "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint," exhaustion is not required under the PLRA because there is no "available" remedy. *Booth v. Churner*, 532 U.S. 731, 736, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *see also Days v. Johnson*, 322 F.3d 863, 867–68 (5th Cir.2003) (per curiam) (finding remedy "unavailable" when prisoner's injury prevented him from filing grievance), overruled by implication on other grounds by *Jones*, 549 U.S. at 216, 127 S.Ct. 910.

*Dillon,* 596 F.3d at 267 (emphasis added). Because a prisoner suit excludes an action seeking a writ of habeas corpus, the Administrative Remedy Procedure is not available as it does not apply to any action seeking habeas corpus relief. La. Admin. Code Pt I, tit. 22, § 325.

As recognized by the Louisiana Courts of Appeals, suits brought challenging the duration of an individual's confinement do not challenge the "the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." La. R.S. 15:1181. Although this is not a habeas corpus case, Plaintiff's state law claims challenge the fact that he was confined without authority, not the conditions of his confinement or the effects of actions of the government officials on his life while he was confined in prison. If Plaintiff were still incarcerated and seeking to be released, he would file a writ of habeas corpus and the LA PLRA would not apply. It seems illogical to the Court that the exhaustion provisions of the LA PLRA would apply to an action of an individual who is no longer confined to prison, seeking damages for the 41 days that the Department of Corrections kept him in prison admittedly without legal authority, when it would not apply to the same facts for a person currently incarcerated seeking habeas corpus relief.

This case is not like the case of a currently incarcerated prisoner, who is seeking a recalculation of good time credits or damages because the Department of Corrections calculations differ from those of the plaintiffs. The Department of Corrections made no administrative decisions in calculating the amount of time Mr. McNeal would serve; both parties agree that Mr. McNeal was sentenced to and served his 90-day incarceration.

Therefore, the Court holds that the LA PLRA does not apply to Mr. McNeal on his state law claims relating to his overdetention in the Elayn Hunt Correctional Center. Defendants' *Motion for Summary Judgment* is DENIED on this issue.

<u>CONCLUSION</u>

**IT IS ORDERED** that Plaintiff's *Motion for Summary Judgment on False Imprisonment Claim* (Doc. 12) is **GRANTED**;

**IT IS FURTHER ORDERED** that the *Motion for Summary Judgment* (Doc. 17) is **DENIED**.

Signed in Baton Rouge, Louisiana, on February 18, 2020.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**