UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BRIAN McNEAL

VERSUS

LOUISIANA DEPARTMENT
OF PUBLIC SAFETY &
CORRECTIONS,
JAMES LEBLANC, and
BREUNKIA COLLINS.

CIVIL ACTION

NO. 18-cv-00736-JWD-EWD

## First Amended Complaint

NOW INTO COURT, through counsel, comes Petitioner Brian McNeal, who states:

1. This is a case about Defendants' imprisonment of a man they knew should be free.

2. According to black-letter law, jailors may not imprison inmates longer than their sentences. Recent Fifth Circuit precedent recognized that "There is a Clearly Established Right to Timely Release from Prison."[1]

3. Once a prisoner's sentence has expired, his jailor has a reasonable amount of time to process and release him. Courts have repeatedly held that the phrase "reasonable time" means some amount of time less than 48 hours.[2] In other words, an inmate who has already served his court-ordered sentence must be released within a reasonable time not to exceed two days. A minute more is unconstitutional and illegal.

---

[1] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (emphasis in the original).
[2] *Barnes v. District of Columbia*, 793 F. Supp. 2d 260 (D.D.C. 2011) ("In recognition of these facts, courts appear to agree that the maximum permissible administrative delay in the overdetention context likely falls well short of the 48-hour horizon set out in *McLaughlin.*"). That is because once a detainee is ordered released, the public's interest in his prompt release is even greater, and the constitutional tolerance for "administrative delay" is substantially less than in the context of arrestees awaiting probable cause determinations – which must come within 48 hours. *See Berry v. Baca,* 379 F.3d 764, 771-72 (9th Cir. 2004); *Powell v. Barrett*, 376 F.Supp.2d 1340, 1353 (N.D.Ga. 2005),

1

4. A jury is often asked to decide whether an overdetention of *less* than 48 hours is constitutional,[3] and juries have found that delay of as little as thirty minutes is unconstitutional.[4] But courts across the country have held, unequivocally, that a detention *beyond* 48 hours of an inmate's known sentence is unreasonable and illegal. Indeed, "[t]he court has been unable to find **any case**, whether within or outside of the Eleventh Circuit, in which the detainment of a properly identified individual for *days* beyond his scheduled release date was held constitutionally permissible."[5]

5. Petitioner Brian McNeal should have been a free man on November 1, 2017. Staff at the DOC knew this, because they issued him a release letter for that date.

6. But they did not set him free on November 1. Instead, they held him in prison until December 12, 2017 – despite the repeated entreaties of Brian, his girlfriend, and his lawyer.

7. Unfortunately, Brian's experience of being held past his release date is neither unique nor even unusual in Louisiana – and the DOC knows it. The day before Brian was incarcerated, the Louisiana Legislative Auditor released a report finding that the DOC had a serious problem of not knowing where its inmates were located, or when their proper release date was.

8. The DOC's own counsel has admitted the pattern of overdetention. On March 8, 2018, Attorney General Jeff Landry wrote an op-ed conceding that there **"is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison."**[6]

9. This cannot be allowed to continue. Brian McNeal files this lawsuit to hold the DOC accountable and to end their practice of imprisoning men and women that should be free.

---

[3] *Berry v. Baca*, 379 F.3d 764, 77072 (9th Cir.2004) (twenty-nine hour delay presented question for jury); *Arline v. City of Jacksonville*, 359 F.Supp.2d 1300, 1310 (M.D.Fla.2005) (two and a half hour delay presented jury question).
[4] *Davis v. Hall*, 375 F.3d 703, 713 (8th Cir. 2004).
[5] *Powell v. Barrett*, 376 F.Supp.2d 1340, 1354 (N.D.Ga. 2005) (bolded emphasis added).
[6] Sen. John Kennedy and Atty. Gen. Jeff Landry, *Criminal justice reform actually hurting public safety*, The Advocate (Mar. 8, 2018) (emphasis added).

**Plaintiff**:

10. Plaintiff <u>Brian McNeal</u> is a person of the full age of majority maintaining a residence in New Orleans, LA. Upon information and belief he respectfully represents the facts and causes of action pled herein against the Defendants.

**Defendants**:

11. <u>Louisiana Department of Public Safety & Corrections</u> ("DOC") is an arm of the State of Louisiana.

12. <u>James LeBlanc</u> is the Secretary for the Louisiana Department of Public Safety & Corrections and a final policymaker. He is sued in his individual and official capacities.

13. <u>Breunkia Collins</u> is a DOC employee who was involved with ensuring Brian's proper release. She is sued in her individual capacity.

