**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**BRIAN MCNEAL**                                    **CIVIL ACTION**

**VERSUS**                                         **NO. 18-736-JWD-EWD**

**LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS, ET AL.**

**RULING AND ORDER**

This matter comes before the Court on the *Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction and for Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted* (Doc. 60) filed by Defendants, the State of Louisiana, through the Department of Public Safety and Corrections ("DPSC" or "DOC") and Secretary James M. LeBlanc ("LeBlanc"). Defendant Breunkia Collins ("Collins") joins in the motion. (Doc. 82.) Plaintiff Brian McNeal ("Plaintiff") opposes the motion. (Doc. 78.) Defendants filed a reply. (Doc. 79.) Oral argument is not necessary. The Court has carefully considered the law, the facts alleged in the operative complaint, and the arguments and submissions of the parties and is prepared to rule.  For the following reasons, Defendants' motion is granted in part and denied in part.

I.      **Relevant Factual Background**

      **A.  Introduction**

The following facts are taken from Plaintiff's *First Amended Complaint* (*"Amended Complaint"*), Doc. 59.  They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

This lawsuit arises out of a claim of over-detention of a prisoner. Plaintiff in this case is Brian McNeal. (*Amend. Compl.* ¶ 10, Doc. 59.)  Defendants are (1) the Louisiana Department of Public Safety & Corrections, which is an arm of the State of Louisiana; (2) James LeBlanc,

Secretary of the DPSC and "a final policymaker" sued in his individual and official capacities; and (3) Breunkia Collins, who is "a DOC employee who was involved with ensuring [Plaintiff]'s proper release" and who is sued in her individual capacity. (*Id.* ¶¶ 11–13.)

Plaintiff begins the operative complaint by declaring, "This is a case about Defendants' imprisonment of a man they knew should be free." (*Amend. Compl.* ¶ 1, Doc. 59.) Plaintiff then provides case law for the proposition that "jailors may not imprison inmates longer than their sentences." (*Id.* ¶ 2; *see also id.* ¶¶ 3–4.)

Plaintiff "should have been a free man on November 1, 2017. Staff at the DOC knew this, because they issued him a release letter for that date." (*Id.* ¶ 5.) But, according to the *Amended Complaint*, Plaintiff was held "in prison until December 12, 2017 – despite the repeated entreaties of [Plaintiff], his girlfriend, and his lawyer." (*Id.* ¶ 6.)

Plaintiff also avers that his experience is not unique or unusual and that this is known by the DOC, as evidenced by a Louisiana Legislative Auditor report released the day before Plaintiff was incarcerated that found that "the DOC had a serious problem of not knowing where its inmates were located, or when their proper release date was." (*Amend. Compl.* ¶ 7, Doc. 59.) "The DOC's own counsel has admitted the pattern of over-detention[1]," and the *Amended Complaint* purports to quote a March 8, 2018, op-ed by Attorney General Jeff Landry on this issue. (*Id.* ¶ 8.) Plaintiff "files this lawsuit to hold the DOC accountable and to end their practice of imprisoning men and women that should be free." (*Id.* ¶ 9.)

## B. Plaintiff's Incarceration

On October 26, 2015, Plaintiff pled guilty to possession of cocaine and drug paraphernalia in Orleans Criminal District Court and was sentenced to a five-year suspended

---

[1] "Over-detention" is spelled "overdetention" throughout the *Amended Complaint.* This Court corrects this spelling to "over-detention" throughout this Ruling.

sentence with five years of active probation. (*Id.* ¶ 16.) On July 26, 2017, Plaintiff was rearrested and incarcerated due to an alleged violation of his probation. (*Id.* ¶ 17.) Subsequently, on August 3, 2017, Plaintiff's probation was revoked, and he was sentenced to serve 90 days at the Steve Hoyle Program.[2] (*Id.* ¶ 18.)

On August 8, 2017, the DOC issued a release letter directing that Plaintiff be released on November 1, 2017. (*Id.* ¶ 19.) On August 22, 2017, the DOC via Breunkia Collins sent a release letter to the Steve Hoyle Program, directing them to release Plaintiff on November 1, 2017. (*Id.* ¶ 20.) Also, on August 22, the DOC sent a request to the Orleans Parish Sheriff, directing them to bring Plaintiff to the DOC's Elayn Hunt Correctional Center ("Hunt"). (*Id.* ¶ 21.) Plaintiff was transferred to Hunt on August 29, 2017. (*Id.* ¶ 22.)

Upon arrival to Hunt, Plaintiff was held at the Hunt Reception and Diagnostic Center ("HRDC"). (*Id.* ¶ 23.) The HRDC is a facility within Hunt where inmates are held while they are assessed, classified, and then sent to another facility. (*Id.* ¶ 24.) However, Plaintiff was not sent to another facility, namely the Steve Hoyle Program, as the court had ordered. (*Id.* ¶ 23.) Instead, he continued to be incarcerated in the HRDC at Hunt because he was determined to be unfit for the Steve Hoyle Program. (*Id.*) "Thus, at this point, [Plaintiff]'s release letter had been sent to the Steve Hoyle program in Bossier Parish; but [Plaintiff] physically was being kept at Hunt prison." (*Id.* ¶ 26.)

Plaintiff alleges that Collins specifically knew that his release letter had been sent to the Steve Hoyle Program and that Plaintiff was being housed at Hunt but did nothing to ameliorate

---

[2] The Steve Hoyle Program is an in-patient substance abuse program at the Bossier Parish Correctional Center in Plain Dealing, Louisiana. (*Amend. Compl.* ¶ 18, Doc. 59.)

3

the issue. (*Id.* ¶ 27-28.) Plaintiff further avers that no Defendant took any steps to ensure that his release letter wound up at the facility he was located. (*Id.* ¶ 28.)

On September 21, 2017, a DOC administrative coordinator wrote a letter to the Orleans Parish Clerk of Court asking for the Bill of Information and sentencing minutes in order to calculate Plaintiff's release date. (*Id.* ¶ 29.) On September 27, 2017, Plaintiff's entry in CAJUN[3] showed no release date. (*Id.* ¶ 30.) Plaintiff avers that "Handwritten notes on a printout of his Sept[ember] 27 CAJUN entry show DOC employee Robin Milligan's handwritten notes telling someone to ask for revocation minutes." (*Id.*)

On November 1, 2017, Plaintiff was not released as legally required.  (*Id.* ¶ 32.) After November 1, 2017, Plaintiff's girlfriend Crystal began made phone calls on his behalf. (*Id.* ¶ 33.) Plaintiff alleges that:

> [Crystal] called the automated inmate information phone line, which gave no release date but said that [Plaintiff] was under the supervision of the parole office. Crystal called the New Orleans parole office and told them that [Plaintiff] was scheduled to be released but hadn't been. The parole office told her to call the automated phone line. Crystal called the automated phone line back, which provided no new information, so she called the parole office back. The parole office told her that they could not help her.

> (*Id.*)

On November 15, 2017, Plaintiff wrote a letter to the Warden of Hunt explaining that he had not been taken to court nor had he been released as he should have been. (*Id.* ¶ 34.) The Warden's Office wrote back: "If your presence was required in court, the proper documents would have been sent for you to be transported." (*Id.* ¶ 35.) Plaintiff also spoke with a major at Hunt about the fact that he should have been released on November 1, 2017. (*Id.* ¶ 36.) Despite his efforts, Plaintiff still was not released. (*Id.*)

---

[3] The DOC uses the Criminal and Justice Unified Network (CAJUN) to enter, process, and report on its incarceration activities.

