UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRIAN MCNEAL

VERSUS                                    CIVIL ACTION

LOUISIANA                                 NO.   18-736-JWD-EWD
DEPARTMENT OF PUBLIC
SAFETY & CORRECTIONS ET AL


RULING AND ORDER


This matter comes before the Court on the *Motion to Dismiss Plaintiff's Second Amended Complaint* (Doc. 93) filed by Defendants, State of Louisiana, through the Department of Public Safety & Corrections ("DPSC" or "DOC"), Secretary James M. LeBlanc ("LeBlanc"), and Breunkia Collins ("Collins") (collectively, "Defendants"). Plaintiff Brian McNeal ("Plaintiff") opposes the motion. (Doc. 97.) Defendants filed a reply. (Doc. 98.) Defendants also filed a supplemental memorandum in support of their motion. (Doc. 106.) Plaintiff filed a response to Defendants' supplemental memorandum. (Doc. 107.) Oral argument is not necessary. The Court has carefully considered the law, the facts alleged in the *Second Amended Complaint* ("Amended Complaint") (Doc. 91), and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is granted in part and denied in part.

I.    **Relevant Factual Background**

This lawsuit arises from an over-detention claim brought by Plaintiff. (Doc. 91 at ¶ 14.) In the Amended Complaint, Plaintiff alleges that he was held in prison for 41 days beyond his legal release date. (*Id.* at 4–7.) The Amended Complaint alleges that, following Plaintiff's arrest for a parole violation, on August 3, 2017, Plaintiff's probation was revoked, and he was sentenced to

1

serve 90 days at the Steve Hoyle program in the Bossier Parish Correctional Center. (*Id*. at ¶¶ 21–23.)

Plaintiff alleges that, on August 22, 2017, Collins, a DOC employee (*id*. at ¶ 17), sent a release letter to the Steve Hoyle program directing that Plaintiff be released on November 1, 2017. (*Id*. at ¶ 24.) A week later, however, Plaintiff was transferred from the Orleans Parish Prison to the DOC's Elayn Hunt Correctional Center ("Hunt") near Baton Rouge. (*Id*. at ¶ 26.) Plaintiff was not transferred to the Steve Hoyle program thereafter; instead, he remained incarcerated at Hunt. (*Id*. at ¶ 27.) Plaintiff alleges that Collins specifically knew that his release letter had been sent to the Steve Hoyle program and that Plaintiff was being housed at Hunt, but she did nothing to correct this problem. (*Id*. at ¶¶ 30–32.) Nor did any other Defendant take steps to ensure that Plaintiff's release letter got to the correct facility, according to the Amended Complaint. (*Id*. at ¶ 32.) As a result, Plaintiff alleges that he was not released on November 1, 2017, as legally required. (*Id*. at ¶ 36.)

After several inquiries were made on Plaintiff's behalf (*id*. at ¶¶ 37–45), on December 11, 2017, DOC headquarters emailed a letter to Hunt authorizing Plaintiff's release as of November 1, 2017 and explaining that he "was thought to be at a different facility." (*Id*. at ¶ 46.) The following day—41 days after his legal release date—Plaintiff's lawyer called the Warden's Office at Hunt to ask why Plaintiff was still in custody, and Plaintiff was released. (*Id*. at ¶¶ 50–51.)

Plaintiff alleges that DPSC has a well-documented and known pattern of over-detention. (*Id*. at ¶ 73.) In the Amended Complaint, Plaintiff details the findings of the Louisiana Legislative Auditor report (*id*. at ¶¶ 85–94), which found that "the DOC had a serious problem of not knowing where its inmates were located, or when their proper release date was." (*Id*. at ¶ 9.) Plaintiff also alleges that "the DOC's own counsel," Attorney General Jeff Landry, admitted to the pattern of

over-detention in a March 8, 2018 op-ed, in which he conceded that there "is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison." (*Id.* at ¶ 12.)