**Jurisdiction and Venue**

14. Jurisdiction is proper in this Court This Court has jurisdiction over Plaintiff's claims of federal rights violations, enforceable under the Fourteenth Amendment and 42 U.S.C. § 1983, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). This Court has jurisdiction over Plaintiff's state law claims in accordance with 28 U.S.C. § 1367. Jurisdiction is proper in this Court also because Defendants removed the case from state court.

15. Venue is proper in this Court because a substantial part of the events giving rise to the claim occurred in this district, and because Defendants removed the case from state court.

**Background and Facts**

A. <u>Brian McNeal was held for 41 days past his court-ordered release date</u>.

16. On October 26, 2015, Brian McNeal plead guilty to possession of cocaine and drug paraphernalia in Orleans Criminal District Court. (Case No. 524-699.) He was sentenced to a five-year suspended sentence, with five years of active probation.

17. On July 26, 2017, Brian was rearrested and incarcerated, and a rule to show cause was set regarding potential violation of probation.

18. On August 3, 2017, the judge ordered that: "THE DEFENDANT'S PROBATION BE REVOKE UNDER THE PROVISIONS OF ACT 402 AND THAT THE 90 DAY SENTENCE BE SERVED AT THE STEVE HOYLE PROGRAM." (The Steve Hoyle Program is an in-patient substance abuse program at the Bossier Parish Correctional Center in Plain Dealing, Louisiana.)

19. On August 8, 2017, pursuant to the judge's order, the Department of Public Safety & Corrections ("DOC") issued a Release Letter for Brian McNeal with a November 1, 2017 release date. (90 days from the August 3 sentence.)

20. On August 22, 2017, the DOC via Breunkia Collins sent a release letter to the Steve Hoyle program, directing them to release McNeal on November 1, 2017.

21. Also on August 22, 2017, the DOC sent a request to the Orleans Parish Sheriff, directing them to bring Mr. McNeal to the DOC's Elayn Hunt Correctional Center ("Hunt"), near Baton Rouge

22. On August 29, 2017, McNeal was transferred from the Orleans Parish Prison to the DOC's Elayn Hunt Correctional Center ("Hunt"), near Baton Rouge.

23. Brian was not, however, sent thereafter to the Steve Hoyle Program as the judge ordered. Medical staff at Hunt determined that Mr. McNeal had a mental impairment that disqualified him from the program, and so he continued to be incarcerated at the Hunt Reception and Diagnostic Center ("HRDC").

24. The HRDC is a facility within Hunt that acts as a "waiting room" – inmates are held there while they are assessed, classified, and then sent on to another facility.

25. Because it is supposed to be briefly temporary for any given inmate, HRDC has few of the programs that are available at other facilities. For example, it has no sports, hobbycraft, classes, drug addition programs, *etc*.

26. Thus, at this point, *McNeal's release letter* had been sent to the Steve Hoyle program in Bossier Parish; but *McNeal physically* was being kept at Hunt prison.

27. Ms. Collins specifically knew this to be so: she personally sent the release letter to Steve Hoyle, and she also noted that same day in a separate email that Mr. McNeal was "Detained in Orleans."

28. Neither Ms. Collins nor any other Defendant took any steps to ensure that Mr. McNeal's release letter wound up at the facility he was actually at.

29. On September 21, 2017, a DOC administrative coordinator wrote a letter to the Orleans Parish Clerk of Court asking for the Bill of Information and sentencing minutes, for the purpose of calculating Brian's release date.

30. As of September 27, 2017, Brian McNeal's entry in CAJUN showed no release date. Handwritten notes on a print out of his Sept. 27 CAJUN entry show DOC employee Robin Milligan's handwritten notes telling someone to ask for revocation minutes.

31. In the days leading up to Brian's legal, November 1 release date, Brian spoke to a female deputy at Hunt about the fact that he should be going free on Nov. 1.

32. On November 1, 2017, Brian was not released as legally required.

33. His girlfriend Crystal began making phone calls to find out why Brian hadn't been released. She called the automated inmate information phone line, which gave no release date but said that Brian was under supervision of parole office. Crystal called the New Orleans parole office and told them that Brian was scheduled to be released but hadn't been. The parole office told her to call the automated phone line. Crystal called the automated phone line back, which

5

provided no new information, so she called the parole office back. The parole office told her that they couldn't help her.

34. On November 15, 2017, Brian wrote a letter to the warden of Hunt, explaining that he hadn't been taken to court and hadn't been released as he was supposed to.

35. On November 16, 2017, the warden's office wrote back to Brian: "If your presence was required in court, the proper documents would have been sent for you to be transported." Brian was not released.

36. Later, Brian spoke with a major at Hunt about how he was supposed to be released. Brian was not released.

37. On December 6, 2017, Crystal went to the courthouse. She spoke with Brian's probation officer, Peter Pobocik. She told him that Brian was supposed to be released more than a month ago. Peter said he'd look into it. Crystal also spoke with Brian's lawyer, Stas Moroz of the Orleans Public Defender's Office.