On December 6, 2017, Crystal went to the courthouse and spoke with Plaintiff's probation officer, Peter Pobocik. (*Id.* ¶ 37.) Pobocik informed her that he would look into why Plaintiff had not yet been released. (*Id.*) Pobocik then looked Plaintiff up in his system and saw that he was supposed to have been released more than one month ago. (*Id.* ¶ 38.) Pobocik informed his supervisor of the issue and then called Crystal back to inform her that Plaintiff should have been released on November 1, 2017. (*Id.* ¶ 39.) She also spoke with Plaintiff's lawyer, Stas Moroz of the Orleans Public Defender's Office. (*Id.*)

On December 8, 2017, the New Orleans Probation and Parole Office notified the DOC headquarters that Plaintiff should have already been released. (*Id.* ¶ 40.) On December 11, 2017, Moroz emailed Agent Lassalle at Probation and Parole about Plaintiff's over-detention. (*Id.* ¶ 41.) Moroz also talked to Stacy Brooks at Court Intervention Services, the records department at Hunt, and Judge Herman. (*Id.*) In response to Moroz's call, "The records department at Hunt said they would look into it and call Moroz back, but they did not call [him] back." (*Id.*)

On December 11, 2017, at 11:28 a.m., Jennifer Bush at the DOC emailed Plaintiff's release letter to Hunt explaining that Plaintiff "was thought to be at a different facility." (*Id.* ¶ 42.) The release letter states: "[t]his is your authority to release the offender as of 11/01/2017, as having completed said sentence that was imposed at the time of revocation." (*Id.*) At 11:32 a.m., Plaintiff's CAJUN entry was updated to reflect the November 1, 2017 release date. (*Id.* ¶ 43.) Staff members at Hunt checked with the Jefferson Parish Sheriff's Office about whether Plaintiff had any outstanding attachments. (*Id.* ¶ 44.) At 4:19 p.m., the Sherriff's Office responded that there was an attachment outstanding but that they "would not extradite, subject would get an ROR when released." (*Id.* ¶ 45.)

5

On December 12, 2017, Moroz called the Warden's Office at Hunt to see why Plaintiff

was still in custody. (*Id.* ¶ 46.) Staff in the Warden's Office responded that it "wasn't their fault"

and blamed probation and parole. (*Id.*) Subsequently on December 12, 2017, Plaintiff was

released from custody—41 days after his legal release date. (*Id.* ¶ 47.)

### C. DOC's Pattern of Holding Inmates Past their Release Date

Plaintiff alleges:

[DPSC] has a well-documented pattern of over-detention. For example, in *Chowns v. LeBlanc*, La. 37th JDC 26-932, DOC employees testified as to the consistent over-detention they observed:

a. Tracy Dibenetto, a DOC employee, testified that DOC staff have discovered approximately one case of over-detention per week for the last nine years. Ms. Dibenetto also testified that inmates are sometimes incorrectly incarcerated for periods of up to a year.

b. Henry Goines, a DOC employee whose job was to review sentence computations for the assistant secretary, testified that he typically discovered "one or two [inmates] a week" who were eligible for immediate release.

c. Cheryl Schexnayder, a DOC records analyst, testified that in the course of her job, she had looked at inmates' sentences and found that they had been done wrong and the inmate was entitled to immediate release.

d. Sonja Riddick, a DOC employee, responded to the question: "Did you ever find a time when you looked at an inmate's records and you say, this man should be out now?" with the answer: "Oh yes."

(*Amend. Compl.* ¶ 48, Doc. 59.)  Plaintiff again quotes Attorney General Landry, who said that

there "is a layer of incompetence so deep that the Corrections Department doesn't know where a

prisoner is on any given day of the week or when he should actually be released from prison." (*Id.*

¶ 49.)  Plaintiff avers, "After finding no remedy elsewhere, [he] has initiated this action in order

to recover their damages." (*Id.* ¶ 50.)

**D. Claims and Prayer for Relief [4]**

Count 1 of the *Amended Complaint* is for false imprisonment. (*Id.* ¶¶ 52–56.) On February 18, 2020, this Court granted Plaintiff's motion for summary judgment on this claim and denied Defendants'. (Doc. 56.) The Court found that there was no genuine dispute as to any material fact regarding the elements of false imprisonment and that Plaintiff was entitled to judgment on this claim as a matter of law. The summary judgment ruling in favor of Plaintiff is not challenged here by Defendants.

Count 2 is for negligence. (*Amend. Compl.* ¶¶ 57–61, Doc. 59.) Plaintiff claims all Defendants breached their duty to avoid over-detention, and he lists various acts of negligence. (*Id.*)

Count 3 is under 42 U.S.C. § 1983 for a violation of the Due Process Clause of the Fourteenth Amendment. (*Id.* ¶¶ 62–63.) Plaintiff claims this clause is violated when someone remains incarcerated after the legal authority to hold him as expired and that this occurred here. (*Id.* (citations omitted).)

Count 4 is for a violation of Article One, Section Two of the Louisiana Constitution of 1974, which guarantees that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." (*Id.* ¶¶ 64–66.) This claim parallels Count 3. (*Id.* ¶ 63.)

Count 5 is under *Monell* and for failure to train and supervise. (*Amend. Compl.* ¶¶ 67–70, Doc. 59.) Plaintiff alleges that the above practices are a *de facto* policy which was allowed to happen by the policymaker's deliberate indifference. (*Id.* ¶ 68.) Plaintiff further claims this was the moving force of constitutional violations. (*Id.* ¶ 69.)

---

[4] The only claim against Defendant Collins is Count 2—negligence.

Other claims are against the DPSC only. Count 6 is for *respondeat superior* (*id.* ¶¶ 71–72) and Count 7 is for indemnification. (*Id.* ¶¶ 73–75.)

Plaintiff seeks, *inter alia*, declaratory relief, compensatory damages, special/punitive damages, and "[a] permanent injunction requiring Defendants to end their practice of over-detention[.]" (*Amend. Compl.* ¶ 76, Doc. 59.)

Plaintiff filed suit on June 20, 2018. (*Pet. for Negligence, False Imprisonment, and Violation of Constitutional Rights ("Pet")*, Doc. 1-2 at 1.)  On August 2, 2018, the action was removed to this Court. (Doc. 1.)

## II.    Relevant Standards

### A.  Rule 12(b)(1)

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States,* 899 F. Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). . . .

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Rule 12(b)(6)

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable

expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, [550] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).  The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

## III.    Discussion

Defendants raise five arguments in support of their motion to dismiss: (1) Plaintiff lacks standing to sue for injunctive relief; (2) the DPSC is not a "person" capable of being sued under § 1983; (3) Plaintiff's alternative theories of recovery under Louisiana law are moot due to this Court's prior Ruling, which granted Plaintiff summary judgment on his false imprisonment claim;  (4) Plaintiff failed to sufficiently plead facts permitting special/punitive damages; and (5) Secretary LeBlanc is entitled to qualified immunity in his individual capacity. (Doc. 60.) Each of these will be addressed in turn below.

### A.  Standing

#### 1.  Parties' Arguments

##### a.  Defendants' Arguments

Defendants assert that this Court lacks subject matter jurisdiction over Plaintiff's claims for injunctive relief because Plaintiff does not have standing. (Doc. 60-1 at 2.) Defendants explain, "Standing is determined as of the time that suit is filed." (*Id*. at 2–3 (citing *Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 302 (5th Cir. 2005)).) Defendants argue that because Plaintiff invoked federal jurisdiction, he bears the burden of "affirmatively prov[ing] his

standing to sue for injunctive relief." (*Id.* at 3.) Defendants continue, "Plaintiff fails to plead facts establishing he had standing to sue for injunctive relief at the outset of this litigation." (*Id.* at 3.)

Defendants represent that the *Amended Complaint* fails to allege facts that indicate Plaintiff is currently detained or any facts that show he filed this suit before being released from prison. As such, Plaintiff's alleged injury—over-detention—cannot be redressed by this Court by injunction because Plaintiff has already been released from prison. (*Id.*) Because "a request for an injunction is moot upon the happening of the event sought to be enjoined," this Court lacks constitutional authority to resolve this issue. (*Id.* (citing *Hancock Cty. Bd. of Supervisors v. Ruhr*, 568 F. App'x 295, 299 (5th Cir. 2014)).)