Plaintiff filed his *Second Amended Complaint* on December 22, 2020, asserting various causes of action against Defendants DPSC, LeBlanc, and Collins. (Doc. 91.) Plaintiff asserts a claim for violation of his Fourteenth Amendment Due Process rights under the U.S. Constitution (Count 3) (*id.* at ¶¶ 195–97) and a *Monell* failure to train/supervise claim (Count 5) (*id.* at ¶¶ 201–32) against LeBlanc. Plaintiff also asserts state law claims for false imprisonment (Count 1) (*id.* at ¶¶ 185–89), negligence (Count 2) (*id.* at ¶¶ 190–94), violation of his rights under the Louisiana Constitution (Count 4) (*id.* at ¶¶ 198–200), *respondeat superior* (Count 6) (*id.* at ¶¶ 233–34), and indemnification (Count 7) (*id.* at ¶¶ 235–37). Defendants now move for dismissal with prejudice of all claims in Plaintiff's Amended Complaint. (Doc. 93.)

## II.    Rule 12(b)(6) Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of a legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

> Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Id*. at 503.

## III.    Discussion

### A.    Plaintiff's Requested Remedies

Defendants argue that certain "remedies" requested in the Amended Complaint should be dismissed as a matter of law. (Doc. 93-1 at 5.)

First, Defendants assert that Plaintiff's demand for "declaratory relief" should be dismissed because it fails to provide notice of "the legal or factual basis of the claim." (*Id*. at 6 (referencing

Doc. 91 at ¶ 238(A)).) In response, Plaintiff states that "he will withdraw his claim for declaratory relief." (Doc. 97 at 2.) Accordingly, Defendants' motion on this issue is granted, and Plaintiff's claim for declaratory relief is dismissed.

Second, Defendants contend that Plaintiff's claim for attorney's fees under Louisiana law must be dismissed because Louisiana law provides for recovery of such fees only if they are authorized by statute or contract. (Doc. 93-1 at 6 (referencing Doc. 91 at ¶ 238(D)).) In response, Plaintiff clarifies that his Amended Complaint does not suggest that he seeks recovery of attorney's fees under Louisiana law. (Doc. 97 at 2.) Accordingly, Defendants' motion on this issue is denied as moot.

Third, Defendants argue that Plaintiff's demand for "other and further relief, at law or in equity (but not injunctive relief), to which Plaintiff may be justly entitled" should be dismissed for failure to provide notice of the claim and the grounds upon which it is based. (Doc. 93-1 at 6 (referencing Doc. 91 at ¶ 238(E)).) Defendants likewise seek dismissal of Plaintiff's request for relief as to "any and all other causes of action [that] may become known through a trial of this matter on its merits against any and all other parties which are herein named . . . ." (*Id.* (citing Doc. 91 at ¶ 239).) Defendants seek dismissal of this allegation on the same grounds. (*Id.* at 6–7.) Notably, Defendants cite no authority to support their contention that such general prayers for relief are impermissible and fail to satisfy the minimum pleading requirements of Federal Rule of Civil Procedure 8. Additionally, as Plaintiff points out in his opposition, this general prayer for other relief mirrors the text of Rule 54(c). (Doc. 97 at 2–3 (referencing Fed. R. Civ. P. 54(c)).). Accordingly, Defendants' motion on this issue is denied.

### B.  Official Capacity Claims Against LeBlanc

Defendants submit that all claims against LeBlanc in his official capacity as Secretary of the DPSC either have been or should be dismissed because they are duplicative of the claims against DPSC. (Doc. 93-1 at 8.) In response, "Plaintiff agrees that there are no official capacity claims against Secretary LeBlanc." (Doc. 97 at 3.) Accordingly, Defendants' motion on this issue is granted, and any official capacity claims against LeBlanc are dismissed.

### C.  State Law Claim for False Imprisonment Against DPSC and LeBlanc

Defendants move to dismiss Plaintiff's false imprisonment claim against DPSC and LeBlanc. (Doc. 93-1 at 9.) Defendants first argue that the Court may properly dismiss Plaintiff's false imprisonment claim as to both Defendants, notwithstanding the Court's prior ruling granting partial summary judgment in Plaintiff's favor, since an amended complaint generally renders moot a motion for summary judgment on the original complaint. (*Id*. at 9–10.)