38. Peter Pobocik looked Brian up in his system and saw that Brian was supposed to have been released. He informed his supervisor, Toby Lamy.

39. On December 7, 2017, Peter Pobocik called Crystal back and confirmed that Brian should have been released on November 1, 2017.

40. On December 8, 2017, the New Orleans Probation and Parole office notified DOC headquarters that Brian should be free.

41. On December 11, 2017, Brian's lawyer Stas Moroz sent an email to Agent Lassalle at Probation & Parole about Brian's overdetention. Mr. Moroz also talked to Stacy Brooks at Court Intervention Services, the records department at Hunt, and Judge Herman. The records department at Hunt said they'd look into it and to call Mr. Moroz back, but they did not call Mr. Moroz back.

6

42. At 11:28 a.m. on Dec. 11, 2017, Jennifer Bush at DOC headquarters emailed a release letter to Hunt. It said "This is your authority to release the offender on 11/01/2017, as having completed said sentence that was imposed at the time of revocation." She explained that Brian "was thought to be at a different facility."

43. At 11:32 a.m. on Dec. 11, 2017, Brian McNeal's CAJUN entry was updated to show a Nov. 1, 2017 release date.

44. Staff members at Hunt checked with the Jefferson Parish Sheriff's Office about whether Brian had any outstanding attachments.

45. At 4:19 p.m. on December 11, 2017, the Jefferson Parish Sheriff's Office responded to Hunt via fax that an attachment was still outstanding but that "we would not extradite, subject would get an ROR when released."

46. On December 12, 2017, Brian's lawyer Stas Moroz called the warden's office at Hunt to see why Brian still hadn't been released. He spoke with Debbie and Tanisha White in that office. They said it "wasn't their fault" and blamed probation and parole. Later that day, they called Mr. Moroz back and told him that Brian would be released.

47. Later on December 12, 2017, Brian was finally released from custody, 41 days after his legal release date.

B.  The DOC has a documented, admitted pattern of holding inmates past their release date.

48. The Department of Public Safety & Corrections has a well documented pattern of overdetention. For example, in *Chowns v. LeBlanc*, La. 37th JDC 26-932, DOC employees testified as to the consistent overdetention they observed:

> a. Tracy Dibenetto, a DOC employee, testified that DOC staff have discovered approximately <u>one case of overdetention per week for the last nine years</u>. Ms. Dibenetto also testified that inmates are sometimes incorrectly incarcerated for periods of up to a year.
>
> b. Henry Goines, a DOC employee whose job was to review sentence computations for the assistant secretary, testified that he typically discovered "one or two

7

      [inmates] a week" who were eligible for immediate release.

    c. Cheryl Schexnayder, a DOC records analyst, testified that in the course of her job, she had looked at inmates' sentences and found that they had been done wrong and the inmate was entitled to immediate release.

    d. Sonja Riddick, a DOC employee, responded to the question: "Did you ever find a time when you looked at an inmate's records and you say, this man should be out now?" with the answer: "<u>Oh yes</u>."

49. The DOC's own counsel has admitted to the DOC's pattern of overdetention. On March 8, 2018, Attorney General Jeff Landry wrote an op-ed conceding that there "is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison."[7]

50. After finding no remedy elsewhere, Petitioner has initiated this action in order to recover their damages.

## CAUSES OF ACTION

51. Petitioners assert the following Causes of Action, plead in the alternative where appropriate, against the Defendants.

**Count 1 – False Imprisonment** (Against DPS&C and LeBlanc Only)

52. "The civil cause of action for false imprisonment requires proof of restraint without color of legal authority. . . There is no requirement of proving that the confinement be intentional." *Prisk v. Palazzo,* 668 So.2d 415, 417(La. App. 4 Cir. 1996) (citations omitted.). A custodian's obligation is to see that the sentence imposed is the sentence served. *State ex rel. Pierre v. Maggio*, 445 So.2d 425, 426 (La.1984); *State v. Criminal Dist. Court Parish of Orleans*, 433 So. 2d 712 (La. 1983).

53. On November 1, 2017, the legal authority to detain Brian expired.

---

[7] Sen. John Kennedy and Atty. Gen. Jeff Landry, *Criminal justice reform actually hurting public safety*, The Advocate (Mar. 8, 2018) (emphasis added).