In support of its argument that Plaintiff's claims for injunctive relief are moot, Defendants rely on *Valles v. Samuels*, 506 F. App'x 334, 335 (5th Cir. 2013), in which the Fifth Circuit held, "Because [the Plaintiff] is no longer incarcerated [and] seeks only injunctive relief . . . his claim that prison employees conspired to lengthen his sentence is moot." (Doc. 60-1 at 4.) Thus, Defendants conclude, this Court "cannot order injunctive relief that would provide the Plaintiff with any remedy because he cannot be retroactively re-released from custody." Therefore, "Plaintiff's claims for injunctive relief must be dismissed for lack of standing due to mootness." (*Id.*)

### b.  Plaintiff's Opposition

In opposition, Plaintiff first argues that Defendants' challenge to the Court's subject matter jurisdiction is both untimely and has been waived. (Doc. 78 at 2.) As to timeliness, Plaintiff argues that because this motion was filed almost two years after Defendants filed an answer, it is "thus nearly two years too late to challenge this Court's subject matter jurisdiction." (*Id.* at 3.) As to waiver, Plaintiff contends that "Defendants assented to the subject-matter jurisdiction of this Court" when their counsel signed a joint status report. (*Id.*)

11

Secondly, in the event that subject matter jurisdiction has not been waived, Plaintiff maintains that he does have standing to sue for injunctive relief "under the doctrine of 'capable of repetition but evading review.'" (*Id.*) Under that doctrine, a plaintiff has standing to sue if the duration of the action is too short to be fully litigated and there is reason to expect the complainant will be subject to the same action again in the future. (Doc. 78 at 3.)

Regarding the first prong—duration—Plaintiff argues that his 41 days spent over-detained by the DOC were insufficient in duration to fully litigate the action. (*Id.* at 3–4 (citing *Roe v. Wade*, 410 U.S. 113, 125 (1973)).) Regarding the second prong—reasonable expectation of reoccurrence—Plaintiff asserts that the fact he has been arrested 25 times in the past 23 years provides a "reasonable probability" that he will be injured by the challenged conduct again in the future. (Doc. 78 at 4.) Thus, Plaintiff concludes, this Court should deny Defendants' motion.

### c. Defendants' Reply

In response, Defendants reject all the arguments set forth by Plaintiff. Defendants first note that subject matter jurisdiction may be properly challenged at any point during a proceeding and cannot be waived or assented to. (Doc. 79 at 1–2.) Therefore, they have not waived their right to challenge jurisdiction nor was their challenge untimely. (*Id.*)

Defendants also challenge Plaintiff's reliance on the doctrine of "capable of repetition yet evading review." Defendants argue that for the "capable of repetition" exception to apply, a plaintiff must prove "a reasonable expectation that the same complaining party would be subjected to the same action again." (*Id.* at 2 (citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).) And in this case, Plaintiff's conclusory allegations fail to prove this. Specifically, Defendants reject the notion that Plaintiff's history of arrests suggests a high probability that he will be injured by the challenged conduct in the future by noting that Plaintiff has not been

arrested in almost four years. (*Id.*) Therefore, Plaintiff's possibility of future injury, that he will be over-detained again, is too speculative to support Article III standing. (*Id.* at 3.)

### 2. Applicable Law

Article III of the Constitution limits the purview of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement" is that plaintiffs "must establish they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The standing doctrine is a threshold inquiry to adjudication, which defines and limits the role of the judiciary." *Berry v. LoanCity*, 2019 WL 2870849, at *4 (M.D. La. July 3, 2019) (citing *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 570 F. Supp. 2d 851, 853 (E.D. La. 2008) (citing *McClure v. Ashcroft,* 335 F.3d 404, 408 (5th Cir. 2003))). "It is well settled that unless a plaintiff has standing, a federal district court lacks subject matter jurisdiction to address the merits of the case." *Id.* "In the absence of standing, there is no 'case or controversy' between the plaintiff and defendant which serves as the basis for the exercise of judicial power under Article III of the constitution." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

"[T]he irreducible constitutional minimum of standing consists of three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. at 560–561)). The party invoking federal jurisdiction bears the burden of proving standing. *Id.* The court at the pleading stage bases its decision on the allegations of the complaint, and the complaint must "clearly. . . allege facts demonstrating" each element of standing. *Spokeo*, 136 S. Ct. at 1547 (citing *Warth*, 422 U.S. at 518).

Standing to seek injunctive relief requires plaintiffs to show that they suffer or will suffer an injury-in-fact, and therefore would benefit from the court's granting of such equitable relief. *Perez v. Doctors Hosp. at Renaissance, Ltd*., 624 F. App'x 180, 183 (5th Cir. 2015). The injury in fact requirement is the "[f]irst and foremost" element of standing. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). "Because injunctive and declaratory relief cannot conceivably remedy any past wrong, plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (internal citations omitted).

The injury must be "an invasion of a legally protected interest" that is "concrete and particularized and "actual or imminent, not conjectural or hypothetical" for a court to confer Article III standing. *Lujan,* 504 U.S. at 560. A plaintiff must show that "they face a palpable present or future harm, not harm that is 'conjectural or hypothetical.'" *Levy v. Louisiana Dep't of Pub. Safety & Corr.*, 371 F. Supp. 3d 274, 284 (M.D. La. 2019) (deGravelles, J.)  (quoting *Perez*, 624 F. App'x at 183). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse affects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 95 (1983); *see Plumley v. Landmark Chevrolet, Inc.* 122 F.2d 308, 312 (5th Cir. 1997). "A plaintiff seeking injunctive relief based on an alleged past wrong must show that there is reason to believe that he would directly benefit from the equitable relief sought." *Mosley v. Midas Worthington, LLC*, No. 19-75, 2020 WL 113350, at *3 (M.D. La. Jan. 9, 2020) (deGravelles, J.) (internal citations omitted). "Past wrongs can be considered, however, as evidence of an actual threat or repeated injury." *Perez*, 624 F. App'x at 183. "Future injuries can provide the basis for standing, but they 'must be certainly

impending to constitute injury in fact,' and '[a]llegations of possible future injury are not sufficient.' An injury based on a 'speculative chain of possibilities' does not confer Article III standing." *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)).

### 3. Analysis

In short, Plaintiff lacks standing to sue for injunctive relief. Plaintiff's alleged injury is his 41-day over-detention. (*Amend. Compl.* ¶ 47, Doc. 59.) Based on the DOC's "pattern of holding inmates past their release date," Plaintiff requests "[a] permanent injunction requiring Defendants to end their practice of over-detention." (*Id.* ¶ 76.)

A plaintiff seeking injunctive relief based on an alleged past wrong must show there is a real or immediate threat that he will be wronged again. *Plumley v. Landmark Chevrolet*, 122 F.3d 308, 312 (5th Cir. 1997). Because Plaintiff suffered the injuries alleged in 2017 and is not presently incarcerated, his past exposure to wrongful conduct can only be sufficient for this Court to confer standing if Plaintiff faces a threat of future harm or repeated injury. *See Perez*, 624 F. App'x at 183.

In *City of Los Angeles v. Lyons*, the Supreme Court explained:

Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers. Count V of the complaint alleged the traffic stop and choking incident five months before. That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties.

15

461 U.S. 95, 105, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). The Supreme Court in *Lyons* relied

on *O'Shea v. Littleton*, 414 U.S. 488, 496–97, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974), which

stated:

> Of course, past wrongs are evidence bearing on whether there is a real and
> immediate threat of repeated injury. But here the prospect of future injury rests on
> the likelihood that respondents will again be arrested for and charged with
> violations of the criminal law and will again be subjected to bond proceedings, trial,
> or sentencing before petitioners ... we are nonetheless unable to conclude that the
> case-or-controversy requirement is satisfied by general assertions or inferences that
> in the course of their activities respondents will be prosecuted for violating valid
> criminal laws. We assume that respondents will conduct their activities within the
> law and so avoid prosecution and conviction as well as exposure to the challenged
> course of conduct said to be followed by petitioners.