Defendants then assert that "there is no cause of action for 'false imprisonment' pleaded in this lawsuit," such that Count 1 of Plaintiff's Amended Complaint should be dismissed with prejudice in its entirety as to all defendants. (*Id*. at 10.) In support of this assertion, Defendants argue that Plaintiff's over-detention claim is not actionable under Louisiana's false imprisonment law. (*Id*.) Defendants further contend that because plaintiff "was duly convicted and sentenced to DPSC custody, DPSC had the legal authority to detain the Plaintiff and the false arrest/imprisonment claim should be dismissed." (*Id*. at 11.)

Defendants further argue that the legality of Plaintiff's detention and the liability of each Defendant for Plaintiff's over-detention claim should be evaluated under Louisiana's duty-risk analysis. (*Id*. at 11–12.) Alternatively, Defendants argue that LeBlanc is entitled to judgment on this claim, even under Plaintiff's theory of liability for false imprisonment. (*Id*. at 12.)

Plaintiff responds that "the law of the case doctrine bars Defendants' collateral attacks" on the issue of false imprisonment, which was already resolved by this Court's ruling granting partial summary judgment in Plaintiff's favor on the tort of false imprisonment. (Doc. 97 at 3 (referencing Doc. 56).) Next, Plaintiff contends that, even if Defendants' false imprisonment arguments were not barred by the law of the case doctrine, they lack merit. (*See id*.) Plaintiff cites to Louisiana Supreme Court case law for the proposition that, under Louisiana law, false imprisonment is "restraint without color of legal authority." (*See id*. at 3–4.) Plaintiff adds that "[a]n order of temporary imprisonment does not give the DOC permission to incarcerate someone indefinitely." (*Id*. at 4.) Plaintiff also rejects Defendants' assertion that his claim should be analyzed under Louisiana's duty-risk framework for general negligence. (*See id*.) Plaintiff maintains that no such analysis is required because negligence is not a requisite element of the false imprisonment tort under Louisiana law. (*See id*.) Finally, Plaintiff argues that he does not need to prove LeBlanc personally detained him to assert a false imprisonment claim against LeBlanc, since part of LeBlanc's responsibilities as Secretary involve holding inmates for the length of their sentences. (*See id*. at 4–5.)

"Under Louisiana law, '[f]alse imprisonment is the unlawful and total restraint of the liberty of the person.'" *Hernandez v. Theriot*, 709 F. App'x 755, 757–58 (5th Cir. 2017) (quoting *Kelly v. W. Cash & Carry Bldg. Materials Store*, 745 So.2d 743, 750 (La. Ct. App. 1999) (emphasis omitted)). "It consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention." *Id*. (quoting *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 690 (La. 2006)).

Initially, the Court declines to revisit its previous *Ruling and Order* granting summary judgment in Plaintiff's favor on his claim for false imprisonment. (*See* Doc. 56.) Moreover, upon

further consideration of the matter, the Court agrees with its prior *Ruling and Order* granting summary judgment on the issue of false imprisonment under Louisiana law. (*See id*.) For that reason, Defendants' motion is denied as to this claim.

### D.  State Law Claim for Negligence Against All Defendants

Defendants also move to dismiss Plaintiff's negligence claim against DPSC, LeBlanc, and Collins. (Doc. 93-1 at 13.) Defendants argue that Plaintiff engaged in impermissible "shotgun" pleading in violation of Rule 8. (*Id*.) Specifically, they contend that Plaintiff's negligence allegations fail to distinguish between the actions of each Defendant. (*See id*.) The Amended Complaint, according to Defendants, "offers no explanation for the apparent allegation that [DPSC], [LeBlanc], and [Collins] share 'duties' that would subject them to personal liability under Louisiana law." (*Id*.)