8

54. Defendants had possession of a release letter for Brian with the release date of November 1, 2017.

55. Defendants, however, imprisoned Brian until December 12, 2017.

56. Defendants thus falsely imprisoned Brian when they unlawfully held him past his release date.

### Count 2 – Negligence (All Defendants)

57. Due to their professional roles as jailors, Defendants owed duties to avoid overdetention to the persons in their custody, including Brian. *Chowns v. LeBlanc*, La. 37th JDC 26-932 ("The defendants represent the State of Louisiana. It was their job and responsibility to accurately determine this defendant's, or any person's, correct release date. They have a duty to timely release the defendant."); *Porter v. Epps,* 659 F. 3d 440, 445 (5th Cir. 2011) (a jailor has "not only the duty to protect a prisoner, but also the duty to effect his timely release.")

58. Defendants had a duty to ensure that Mr. McNeal's release letter wound up in the facility he was actually held in.

59. These duties were breached by Defendants' acts and omissions, including the failure to timely release Brian even after repeated inquiries by Brian, Crystal, and Mr. Moroz. *See Chowns v. LeBlanc*, La. 37th JDC 26-932 ("DOC does have a duty to Mr. Chowns, and they have breached that duty".)

60. Defendants' acts and omissions were the cause in fact of Brian's harm because they resulted in his illegal incarceration for 41 days.

61. As a result of Defendants' acts and omissions, Brian suffered actual, forseeable harm.

### Count 3 - Violation of the U.S. Constitution (Against DPS&C and LeBlanc Only)

62. The Fourteenth Amendment Due Process Clause is violated where a prisoner remains incarcerated after the legal authority to hold him has expired. *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980). No privilege enables a jailer to detain a prisoner beyond the period of his

9

lawful sentence. *Whirl v. Kern,* 407 F.2d 781, 791 (5th Cir. 1968); *Powell v. Barrett*, 376 F. Supp. 2d 1340, 1351 (N. D. Ga. 2005) (detainee has constitutional right to be free from continued detention after it was or should have been known that he was entitled to release).

63. Brian McNeal's 14th Amendment rights were violated when he was held for 41 days after the legal authority to hold him had expired. As Defendants were acting under the color of state law, Plaintiff's claims are actionable under 42 U.S.C. § 1983.

**Count 4 - Violation of the Louisiana Constitution** (Against DPS&C and LeBlanc Only)

64. Article One, Section Two of the Louisiana Constitution of 1974 guarantees that "[n]o person shall be deprived of life, liberty, or property, except by due process of law."

65. By reason of the same conduct that violated Brian's federal constitutional rights, Defendants violated his state constitutional rights to liberty and due process.

66. This conduct resulted in Brian's overdetention and caused the physical, emotional and pecuniary damages as described above and below.

**Count 5 - *Monell* and Failure to Train/Supervise** (DPS&C and LeBlanc Only)

67. The misconduct described above was caused by the policies, practices, and customs of Defendants, in that their employees and agents regularly overdetain persons who are subject to release.

68. The above-described widespread practices, which were so well settled as to constitute the *de facto* policy of the Defendants, were allowed to exist because policymakers with authority over these acts exhibited deliberate indifference to the problem, thereby effectively ratifying it.

69. The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

70. Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because Defendants declined to implement sufficient training, sufficient policies, or any legitimate mechanism for oversight or punishment of officers and agents.

## Count 6 – *Respondeat Superior* (DPS&C Only)

71. While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of the DPS&C within the scope of their employment.

72. The DPS&C is therefore liable as principals for all torts committed by its agents.

## Count 7 – Indemnification (DPS&C Only)

73. Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

74. While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of the DPS&C within the scope of their employment.

75. The DPS&C is therefore obligated by Louisiana statute to pay any judgment entered against its employees.

## Remedies

76. Because of the above plead causes of action, Petitioner seeks the following:

    A. Declaratory relief;

    B. Compensatory damages;

    C. Special/punitive damages;

    D. Legal costs and attorneys fees;

    E. A permanent injunction requiring Defendants to end their practice of overdetention;

11

    F.  Other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

77. Petitioner state any and all other causes of action may become known through a trial of this matter on its merits against any and all other parties which are herein named or which may be added later, and request any and all other damages or remedies which this court may deem equitable.

78. Petitioner reserves the right to notice of defect to this pleading and reserve the right to amend or supplement this Petition after discovery of any additional fact, law, or claim, the amendment of which to be performed by the filing of any subsequent pleading.

79. An amicable demand has been made on all Defendants.

WHEREFORE, Petitioners pray that there be judgment in favor of Petitioners and against Defendants, jointly and *in solido* for the full amount of Petitioners' damages, plus legal interest together with all costs incurred in this matter, and any other general or equitable relief that the court deems proper.

        Respectfully Submitted,

        /s/ William Most
        William Most, Bar No. 36914
        David Lanser, Bar No. 37764
        Law Office of William Most, L.L.C.
        201 St. Charles Ave. Suite 114 #101
        New Orleans, LA 70170
        (504) 509-5023
        williammost@gmail.com