*Id.* Following *Lyons*, when a plaintiff's standing depends a future arrest, the speculative nature of

any future illegal activity by the plaintiff is insufficient to warrant standing for injunctive relief.

*Wilkins-Jones v. Cty. of Alameda*, No. 08-1485, 2010 WL 2198196, at *3 (N.D. Cal. May 28,

2010) ("The speculative nature of any future arrest, particularly an illegal arrest, is insufficient to

warrant standing for future injunctive relief.").

In addition, as the Honorable Chief Judge Dick of this District recently concluded, when

an inmate is no longer in custody of the agency he sought to enjoin, he may not have standing to

seek injunctive relief. *Carter v. Cain*, No. 17-201-SDD-RLB, 2019 WL 846053, at *5 (M.D. La.

Feb. 21, 2019). Chief Judge Dick found:

> [W]ith respect to the instant case, Terrance Carter is no longer an inmate at LSP.
> His mother, who brings this action on his behalf, is not an inmate at LSP, and she
> pleads no facts suggesting that she faces a "real and immediate" threat of future
> injury. As such, Plaintiff lacks standing to seek prospective injunctive relief
> regarding the conditions at LSP, and her claims for prospective injunctive relief
> against Defendants in their official capacities are hereby dismissed.

*Id.*

Considering the above, the possibility that Plaintiff will be injured in the future by the same conduct challenged here is too speculative for this Court to confer Article III standing. The *Amended Complaint* fails to allege any facts that suggest Plaintiff is likely to be arrested in the future. Plaintiff alleges no facts in the *Amended Complaint* that suggest he faces a "real and immediate" threat of future injury. As such, Plaintiff lacks standing to seek prospective injunctive relief.

Even looking beyond the *Amended Complaint*, Plaintiff fails to prove the injury in fact requirement of standing. Plaintiff asserts in his Opposition that his history of 25 arrests in the past 23 years is sufficient to meet the injury in fact requirement because it provides a "reasonable probability" he will suffer the same harm in the future. (Doc. 78 at 4.) However, "reasonable probability" is not the proper standard in determining whether a future injury meets the injury in fact requirement of standing. Rather, the proper standard requires the future harm to be "certainly impending" or a "substantial risk of harm." *Clapper*, 568 U.S. at 410, 414 n.5. When a theory of standing relies on a "highly attenuated chain of possibilities" for a future injury to occur, the injury in fact requirement of standing is not satisfied. *See id.* at 410. In *Clapper*, the Supreme Court held that a chain of five independent hypothetical events needing to occur before the alleged future harm could occur was too speculative to meet the injury requirement to confer standing.

As Defendants assert here, the chain of events required to occur from the Plaintiff's current position to the future harm is highly attenuated. In fact, the chain of events, at a minimum, required for Plaintiff to suffer the same harm alleged in the *Amended Complaint* requires that (1) he is arrested again; (2) he is convicted of the crime ; (3) he is sentenced to the DOC custody; and (4) he is detained beyond that sentence absent any other legal reason to hold

17

him. Similar to *Clapper*, the chain depends on the occurrence of four hypothetical events dependent on the actions of various third persons for the future injury to occur. Thus, Plaintiff's past exposure to harm is insufficient to satisfy the injury in fact requirement of standing because he failed to show a real or immediate threat that he will be wronged in the future.

Additionally, Plaintiff's reliance on the doctrine of "capable of repetition, yet evading review" is misplaced. (*See* Doc. 78 at 3-4.) Mootness is often referred to as "the doctrine of standing in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth*, 528 U.S. at 170. Despite this common phrasing, the two justiciability doctrines are improperly conflated by Plaintiff. *Id.* ([I]f mootness were simply "standing set in a time frame," the exception to mootness for acts that are "capable of repetition, yet evading review" could not exist."). The "capable of repetition, yet evading review" doctrine applies to mootness, not standing. *Id.* ("Standing admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition, yet evading review will not entitle the complainant to a federal judicial forum."). Without presenting a case or controversy at the onset of litigation, a mootness analysis is unnecessary because mootness applies when standing was present upon the filing of the complaint but ceased to exist at a later stage of the litigation. *Stringer v. Whitley*, 942 F.3d 715, 724 (5th Cir. 2019). Because Plaintiff failed to allege facts in the *Amended Complaint* sufficient to confer standing, the mootness doctrine of capable of repetition yet evading review is inapplicable.

For all these reasons, Plaintiff has failed to satisfy his burden of establishing standing. Accordingly, Plaintiff's claim for injunctive relief is dismissed without prejudice.

### B.  § 1983 Claims against DPSC

#### 1.  Parties' Arguments

Defendants next argue that all § 1983 claims against the DPSC must be dismissed because it is not a "person" capable of being sued under that statute. (Doc. 60-1 at 4.) In response, Plaintiff concedes that the DPSC is not a person capable of being sued under § 1983. (Doc. 78 at 5.)

#### 2.  Analysis

As the parties acknowledge, claims under § 1983 are limited to persons as defined by the statute. "Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law." *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (quoting 42 U.S.C. § 1983). "The Supreme Court has 'held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted.'" *Med. RX/Sys., P.L.L.C. v. Texas Dep't of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (citing *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617, 122 S. Ct. 1640, 1643, 152 L. Ed. 2d 806 (2002)).  "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Id.* (citing *Howlett v. Rose*, 496 U.S. 356, 365, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)).  Thus, the DOC is not a person capable of being sued under § 1983. As such, Plaintiff's § 1983 claims against the DOC are futile and cannot be cured by amendment. Therefore, these claims are dismissed with prejudice. *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("[d]enying a motion to amend is not an abuse of discretion if allowing an amendment would be futile.").

### C.  Plaintiff's Alternative Theories of Liability

#### 1.  Parties' Arguments

##### a.  Defendants' Arguments

Defendants argue that because this Court granted summary judgment in favor of Plaintiff on his false imprisonment claim, Plaintiff's alternative claims for relief under Louisiana law— negligence and violation of the Louisiana Constitution—must be dismissed as moot. (Doc. 60-1 at 5.) Defendants claim that the summary judgment ruling is dispositive of their liability under Louisiana law because the judgment awarded Plaintiff all the relief to which he is entitled under state law. (*Id.*)

Defendants further argue that dismissal of the alternative claims is required in order to prevent double recovery. (*Id*. at 6.) According to Defendants:

> Because the Plaintiff pled three alternative legal theories of why he is entitled to a single award of damages under Louisiana law and because this Honorable Court entered summary judgment on one of the three theories, thus ensuring the Plaintiff fulling recovers under Louisiana law, there is no justiciable action and no relief can *separately* be granted under the two alternative theories. Therefore, Plaintiff's negligence claim and claim under the Louisiana Constitution must be dismissed as moot.

(*Id*. at 6 (emphasis by Defendants).)

##### b.  Plaintiff's Opposition

Plaintiff admits that he was granted partial summary judgment on his claim of false imprisonment. However, because Defendants have not waived their right to appeal, Plaintiff contends that his other two claims are not moot. (Doc. 78 at 5.) Therefore, Plaintiff finds it necessary to resolve the alternative theories of liability in case the false imprisonment judgment is reversed. Plaintiff points out that the jury verdict form will be written in such a way as to ensure that he only recovers once for his damages regardless of the theory of liability. (*Id*. at 5– 6.) Additionally, Plaintiff offers to dismiss his claims for negligence and violation of the

Louisiana Constitution if Defendants will waive their right to appeal and stipulate to their liability under the false imprisonment judgment. (*Id.* at 6.)

### c.  Defendants' Reply

Defendants maintain that the alternative theories of liability are moot. Defendants contend that the issuance of summary judgment "means there are no factual issues remaining for a jury to decide." (Doc. 79 at 3.) Moreover, Defendants question why Plaintiff's alternative theories of liability, "which are based on identical facts and claim identical relief," would not be foreclosed if the appellate court did in fact reverse. (*Id.* at 3–4.)