Next, in response to Plaintiff's allegation that "due to their professional roles as jailors, Defendants owed duties to avoid overdetention to persons in their custody," Defendants assert that no facts in the Amended Complaint identify LeBlanc or Collins as a "jailor." (*Id*. at 14.) Instead, "DPSC was the undeniable jailor of the Plaintiff," according to Defendants (*Id*.)

Similarly, in response to Plaintiff's allegation that "Defendants had a duty to ensure that [Plaintiff's] release letter wound up in the facility he was actually held in," Defendants assert that there are no facts to support the contention that LeBlanc "owed the Plaintiff some special duty with regard to paperwork." (*Id*. at 14–15.) Finally, Defendants re-urge their "shotgun pleading" argument and aver that Plaintiff must be required to distinguish the negligence claims against each Defendant, or else all such claims should be dismissed. (*Id*. at 15.)

In response, Plaintiff maintains that the concept of LeBlanc and other DPSC employees sharing in the responsibility of ensuring inmates' timely release is reflected in testimony given by

LeBlanc himself in another case. (*See* Doc. 97 at 5–6.) Plaintiff also cites to federal and state court case law recognizing the duty to timely release inmates as to DPSC employees and jailors. (*See id.* at 6.) Plaintiff thus concludes that Defendants' motion as to this claim should be denied. (*Id.*)

Construing the allegations of the Amended Complaint in a light most favorable to Plaintiff and drawing all inferences in his favor, the Court finds that the Amended Complaint, on its face, contains enough factual matter, when accepted as true, to raise a reasonable expectation that discovery will reveal relevant evidence that each Defendant breached the duties they owed to Plaintiff to ensure his timely release. Regarding LeBlanc, specifically, the Court finds that the Amended Complaint contains enough factual matter to support a reasonable inference that LeBlanc breached the duties he owed as the DPSC Secretary to Plaintiff and other inmates by implementing policies that were a legal cause of Plaintiff's over-detention. *See Lormand*, 565 F.3d at 257; *Tredick v. Ekugbere*, No. 17-103, 2018 WL 5504157, at *3–4 (M.D. La. Oct. 29, 2018) (deGravelles, J.) (describing elements of negligence claim). Consequently, the Court denies the motion to dismiss Plaintiff's negligence claim against all three Defendants.

### E.  LeBlanc's Entitlement to Qualified Immunity

#### 1. Parties' Arguments

In support of their motion, Defendants argue that, despite Plaintiff's opportunity to amend to cure the deficiencies identified in the Court's previous ruling, Plaintiff's Amended Complaint fails to overcome LeBlanc's qualified immunity defense. (*See* Doc. 93-1 at 15–16.) Specifically, Defendants maintain that "Plaintiff has failed to plead the violation of a constitutional right whose contours were so clear that every official would know that [LeBlanc's] negligence could violate that right." (*Id.* at 20.) Defendants further contend that Plaintiff's Amended Complaint fails to demonstrate that LeBlanc acted with deliberate indifference to violations of others' constitutional

rights by sufficiently alleging a pattern of similar constitutional violations. (*Id*. at 20–22.) Plaintiff's allegations claiming that DPSC has a well-documented pattern of overdetention are conclusory, according to Defendants, and insufficient to overcome LeBlanc's qualified immunity. (*Id*. at 22.) Finally, Defendants assert that the Amended Complaint lacks factual allegations to support Plaintiff's claim against LeBlanc for failing to train or supervise subordinates. (*Id*. at 23.) Defendants contend that "Plaintiff does not allege or explain what training was given, or not given, and how the training affected, or should have affected, Plaintiff's detention." (*Id*.) Defendants conclude that the failure to train/supervise claim must be dismissed. (*Id*.)

Plaintiff responds that LeBlanc should be denied qualified immunity. (*See* Doc. 97 at 6.) In support of this assertion, he points to the allegations added to his Amended Complaint, which, according to Plaintiff, further detail (1) the pattern and scope of the overdetention problem, (2) LeBlanc's personal knowledge of the problem, and (3) how failures in training and discipline led to over-detentions like Plaintiff's. (*Id*. at 7 (citing Doc. 91 at ¶¶ 52–72, 75–183).) Plaintiff maintains that these allegations remedy the issues identified in the Court's ruling on Defendants' previous motion to dismiss. (*See id*. at 6–7 (referencing Doc. 88 at 38–39).)