Defendants reason that if the Fifth Circuit finds Plaintiff's recovery to be procedurally barred, the false imprisonment summary judgment "will be reversed *and* the Plaintiff will not be able to recover under any alternative theory." (*Id.* (emphasis by Defendants).) Furthermore, Defendants argue that the negligence and Louisiana Constitutional violation are necessarily dependent on using the false imprisonment as an element (e.g. false imprisonment was a result of negligence and/or false imprisonment violated due process). (*Id.* at 4–5.) Because the Court has already ruled in Plaintiff's favor, "the jury should not be burdened with deciding irrelevant theories of liability." (*Id.* at 5.) Alternatively, Defendants argue that if the Court finds that there are still issues of fact left to be determined, it "must vacate its ruling." (*Id.*)

### 2.  Analysis

The Court will deny Defendants' motion to dismiss Plaintiff's claims for negligence and state constitutional violations. Importantly, Defendants fail to cite any law for the proposition that because this Court granted Plaintiff summary judgment on one Louisiana law claim, that the others are now moot. Additionally, under the Federal Rules, a plaintiff is allowed to plead in the alternative. Fed. R. Civ. P. 8(d)(2).

Further, Plaintiff made clear that he is not seeking double recovery. Specifically, in his

opposition, Plaintiff points out that the jury verdict will be written in such a way as to prevent double recovery. (*See* Doc. 78 at 5–6.) Plaintiff has also offered the dismiss these charges if Defendants will agree to waive their appeal rights, which they have not done. Therefore, Defendants' motion to dismiss Plaintiff's negligence and state constitutional violation claims is denied.

### D. Special/Punitive Damages

#### 1. Parties' Arguments

##### a. Defendants' Arguments

Defendants first argue that Plaintiff failed to allege facts to identify or support a claim for special damages under Louisiana or federal law. (Doc. 60-1 at 6–7.)  Therefore, Defendants conclude that Plaintiff's special damages claims must be dismissed. (*Id*.)

As to punitive damages under state law, Defendants argue that they are not recoverable in Louisiana except for in cases involving child pornography, driving while intoxicated, and criminal sexual activity on a minor. (*Id.*) Because the current case does not fall within any of those three exclusive categories, the claims must be dismissed.

Finally, as to punitive damages under § 1983, Defendants contend that Plaintiff failed to plead facts that demonstrate Secretary LeBlanc's official conduct was "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights. (*Id*. at 8.) Moreover, Defendants argue that generalized grievances in the *Amended Complaint* directed towards "the Defendants" are insufficient because the Supreme Court has "unequivocally declared[] [that] 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (*Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).) Because Plaintiff failed to "identify conduct attributable to Secretary LeBlanc," the demand for special/punitive damages must be dismissed. (*Id.*)

### b.  Plaintiff's Opposition

Plaintiff argues that he has pled sufficient facts to show that Secretary LeBlanc acted with

"'reckless or callous indifference.'" (Doc. 78 at 6 (citing *Sockwell v. Phelps*, 20 F.3d 187, 192

(5th Cir. 1994)).) In support of his argument, Plaintiff points to specific provisions within the

*Amended Complaint* which allege "a pattern of over-detention," "incompetence," and

"widespread practices" of "[in]sufficient training, [in]sufficient policies," and a failure to

implement "any legitimate mechanism for oversight or punishment of officers and agents." (*Id.*)

Plaintiff further notes that the facts alleged in his *Amended Complaint* are "exactly" the

same as the facts alleged in *Crittindon v. Gusman*, No. 17-512-SDD-EWD (M.D. La. Apr. 13,

2020), in which "this court held that Defendants' patterns 'evince[] a reckless disregard' for

constitutional rights." (*Id.* at 6.) He also cites Secretary LeBlanc's deposition testimony, which

demonstrates "the passivity that this Court has *already* held to be reckless, which is the standard

for punitive damages." (*Id.* at 7 (emphasis by Plaintiff).) Based on the foregoing, Plaintiff

concludes that his *Amended Complaint* is sufficiently clear, but if not, requests leave to amend.

(*Id.*)

### c.  Defendants' Reply

Defendants maintain that Plaintiff alleges no operative facts supporting the contention

that Secretary LeBlanc, individually, committed acts of evil intent or reckless indifference to

Plaintiff's constitutional rights. (Doc. 79 at 5.) In fact, Defendants claim that Secretary LeBlanc

is only mentioned twice throughout the *Amended Complaint*—one of which is in the caption and

the other naming him as a defendant. Defendants also point to Plaintiff's opposition stating that

the allegations referred to by Plaintiff are directed at the DPSC, which has been stipulated as not

being a "person" subject to suit under § 1983. (*Id.* at 5–6 (citing Doc. 78 at 7).)  Other allegations

are too generalized and are not specifically directed at Secretary LeBlanc individually. (*Id.* at 6.)

### 2. Applicable Law

Two standards of punitive damages govern this case.  First, "[p]unitive damages may be awarded [under § 1983] only when the defendant's individual conduct 'is "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights.'" *Bouchereau v. Gautreaux*, No. 14-805, 2015 WL 5321285, at *13 (M.D. La. Sept. 11, 2015) (deGravelles, J.) (quoting *Williams v. Kaufman Cty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (citation omitted)). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*.

Second, as to the state law claims, "[p]unitive damages are not allowed under Louisiana law in absence of a specific statutory provision." *Golden v. Columbia Cas. Co*., No. 13-547, 2015 WL 3650790, at *9 (M.D. La. June 11, 2015) (deGravelles, J.) (citing *Hoffpauir v. Columbia Cas. Co*., No. 12–403, 2013 WL 5934699, at *14 (M.D. La. Nov. 5, 2013) (citing *Zaffuto v. City of Hammond*, 308 F.3d 485, 491 (5th Cir. 2002))).

Additionally, two standards of special damages govern this case. Under Louisiana law, special damages "are those which have a ready market value, such that the amount of damages theoretically may be determined with relative certainty, including medical expenses and lost wages," *Guillory v. Lee*, 16 So.3d 1104, 1118 (La. 2009) (internal quotation marks omitted), and must be specially pled.  *Wainwright v. Fontenot*, 774 So. 2d 70, 74 (La. 10/17/00). Likewise, Federal Rule of Civil Procedure 9(g) requires that special damages be specifically pled. The Fifth Circuit has explained that this rule was "designed to inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the

24

complaint." *Al-Suad v. Youtoo Media, L.P.*, 754 F. App'x 246, 255 (5th Cir. 2018) (citing *Great Am. Indem. Co. v. Brown*, 307 F.2d 306, 308 (5th Cir. 1962)).

### 3. Analysis

Preliminarily, Plaintiff fails to address his claims for special damages or punitive damages under Louisiana law in his opposition. Plaintiff's failure to provide a substantive argument is essentially a waiver and justifies dismissal by itself. *See JMCB, LLC v. Bd. of Commerce & Indus.,* 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("Plaintiff did not respond to the substance of any of SPL's arguments.... On this ground alone, the Court could dismiss Plaintiff's Amended Complaint." (numerous citations omitted)); *see also Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London,* 387 F. Supp. 3d 663, 672 (M.D. La. 2019) (deGravelles, J.) (finding that, because plaintiff failed to respond to defendant's argument on an issue, the Court could conclude that a policy exclusion applied (citing, *inter alia*, *JMCB*, 336 F. Supp. 3d at 634)).

Even looking beyond that waiver, Plaintiff has no right to punitive damages for his claims arising under Louisiana law.  As such, Plaintiff's claims for punitive damages under state law are futile and cannot be cured by amendment. *See Marucci Sports*, 751 F.3d at 378 (An amendment is futile "if it would fail to survive a Rule 12(b)(6) motion."). Therefore, these claims are dismissed with prejudice.