In reply, Defendants reiterate that Plaintiff's allegations regarding "a broad pattern of overdetention," "knowledge," and causation do not satisfy Plaintiff's burden of overcoming LeBlanc's qualified immunity defense. (Doc. 98 at 7.) Defendants add: "The Plaintiff has completely failed to identify a *particular* problem with a policy or the training program and to explain how that problem caused the alleged constitutional violation in this case." (*Id*. at 9–10.) Defendants therefore maintain that LeBlanc is entitled to qualified immunity. (*See id*. at 10.)

### 2. Applicable Law

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A supervisory official may be held liable ... only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id.* (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted)).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Bd. of Cnty. Comm'rs of*

*Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Id.* (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

Additionally, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)). Nevertheless, "[l]iability for failure to promulgate policy ... require[s] that the defendant ... acted with deliberate indifference." *Id.* As the Fifth Circuit stated with respect to "failure-to-train" claims:

> To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes ... employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat* superior liability.

*Porter*, 659 F.3d at 447 (citations, alterations, and quotations omitted).

As to the other prong of the Court's analysis, "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted)). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted)). "'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted)). "Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers." *Id.* at 1153 (quoting *White*, 137 S. Ct. at 552 (internal quotation marks omitted)). "But ... [a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

In this Court's prior ruling on Defendants' Rule 12(b)(6) motion, *McNeal v. Louisiana Dept. of Pub. Safety & Corr.*, No. 18-736, 2020 WL 7059581 (M.D. La. Dec. 2, 2020) (Doc. 88), the Court applied the foregoing standard and found that Plaintiff failed to allege a constitutional violation by LeBlanc to support his individual capacity claim. *See McNeal*, 2020 WL 7059581, at *19–*23. Regarding the deliberate indifference component of Plaintiff's claim, this Court explained:

> Plaintiff has, at this point, failed to adequately allege deliberate indifference. Plaintiff points to a state court law suit where DPSC employees testified about the deficiencies, but he fails to link this suit and this pattern to LeBlanc in such a way to establish that LeBlanc actually drew the inference that there was a substantial risk of harm to Plaintiff and other inmates. Further, Plaintiff alleges that Attorney General Landry was aware of the problem and that there was a Louisiana Audit report documenting it, but he fails to allege, even on information and belief, that LeBlanc was aware of what Landry said in the op-ed or of what was contained in the audit.

*Id.* at *21.

### 3. Analysis

Having carefully considered the matter, and upon further consideration of the Court's prior ruling, the Court finds that Plaintiff has stated a viable individual capacity claim against LeBlanc.

First, Plaintiff has sufficiently alleged a constitutional violation by LeBlanc. The Amended Complaint describes a widespread pattern of overdetention at the DPSC, which was so well-settled as to constitute "*de facto* policy." (*See* Doc. 91 at ¶ 202.) Plaintiff alleges that, the day before he was incarcerated, "the Louisiana Legislative Auditor released a report finding that the DOC had a serious problem of not knowing where its inmates were located, or when their proper release date was." (*Id*. at ¶ 9.) Further, Plaintiff's allegations suggest that LeBlanc was aware of this report. (*See id*. at ¶¶ 127, 129–30, 228.) Plaintiff also avers that in 2018, Defendants' own lawyer, the Attorney General, wrote an op-ed conceding that there "is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison." (*Id*. at ¶ 12.)