Additionally, Plaintiff fails to allege any facts related to special damages under Louisiana or federal law. Therefore, these claims are dismissed without prejudice. However, as will be addressed below, the Court will grant Plaintiff leave to amend to his complaint to identify the element(s) of special damages claimed and to plead the facts in support thereof.

Finally, Plaintiff fails to state adequate factual allegations to make out a claim for punitive damages under § 1983. Again, under § 1983, punitive damages require evil motive or

25

reckless or callous indifference to federally protected rights of others. *Smith v. Wade,* 461 U.S. 30 (1983). Even taking all of Plaintiff's factual allegations as true, there is no evidence of such conduct by Secretary LeBlanc. Further, Plaintiff fails to allege that LeBlanc was personally involved in any constitutional violation. Therefore, Plaintiff's claim fails and is dismissed without prejudice.

Nevertheless, the Court will act in accordance with the "wise judicial practice" of giving at least one opportunity to amend the operative complaint to cure deficiencies and grant Plaintiff leave to amend to allege specific acts on the part of Secretary LeBlanc. *See JMCB*, 335 F. Supp. 3d at 641–42 (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016)). The Court reminds Plaintiff of his obligations under Rule 11 of the Federal Rules of Civil Procedure. Plaintiff should have a good faith basis in law and fact for any claims he makes. Fed. R. Civ. P. 11(b)(2), (3). While the Court has no reason to doubt Plaintiff's adherence to this rule, the Court issues this reminder as a precaution.

### E. Claims against LeBlanc in his Individual Capacity

#### 1. Parties' Arguments

##### a. Defendants' Arguments

Defendants next assert that LeBlanc is entitled to qualified immunity from suit under § 1983 and the Louisiana Constitution. (Doc. 60-1 at 8.) Defendants point out that the burden is on Plaintiff to overcome the defense of qualified immunity by demonstrating that "(1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." (*Id.* at 9 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).)

As to the first prong—Defendants acknowledge that prisoners have a constitutional right to a timely release. However, Defendants contend that to overcome qualified immunity Plaintiff

26

must do more than just show a generalized right and violation thereof. (*Id*. at 9.) Therefore,

Defendants maintain that to impose personal liability on Secretary LeBlanc, a supervisory

official, "Plaintiff must prove (1) Secretary Leblanc's personal involvement in the constitutional

deprivation and (2) a sufficient causal connection between the Secretary's wrongful conduct and

the constitutional violation, such as where the supervisor implemented or enforced

unconstitutional policies which actually resulted in the Plaintiff's injuries." (*Id*. at 9–10.) And

since the only factual allegation directed toward Secretary LeBlanc is that he is a "final

policymaker," Plaintiff has failed to demonstrate his personal involvement. (*Id*. at 10.)

As to the second prong of qualified immunity—Defendants argue that the law is not

clearly established that negligent conduct can violate the Fourteenth Amendment. (*Id*. at 11.)

Although Plaintiff claims that negligence on the part of one or more DPSC employees caused a

constitutional violation, Defendants note that "[a] general allegation of administrative negligence

fails to state a constitutional claim cognizable under Section 1983." (*Id*. at 11–12 (citing

*Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982)).) Therefore, Defendants conclude that in

light of precedent establishing that negligent conduct is not actionable under § 1983, Plaintiff has

failed to plead a constitutional violation that was so obvious that "every official would know that

his negligence could violate that right." (*Id*. at 12.)

### i.    *Failure to plead a pattern*

Defendants also argue that Plaintiff fails to plead a plausible pattern of similar

constitutional violations in the *Amended Complaint*. Plaintiff "does not identify or describe a

'policy' in his Amended Complaint"; nor does it describe any decisions, acts or omissions, or

persistent and widespread practices which Secretary LeBlanc is personally aware. (*Id*. at 13-14.)

Additionally, Defendants contend that Plaintiff fails to show "a pattern of *similar*

constitutional violations" to demonstrate deliberate indifference. (*Id*. at 14 (emphasis by

Defendants).) In support of this contention, Defendants cite to caselaw which shows that only very similar violations could jointly form a pattern. (*Id*. at 15–16 (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Jason v. Tanner*, 938 F.3d 191, 198 (5th Cir. 2019).)

As such, Defendants contend that "[n]either an alleged 'pattern of Fourteenth Amendment violations' nor 'pattern of over-detentions' is sufficient to meet the high burden of showing deliberate indifference." (*Id*. at 17.) Instead, "'the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" (*Id.* (citing *Jason*, 938 F.3d at 197).) Applying the facts, Defendants argue that Plaintiff has not alleged a policy of negligence in sending paperwork to the wrong prisons, nor has Plaintiff alleged that Secretary LeBlanc knew of the paperwork transmissions problems. (*Id.*) Therefore, Defendants conclude that Secretary LeBlanc is entitled to qualified immunity.

### ii.    *Absence of a "failure to train/supervise" claim*

In their last qualified immunity argument, Defendants state that the allegations claiming that Secretary LeBlanc is personally liable for failing to train or supervise subordinates are conclusory. (Doc. 60-1 at 17.) Defendants argue that the "mere use of the words 'training' and 'oversight' are insufficient to plead a plausible claim upon which relief can be granted." (*Id.* (citing Doc. 59 at ¶ 70).)  Defendants contend that there are three elements that must be satisfied to hold a supervisory official vicariously liable and Plaintiff has not pled "any facts explaining how a lack of training or supervision caused the conduct that alleged violated [his] rights or how . . . [it] amounted to deliberate indifference." (*Id.* at 18.) Therefore, Defendants conclude that the failure to train/supervise claim must be dismissed.

### b. Plaintiff's Opposition

Plaintiff first argues that Secretary LeBlanc should be denied qualified immunity in this case because he has been denied qualified immunity by other Louisiana federal district courts in over-detention cases that involve overlapping factual allegations. (Doc. 78 at 8.) Plaintiff then cites to four cases in which Secretary LeBlanc was denied qualified immunity. (*Id.* at 8-9.) Plaintiff argues that like those cases, in the current case, Secretary LeBlanc likewise (1) knew of a pattern of over-detention, (2) failed to prevent or rectify the problem, and (3) such failure resulted in Plaintiff's rights being violated. (*Id.* at 9.) Accordingly, he argues that the same result—denial of qualified immunity—must necessarily follow here, too.

#### i.    A pattern has been sufficiently pled

Plaintiff argues that Defendants have selectively chosen allegations to address and have "neglect[ed] to address the very specific, concrete factual allegations . . . which allege a pattern of at least hundreds of examples of over-detention." (*Id.* at 10–11.) Plaintiff maintains that the "failure to allege a pattern" argument has been raised and rejected repeatedly by the courts. (*Id.* at 11.) In fact, "the DOC's pattern of over-detention[] and Secretary LeBlanc's personal knowledge of[] the pattern[] is extraordinarily well documented—and is something that Secretary LeBlanc personally admits." (*Id.*) Should the Court not find this pattern of violations sufficiently plausible and pled, Plaintiff requests leave to amend. (*Id.* at 12.)

#### ii.    The failure to supervise/train claim has been sufficiently pled

Lastly, Plaintiff contends the *Amended Complaint* sufficiently alleges that (1) "Secretary LeBlanc is the final policy maker"; (2) there is a widespread pattern of over-detention; (3) "the pattern is so egregious that LeBlanc's own lawyer called it a 'layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day . . .'"; and (4) this was a result of Secretary LeBlanc's failure to rectify the training and policies in place. (*Id.* at 12.)

Plaintiff avers that the allegations "make it at least *plausible*" that there was a failure to train or

supervise." (*Id.* (emphasis by Plaintiff).) He further argues that the plausibility is supported by

the prior cases that find Secretary LeBlanc "acted with deliberate indifference by failing to

discipline or train employees or to implement any policy to correct the unconstitutional

problem." (*Id.* at 12-13 (citing *Traweek v. Gusman*, No. 19-01384, 2019 WL 5430590, at *8-9

(E.D. La., Oct. 23, 2019)).) Again, should the Court find these pleadings to be insufficient,

Plaintiff requests leave to amend. (*Id.* at 13.)