Additionally, Plaintiff alleges that "multiple DOC employees testified" in *Chowns v. LeBlanc*, La. 37th JDC 26-932—a case in which LeBlanc was sued (*see id*. at ¶ 122)—regarding a well-documented pattern of over-detention. (*See id*. at ¶ 73.) For instance, DOC employee Tracy Dibenetto testified that DOC staff "discovered approximately one case of overdetention per week

14

for the last nine years," with some inmates "incorrectly incarcerated for periods of up to a year." (*Id*. at ¶ 73(a).) Similarly, DOC records analyst Cheryl Schexnayder testified that in the course of her job, she reviewed inmate sentences and found that they had been "done wrong" and that "the inmate was entitled to immediate release." (*Id*. at ¶ 73(c).) The Amended Complaint also alleges that in a grant application to the federal government, the DPSC disclosed that in 2017, it "had an average of 200 cases per month considered an 'immediate release'" due to its pattern of overdetention. (*See id*. at ¶ 91.)

Finally, Plaintiff alleges that LeBlanc championed the "Lean Sigma Six" review of the DPSC's inmate time calculation processes project. (*See id*. at ¶¶ 54–55.) This review project found that when the DPSC calculated the release date of inmates, 83% were eligible for immediate release due to an earlier release date. (*See id*. at ¶ 56; *see also id*. at ¶¶ 57–60.) Plaintiff alleges that despite being alerted to this problem, LeBlanc did not set of a goal of fixing it. (*Id*. at ¶¶ 61– 65.) For example, in 2015, the DPSC tried an electronic record management system for a short period before ultimately going back "to its old 1990s era CAJUN system." (*Id*. at ¶ 69.) "As a result, the functional processes around the transmission of documents remain as antiquated as they were in 1996." (*Id*. at ¶ 70 (citations omitted); *see also id*. at ¶¶ 71–72.)

In sum, construing these allegations in a light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court finds that a reasonable juror could conclude that LeBlanc implemented defective policies and training that lead to the over-detention of Plaintiff and others in violation of their due process rights. A reasonable juror could also find from the facts alleged in the Amended Complaint that LeBlanc was deliberately indifferent based on the long-standing pattern of sufficiently similar incidents described in the Amended Complaint. As a result, Plaintiff has satisfied the first prong of the qualified immunity analysis by alleging sufficient facts

to support the reasonable inference that LeBlanc, as a supervisory official, violated Plaintiff's federal and state due process rights.

Additionally, Defendants filed a supplemental memorandum in support of their motion, directing the Court to the Fifth Circuit's recent decisions in *Grant v. LeBlanc*, 21-30230, 2022 WL 301546 (5th Cir. Feb. 1, 2022), and *Hicks v. LeBlanc*, 832 F. App'x 836 (5th Cir. 2020). (*See* Doc. 106.) Defendants submit that the *Grant* opinion and its analysis regarding the deliberate indifference standard further supports their arguments that LeBlanc is entitled to qualified immunity on Plaintiff's Section 1983 claims. (*See id.*) Plaintiff, by contrast, contends that the Fifth Circuit's "non-precedential decision in *Grant* does not substantially change the legal framework regarding the motion before this Court" because the *Grant* case is distinguishable on its facts. (*See* Doc. 107.) The Court agrees with Plaintiff.

In *Grant*, the Fifth Circuit reversed the district court's denial of qualified immunity for LeBlanc on the plaintiff's federal and state due process claims. 2022 WL 301546, at *7. The Fifth Circuit found that, because the plaintiff failed to show that LeBlanc, in his individual capacity, violated the claimed due process rights by overdetention, LeBlanc was entitled to qualified immunity. *See id.* at *1. In applying the deliberate indifference standard to the plaintiff's claim, the Fifth Circuit explained:

> Moreover, Grant has not presented the requisite pattern of due-process violations similar to the one he asserts: DPSC's failing to timely release an individual, specifically as a result of *the Secretary's failure* to promulgate policy, or train subordinates, to prevent overdetention due to delayed delivery of the charging document. Again, as reflected above, the delay in receiving Grant's bill of information was caused by external entities—not by the Secretary.
>
> Along that line, Grant points to items in the summary-judgment record relied upon by the district court in concluding the Secretary was deliberately indifferent because he had notice of instances of DPSC's overdetention . . . .