### c.  Defendants' Reply

Defendants reply that Secretary LeBlanc is entitled to qualified immunity in his

individual capacity. (Doc. 79 at 6.) Defendants contend that Plaintiff's position rests on the fact

that other cases have denied qualified immunity, and not specifically on the facts of this case.

Defendants distinguish the cases on which Plaintiff relies on the grounds that they involved a

delay in processing paperwork, a delay in calculating a sentence, or a miscalculation of a

sentence. (*Id.*) Defendant notes that "Plaintiff neglects to mention *Thomas v. Grayder*, No. 17-

1595, 2019 WL 5790351, at *1 (M.D. La. Nov. 6, 2019)." (*Id.* at 7.) In *Thomas*, the court upheld

qualified immunity for Secretary LeBlanc when the claim did not involve a delay or error in

sentence calculation, and further found there was no deliberately indifferent pattern of

sufficiently similar incidents. Defendants aver that *Thomas* is more factually similar to the

current case than the cases Plaintiff cites. (*Id.*)

Defendants again argue that Plaintiff has not pled a pattern of similar constitutional

violations, but instead relies on the large number of cases involving over-detention to establish

that pattern. (*Id.* at 8.) Additionally, Defendant claims that the factual allegations on which

Plaintiff relies are "conclusory" or "inadmissible hearsay opinion," not fact. (*Id.*) "Thus, the

Plaintiff failed to respond to, and more importantly, overcome the defense of qualified immunity." (*Id.*)

Defendants reiterate that Plaintiff must specifically identify and prove the defects of the training program, and without such, the Court cannot properly examine the adequacy of the training program. If and until Plaintiff alleges "*how* the training or supervision played a role," the allegations are merely speculative and cannot support liability. (*Id.* at 9 (emphasis by Defendants).) Therefore, Defendants maintain that the pleadings fail to create a plausible claim that the failure to train or supervise was a proximate cause of the constitutional violations, and therefore entitle Secretary LeBlanc to qualified immunity. (*Id.*)

## 2. Applicable Law

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

As to the first prong of the qualified immunity analysis, "[d]etention of a prisoner for over 'thirty days beyond the expiration of his sentence in the absence of a facially valid court

31

order or warrant constitutes a deprivation of due process.'" *Porter v. Epps*, 659 F.3d 440, 445

(5th Cir. 2011) (quoting *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980)).  Fifth Circuit

"precedent establishes that a jailer has a duty to ensure that inmates are timely released from

prison." *Id.*  This circuit has also stated:

> [w]hile not a surety for the legal correctness of a prisoner's commitment, [a jailer]
> is most certainly under an obligation, often statutory, to carry out the functions of
> his office. Those functions include not only the duty to protect a prisoner, but also
> the duty to effect his timely release.

*Id.* (quoting *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1969) (internal citations and footnote

omitted)).

Additionally, "[u]nder section 1983, supervisory officials are not liable for the actions of

subordinates on any theory of vicarious liability." *Simon v. LeBlanc*, 694 F. App'x 260, 261 (5th

Cir. 2017) (per curiam) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). "'A

supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that

cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally

result in the constitutional injury.'" *Porter*, 659 F.3d at 446 (quoting *Gates v. Texas Dep't of

Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "In order to establish supervisor liability

for constitutional violations committed by subordinate employees, plaintiffs must show that the

supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others'

constitutional rights committed by their subordinates." *Id.* (quoting *Gates*, 537 F.3d at 435

(internal quotation marks and citation omitted, alterations and emphasis in *Gates*)).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a

municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis*, 406

F.3d at 381 (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S.

Ct. 1382, 137 L. Ed. 2d 626 (1997)). "'For an official to act with deliberate indifference, the

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)). "'Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.'" *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

"A pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.' " *Id.* (quoting *Webster,* 735 F.2d at 842). "It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Id.* at 850–51 (quoting *Piotrowski*, 237 F.3d at 582 (citations omitted)). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Id.* at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005)).

Further, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)). Nevertheless, "[l]iability for failure to promulgate policy . . . require[s] that the defendant . . . acted with deliberate indifference." *Id.* As the Fifth Circuit stated with respect to "failure-to-train" claims (and failure-to-promulgate claims):

> To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat* superior liability.

*Id.* at 447 (citations, alterations, and quotations omitted).

### 3. Analysis

The Court finds that Plaintiff has failed to state a viable claim of supervisor liability against LeBlanc. Again, "'[a] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.'" *Porter*, 659 F.3d at 446.  Plaintiff does not allege any facts in the *Amended Complaint* that show that Secretary LeBlanc affirmatively participated in the acts that caused the alleged constitutional deprivation. Instead, Plaintiff's claims against LeBlanc are predicated on his conduct in (1) failing to promulgate adequate policies, and (2) failing to train and supervise DPSC employees. Therefore, the Court "must consider whether [Secretary LeBlanc's] actions were objectively

34

unreasonable in light of the clearly established law that a prison official must ensure an inmate's timely release from prison and that such [ ] official[s] may be liable for failure to promulgate policy or failure to train/supervise if [they] acted with deliberate indifference to constitutional rights." *Id.*

To meet this burden, Plaintiff must typically allege a pattern of violations. *Id.* at 447. "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Peterson*, 588 F.3d at 851 (quoting *Estate of Davis,* 406 F.3d at 383).

Here, Plaintiff fails to satisfy that standard. Again, Plaintiff alleges:

[DPSC] has a well-documented pattern of over-detention. For example, in *Chowns v. LeBlanc*, La. 37th JDC 26-932, DOC employees testified as to the consistent over-detention they observed:

a. Tracy Dibenetto, a DOC employee, testified that DOC staff have discovered approximately <u>one case of over-detention per week for the last nine years</u>. Ms. Dibenetto also testified that inmates are sometimes incorrectly incarcerated for periods of up to a year.

b. Henry Goines, a DOC employee whose job was to review sentence computations for the assistant secretary, testified that he typically discovered "one or two [inmates] a week" who were eligible for immediate release.

c. Cheryl Schexnayder, a DOC records analyst, testified that in the course of her job, she had looked at inmates' sentences and found that they had been done wrong and the inmate was entitled to immediate release.

d. Sonja Riddick, a DOC employee, responded to the question: "Did you ever find a time when you looked at an inmate's records and you say, this man should be out now?" with the answer: "<u>Oh yes</u>."

(*Amend. Compl.* ¶ 48, Doc. 59.) Plaintiff also quotes Attorney General Landry, who said that there "is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison."

(*Id.* ¶ 49.) Lastly, Plaintiff refers to the Louisiana Legislative Auditor report being released a

day before Plaintiff was incarcerated that found that "the DOC had a serious problem of not

knowing where its inmates were located, or when their proper release date was." (*Id.* ¶ 7.)

*Parker v. Louisiana Dep't of Pub. Safety & Corr.*, No. 18-1030-JWD-EWD, 2020 WL

4353564, at *15-16 (M.D. La. July 29, 2020) is analogous on this issue. The plaintiff filed suit

after being allegedly imprisoned 337 days past the end of his sentence. *Parker*, 2020 WL

4353564 at *1. The plaintiff brought a supervisory liability claim against LeBlanc claiming that

he implemented unconstitutional policies. *Id.* at *5. The plaintiff argued that there was a pattern

and practice of over-detention at DPSC under LeBlanc's direction and that LeBlanc knew about

this over-detention but acted with deliberate indifference. *Id.* at *13. To support his position, the

plaintiff pointed to the same evidence that is introduced by Plaintiff in this case—state court

testimony, a legislative audit of the DOC, and the Attorney General's op-ed. *Id.* at *15.

This Court found that while the plaintiff's allegations were serious and reflected

numerous instances of misconduct, he failed to state a viable claim against LeBlanc. *Id.* at *16.