16

> Regarding the three items cited by Grant, the district court mainly relied upon a 2012 Six Sigma study of DPSC, a 2017 report by the Louisiana Legislative auditor, and a grant application DPSC submitted to the federal government in 2019, all referencing overdetention within DPSC. The first, however, examined DPSC's internal-release procedures, not policies of external offices. The latter two, as the Secretary notes correctly, are insufficient to establish deliberate indifference on the part of the Secretary. Both occurred after Grant's overdetention, and they fail to show, prior to Grant's overdetention, that the Secretary had knowledge of due-process violations of the type claimed by Grant . . . .

*Id*. at *6 (citations omitted).

The Court observes that the *Grant* case is distinguishable in several respects. First, in this case, unlike in *Grant*, the Legislative Auditor released the report before Plaintiff was incarcerated. (*See* Doc. 91 at ¶ 9.) Similarly, the grant application described in the Amended Complaint references instances of overdetention occurring in 2017 (*see id*. at ¶ 91), which is during the period Plaintiff was incarcerated. Further, the crux of the plaintiff's constitutional challenge in *Grant* "ultimately rest[ed] on the local sheriff's and clerk's offices' failure to deliver his bill of information to DPSC in a timely manner." *See* 2022 WL 301546, at *6. Whereas, here, Plaintiff objects to the widespread pattern of continuous errors made by DPSC and its employees; consequently, the 2012 Sigma Six examination of DPSC's internal-release procedures are significantly more pertinent to the Court's deliberate indifference analysis.

In *Hicks v. LeBlanc*, the other case cited in Defendants' supplemental memorandum (*see* Doc. 106 at 2, 6), the Fifth Circuit reversed the district court's judgment denying qualified immunity for LeBlanc, finding that he could not be held individually liable under Section 1983 for failing to promulgate adequate policies or failing to train and supervise employees based on a DOC employee's intentional sentencing miscalculation and over-detention of the plaintiff in violation of his due process rights. *See* 832 F. App'x 836, 838, 841–42. In reaching this conclusion, the Fifth Circuit observed:

Whether LeBlanc acted with deliberate indifference is a close call. Hicks alleged that LeBlanc knew of the DPSC's long history of over-detaining inmates; that DPSC employees used different methods to calculate release dates; and that the DPSC had not disciplined employees who miscalculated sentences. However, the alleged facts—which included processing delays, data errors, inconsistent calculation methodologies, and unspecified deficiencies—speak to the incompetence of DPSC employees and the lack of adequate training and supervision. Based on these allegations, LeBlanc could be held liable for *incompetent* over-detention, such as the failure to process a prisoner's release or immediately compute an inmate's sentence after being sentenced to time served. But it cannot be said that LeBlanc had notice that his employees were purposely disregarding sentencing orders out of retaliatory intent. The complaint was devoid of allegations supporting the reasonable inference that a pattern of *intentional* over-detention existed in the DPSC; that is, the alleged facts suggest a pattern of over-detention caused by quality control deficiencies and the lack of training and supervision, not a pattern of over-detention stemming from the blatant refusal to credit offenders with time served contrary to sentencing orders. In the absence of such a pattern, LeBlanc could not have acted with deliberate indifference to [the DOC employee's] intentional sentencing miscalculation and over-detention of Hicks. Accordingly, the district court erred in denying LeBlanc's defense of qualified immunity.

*Id*. at 842 (citation omitted).

Here, the facts alleged in the Amended Complaint, accepted as true and viewed in the light most favorable to Plaintiff, support the reasonable inference that a pattern of over-detention existed at the DPSC that was caused by a lack of adequate policies, training, and supervision to ensure inmates were timely released from custody. Moreover, the Plaintiff's Amended Complaint includes numerous factual allegations detailing the scale of the DPSC's overdetention problem, including the findings of the Legislative Auditor's report, the Lean Sigma Six review project, the state court testimony by DOC employees, and so forth. Unlike in *Hicks*, these well-pleaded facts allow the Court to draw the reasonable inference that LeBlanc's continuous failures to implement policies amounted to an intentional choice, as opposed to mere negligent oversight. *See Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992) (citations omitted). Put differently, Plaintiff has plausibly alleged that LeBlanc acted with deliberate indifference to constitutional violations.