This Court explained that the plaintiff failed to provide the necessary "similarity and specificity"

required by the Fifth Circuit because there was no indication in the complaint that the problems

detailed above were similar to the ones he faced. *Id.* at *16.

The Court further relied on *Thomas v. Gryder,* another case involving the alleged over-

detention of a prisoner. *Parker*, 2020 WL 4353564 at *15 (citing *Thomas v. Gryder*, No. 17-

1595-EWD, 2019 WL 5790351 at *1 (M.D. La. Nov. 6, 2019)). In *Thomas*, the plaintiff

likewise brought a supervisory liability claim against LeBlanc. *Thomas*, 2019 WL 5790351 at

*9. The plaintiff argued that "'the DOC has investigated and admitted that it has been over-

detaining <u>hundreds of inmates per month</u>, more than sufficient to hold LeBlanc liable under

*Monell/Hinojosa*.'" *Id.* at *10. To support his position, the plaintiff pointed to "a 2012 study

conducted by Louisiana DOC staff . . .  wherein, per the plaintiff, it was 'found that as of January 2012, the DOC had a "1446 backlog of cases to have time computed," resulting in an average processing delay of 110 days.'" *Id.*  The plaintiff also referred to an audit of the DOC and the Attorney General's op-ed. *Id.*

Despite this evidence, the Court granted summary judgment on this claim, explaining that the plaintiff's "over-detention does not involve such concerns." *Id.*  The Court stated:

> [Unlike the evidence submitted by Plaintiff,] this is not a case involving a delay in Plaintiff's sentence calculation, or an error in that calculation. Instead, Plaintiff complains that in calculating his release date, Ms. Gryder improperly relied on information that was wrong. Because Plaintiff has presented no evidence to support a finding that Warden Goodwin or Secretary LeBlanc were deliberately indifferent based on a pattern of sufficiently similar incidents, Defendants are entitled to summary judgment dismissing [Plaintiff's claim].

*Id.*

Similar reasoning applies here.  The *Amended Complaint* lacks adequate detail from which the Court can plausibly conclude that the other described incidents are sufficiently similar to what befell Plaintiff or that the same or sufficiently underlying cause is to blame. *Parker*, 2020 WL 4353564 at *16; *Thomas*, 2019 WL 5790351 at *10.  Indeed, Plaintiff provides no detail about these other incidents and essentially says only that over-detention is ubiquitous.  Without more, Plaintiff's claim must fail.

Plaintiff's claim also fails for an additional reason.  Again, "'[i]n order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.'" *Porter*, 659 F.3d at 446. Deliberate indifference requires more than negligence or even gross negligence. *Estate of Davis*,

406 F.3d at 381.  LeBlanc "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The Court finds that Plaintiff has, at this point, failed to adequately allege deliberate indifference.  Plaintiff points to a state court law suit where DPSC employees testified about the deficiencies, but he fails to link this suit and this pattern to LeBlanc in such a way to establish that LeBlanc actually drew the inference that there was a substantial risk of harm to Plaintiff and other inmates.  Further, Plaintiff alleges that Attorney General Landry was aware of the problem and that there was a Louisiana Audit report documenting it, but he fails to allege, even on information and belief, that LeBlanc was aware of what Landry said in the op-ed or of what was contained in the audit.

Likewise, the Court finds that Plaintiff has not adequately alleged a failure to train claim. To establish the individual liability of a supervisor under section 1983 based on a failure to train, a plaintiff must show: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Estate of Davis ex rel. McCully*, 406 F.3d at 381 (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)).

The Fifth Circuit has further explained:

> "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 912 (internal quotation omitted). To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small,* 325 F.3d 627, 637 (5th Cir. 2003) (internal quotation omitted). Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability. *Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 382 (5th Cir. 2005). Furthermore, "for a supervisor to be liable for

> failure to train, the focus must be on the adequacy of the training program in relation
> to the tasks the particular officers must perform." *Roberts v. City of Shreveport,* 397
> F.3d 287, 293 (5th Cir. 2005) (quotations and citation omitted). Moreover, "for
> liability to attach based on an 'inadequate training' claim, a plaintiff must allege
> with specificity how a particular training program is defective." *Id.*

*Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009).

Here, Plaintiff's allegations are insufficient to state a claim for failure to train/supervise.

In his *Amended Complaint*, Plaintiff alleges that the unconstitutional widespread practices of

over-detaining inmates "were allowed to flourish because Defendants declined to implement

sufficient training, sufficient policies, or any legitimate mechanism for oversight or punishment

of officers and agents." (*Am. Compl.* ¶ 70, Doc. 59.)  However, it does not allege, beyond mere

conclusions, that LeBlanc was deliberately indifferent, as (1) there are no facts from which he

could have drawn the inference that a substantial risk of harm existed;  (2) there is no allegation

that he actually drew the inference; (3) there is no pattern of violations as demonstrated above;

and (4) there is no showing that the inadequacy of the training was obvious.  Plaintiff also fails to

specifically allege how the training was inadequate or defective. Further, Plaintiff has not pled

any facts explaining how a lack of training or supervision caused the conduct that alleged

violated his rights.

However, for reasons given more extensively below, the Court believes that there is a

reasonable probability that Plaintiff can cure the deficiencies in the *Amended Complaint* by

explaining the similarity of other incidents to Plaintiff's case and by establishing LeBlanc's

knowledge and the basis thereof.  Accordingly, Plaintiff will be given leave to amend the

complaint to cure the above problems, though the Court notes Plaintiff's Rule 11 obligations.[5]

---

[5] The Court notes that, while Plaintiff is not entitled to discovery on the individual capacity claim because he failed to allege sufficient facts to overcome qualified immunity, *see Zapata v. Melson*, 750 F.3d 481, 484–85 (5th Cir. 2014), that bar does not apply to Plaintiff's official capacity claim, which in this case informs the individual capacity claim

Lastly, Plaintiff has not overcome LeBlanc's qualified immunity. Plaintiff has not pointed to adequate caselaw demonstrating that every reasonable official in LeBlanc's position would know that his conduct was unlawful. And because the Louisiana test for qualified immunity is identical to the federal standard, LeBlanc is likewise entitled to qualified immunity under Louisiana law as to Plaintiff's state constitutional law claims. *See Moresi v. State Through Dept. of Wildlife and Fisheries*, 567 So.2d 1081 (La. 1990).

### F. Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated: "In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint

---

against LeBlanc. Plaintiff appears able to obtain discovery on this issue, within the parameters established by the Magistrate Judge.

if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.,* 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013).

> Finally, one leading treatise explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

As stated above, the Court believes there is a reasonable probability that Plaintiff could cure the deficiencies in the *Amended Complaint* through an amendment. "Thus, . . . the Court will act in accordance with the 'wise judicial practice' and general rule and grant Plaintiff[]" leave to amend. *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 642 (M.D. La. 2018). Additionally, the Court again advises Plaintiff of his obligations under Rule 11 to have a good faith basis in law and fact for making any claims.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction and for Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted* (Doc. 60) is **GRANTED IN PART** and **DENIED IN PART**.

The motion is granted in that the following claims are **DISMISSED WITHOUT PREJUDICE**: (1) Plaintiff's claims for special damages under state and federal law, (2) Plaintiff's claim for punitive damages under § 1983 claim against LeBlanc in his individual capacity, and (3) Plaintiff's § 1983 claims against LeBlanc in his individual capacity.  Plaintiff shall be given twenty-eight (28) in which to cure the operative complaint of these deficiencies.  Failure to do so will result in the dismissal of these claims with prejudice.

The motion is granted in that Plaintiff's claims for injunctive relief are **DISMISSED WITHOUT PREJUDICE.**

The motion is granted in that the following claims are **DISMISSED WITH PREJUDICE**: (1) Plaintiff's § 1983 claim against the DPSC, and (2) Plaintiff's claims for punitive damages under Louisiana state law.

In all other respects, the motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on December 2, 2020.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

42