18

Having established that Plaintiff has met the first qualified-immunity prong, the Court turns to the second prong of the analysis: whether LeBlanc's actions were objectively unreasonable in light of clearly established law. *See Grant v. LeBlanc*, 2022 WL 301546, at *5 (5th Cir. Feb. 1, 2022) (citations omitted). "The Fourteenth Amendment Due Process Clause is violated where a prisoner remains incarcerated after the legal authority to hold him has expired." *Hicks*, 832 F. App'x 836, 840 (citation omitted). Further, "[a] prisoner's right to timely release was clearly established well before 2017," when the actions sued upon occurred. *See id.* at 841. As previously discussed, the allegations of Plaintiff's Amended Complaint describe numerous instances in which the DPSC's longstanding overdetention problem was publicly highlighted or brought to the DPSC's attention, such as the Legislative Auditor's report, the federal grant application, and the state court testimony. Again, the Court can reasonably infer from these allegations that LeBlanc's deliberate decision to allow defective policies and procedures to remain at DPSC—despite having notice of the substantial risk they posed to the constitutional rights of others—was objectively unreasonable in light of the clearly established law at the time. Accordingly, Defendants' motion to dismiss Plaintiff's Section 1983 claims against LeBlanc in his individual capacity based on qualified immunity is denied.

### F.  Remaining State Law Claims Against DPSC

Defendants' motion seeks dismissal of Plaintiff's Amended Complaint in its entirety pursuant to Rule 12(b)(6) (*see* Doc. 93), including Plaintiff's state law claims against DPSC for violation of the Louisiana Constitution (Doc. 91 at ¶¶ 198–200), *respondeat superior* (*id*. at ¶¶ 233–34), and indemnification (*id*. at ¶¶ 235–37).

Regarding Plaintiff's claim arising under the Louisiana Constitution, DPSC suggests that it is entitled to qualified immunity on this claim because it is "indistinguishable from the due

process claim under the United States Constitution." (Doc. 93-1 at 15.)[1] The Court disagrees. Having determined that the allegations of the Amended Complaint are sufficient to overcome LeBlanc's assertion of qualified immunity as to Plaintiff's due process claim under the U.S. Constitution, it follows that Plaintiff's claim against DPSC for violation of his due process rights under the Louisiana Constitution survives dismissal based on qualified immunity as well. Accordingly, Defendants' motion as to this claim is denied.

Finally, Defendants' memorandum in support of their motion does not substantively address the merits of Plaintiff's *respondeat superior* and indemnification claims against DPSC. Therefore, Defendants' motion as to these claims is denied without prejudice because they have not made a sufficient legal showing to justify dismissal.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Plaintiff's Second Amended Complaint* (Doc. 93) filed by Defendants DPSC, LeBlanc, and Collins is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** in that the following claims are **DISMISSED**: (1) Plaintiff's demand for declaratory relief; (2) Plaintiff's Section 1983 claims for monetary damages against LeBlanc in his official capacity; and (3) Plaintiff's state law claims for monetary damages against

---

[1] Defendants appear to offer an additional argument in support of dismissal on this issue: "Plaintiff's claim under the Louisiana Constitution is an alternative theory of recovery under Louisiana Law. All of plaintiff's alternative theories under Louisiana law are moot now that this Honorable Court has entered summary judgment on Plaintiff's false imprisonment claim." (Doc. 93-1 at 15 n.39.) Plaintiff's opposition failed to address this argument. Still, the Court notes that Defendants do not cite any law for the proposition that because this Court granted Plaintiff summary April 13, 2022 judgment on one Louisiana law claim, the others are now moot. Additionally, the Federal Rules of Civil Procedure permit plaintiffs to plead in the alternative. *See* Fed. R. Civ. P. 8(d)(2).

LeBlanc in his official capacity. In all other respects, the motion is **DENIED**.

    Signed in Baton Rouge, Louisiana, on April 13, 2022.

 

 

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**