**EXHIBIT 13**



**Louisiana Justice Reinvestment Task Force**
**Report and Recommendations**
March 16, 2017

# Members of the Louisiana Justice Reinvestment Task Force

**Secretary James LeBlanc (Chair)**, Louisiana Department of Corrections

**Sheriff Mike Cazes**, West Baton Rouge

**Senator Daniel Claitor**, Louisiana State Senate

**Flozell Daniels**, Foundation for Louisiana

**Public Defender James Dixon**, Louisiana Public Defender Board

**District Attorney Bo Duhe**, 16th Judicial District

**Chief Justice Bernette Johnson**, Louisiana Supreme Court

**Hon. Lori Landry**, 16th Judicial District Court

**Representative Terry Landry**, Louisiana House of Representatives

**Representative Walt Leger**, Louisiana House of Representatives

**Representative Sherman Mack**, Louisiana House of Representatives

**Senator Danny Martiny**, Louisiana State Senate

**Rev. Gene Mills**, Louisiana Family Forum

**Hon. Laurie White**, Louisiana Sentencing Commission

***Hon. Bonnie Jackson**, 19th Judicial District Court was a former member of the Task Force*

The Task Force would like to honor the memory of

## Kevin Kane

former Executive Director of The Pelican Institute

for working to establish this body and for his many other
contributions to criminal justice reform in Louisiana.

# Table of Contents

**Members of the Louisiana Justice Reinvestment Task Force** ................................................. 2

**Table of Contents** ................................................................................................................. 3

**Executive Summary** .............................................................................................................. 6

**Overview of Task Force Recommendations** ........................................................................ 7

**Impacts of the Task Force's Consensus Recommendations** ................................................ 8

**Highest-in-the-Nation Imprisonment Rate** ........................................................................ 12

**National Picture** .................................................................................................................. 14

**Key Findings** ....................................................................................................................... 16

    1. Findings:  Imprisonment ............................................................................................. 17

    2. Findings:  Community Supervision .............................................................................. 24

    3. Findings:  Criminal Justice Financial Obligations ........................................................ 27

    4. Findings:  Budgetary Decisions .................................................................................. 29

    5. Findings:  Crime Victim and Survivor Priorities .......................................................... 31

**Policy Recommendations** ................................................................................................... 32

    Ensure clarity and consistency in sentencing ................................................................. 32

        Recommendation 1:  Implement a felony class system to eliminate inconsistencies in sentencing and release. ........................................................................................................................ 32

        Recommendation 2:  Increase equity by making back-end release mechanisms retroactive for those convicted of nonviolent offenses. ............................................................................................... 34

        Recommendation 3:  Improve and streamline the victim notification process, indlucing registration into the system. ....................................................................................................................... 35

    Focus prison beds on those who pose a serious threat to public safety ............................ 36

        Recommendation 4:  Expand alternatives to incarceration. .......................................... 36

        Recommendation 5:  Revise drug penalties to target higher-level drug offenses. ........... 37

        Recommendation 6:  Consolidate laws on property crimes and raise the value threshold for felony charges. ............................................................................................................................... 39

        Recommendation 7:  Distinguish penalties for weapons offenses and enhancements according to the severity of the underlying crime. ................................................................................... 40

        Recommendation 8:  Reduce the window of time for which certain prior crimes would count toward current habitual offender penalty enhancements. .................................................. 42

Recommendation 9:  Establish a temporary furlough policy for inmates with serious medical needs. ..................................................................................................................................42

Recommendation 10:  Expand incentives for inmates to participate in recidivism reduction programming. .........................................................................................................................43

Recommendation 11:  Bring Louisiana into compliance with the *Montgomery* decision by retroactively extending parole eligibility to inmates who were juveniles sentenced to life without parole. ....................................................................................................................................44

Recommendation 12:  Streamline parole releases for those who are compliant with case plans and institutional rules. ...............................................................................................................44

Strengthen Community Supervision ...............................................................................................45

Recommendation 13:  Focus community supervision on the highest-risk period by reducing maximum probation terms and establishing an earned compliance credit incentive. .....................45

Recommendation 14:  Address gaps and deficiencies in swift, certain, and proportional sanctions for violations of probation and parole conditions. ...........................................................46

Clear Away Barriers to Successful Reentry ....................................................................................48

Recommendation 15:  Address collateral consequences of felony convictions that create barriers to reentry. .................................................................................................................................48

Recommendation 16:  Tailor criminal justice financial obligations to a person's ability to pay. .......49

Recommendation 17:  Modify penalties for failure to pay criminal justice financial obligations. .....50

Recommendation 18:  Suspend child support during incarceration. .................................................51

Recommendation 19:  Expand eligibility period for Transitional Work Programs and increase take-home pay. .....................................................................................................................................51

Reinvest a Substantial Portion of the Savings ...............................................................................52

Recommendation 20:  Reinvest more than half of the dollars saved from reduction in the state prisoner population. ..........................................................................................................................52

Collect Data and Track Outcomes .................................................................................................55

Recommendation 21:  Mandate data collection and tracking of performance measures to monitor implementation and outcomes of the state's Justice Reinvestment reforms....................................55

Majority Recommendations .........................................................................................................56

Majority Recommendation 1:  Provide the opportunity for parole consideration to some of Louisiana's longest-serving inmates. ...............................................................................................56

Majority Recommendation 2:  Prospectively eliminate life without parole sentences for juveniles, granting parole review after 30 years......................................................................................57

Majority Recommendation 3:  Make parole eligibility changes for violent offenses retroactive. .....58

Majority Recommendation 4:  Focus habitual offender penalties on more serious crimes. .............58

Majority Recommendation 5:  Target mandatory minimum sentences for possession of a firearm by a felon on those with prior violent felony convictions. ...................................................................... 59

**Acknowledgments** ............................................................................................................................. 60

**Endnotes** ........................................................................................................................................... 62

**Appendix A: Offenses in Each Felony Class** ................................................................................. A.1

## Executive Summary



**TASK FORCE RECOMMENDATIONS**

Ensure consistency in sentencing

Focus prison beds on those who pose a serious threat to public safety

Strengthen community supervision

Clear away barriers to successful reentry

Reinvest a substantial portion of savings

Louisiana's Justice Reinvestment Task Force was created to study the state's criminal justice system and recommend strategic changes to get more public safety for each dollar spent. The inter-branch, bipartisan panel of experts found that, with the highest imprisonment rate in the United States, annual corrections spending at two-thirds of a billion dollars, and high recidivism rates, Louisiana's taxpayers are not getting a good public safety return on investment.

A chief reason Louisiana leads the nation in imprisonment is that it locks up people for nonviolent offenses far more than other states do. The Task Force found that the state sent people to prison for drug, property, and other nonviolent offenses at twice the rate of South Carolina and three times the rate of Florida, even though the states had nearly identical crime rates. More than half of those sent to prison in 2015 had failed on community supervision. Among the rest—those sentenced directly to prison rather than probation—the top 10 crimes were all nonviolent, the most common by far being drug possession.

Courts sent one in three people convicted of felonies to prison in 2015, a substantial increase from 10 years prior. The Task Force found that prison alternatives like probation and drug courts were limited by funding and restrictions in state law. Lengthy prison terms also drove up the number of people behind bars. By the end of 2015, nearly 20 percent of those in Louisiana's prisons had been there longer than 10 years. Prison sentences for common nonviolent offenses had gotten longer, and the Parole Board was hearing fewer cases, partly due to dozens of new parole restrictions passed by the Legislature.

Referencing the best research in the field, the Task Force found that successful probationers and parolees were supervised in the community well past the point when they were most likely to reoffend. Average probation officer caseloads were too large to manage. Rewards for those who comply with supervision rules and programming were un-motivating, and sanctions for violating conditions were inconsistently applied and often more disruptive than necessary to job and family responsibilities.

State budgetary decisions are disconnected from the research. Spending on prisons dwarfs investments in effective prison alternatives, programs that reduce recidivism, and services that support crime victims. The Task Force also found that the justice system is often inaccessible for victims and creates too many barriers for those convicted of crimes, undermining both public safety and trust in the system.

Examining practices in states like Texas, Georgia, Alabama, and others that have adopted data-driven policy changes, the Task Force now recommends that Louisiana lawmakers adopt a comprehensive set of reforms to improve the performance of its criminal justice system. The reforms would ensure consistency in sentencing, focus prison beds on those who pose a serious threat to public safety, strengthen community supervision, clear away barriers to successful reentry, and reinvest a substantial portion of the savings into evidence-backed programs and prison alternatives, and services that support victims of crime.

# Overview of Task Force Recommendations

## Ensure Clarity and Consistency in Sentencing

- Implement a felony class system to reduce uncertainty in sentencing and release.

- Simplify the criminal code to create transparency for prosecutors, defense counsel, judges, and victims.

- Increase equity by making back-end release mechanisms retroactive for those convicted of nonviolent offenses.

- Improve the victim registration and notification process.

## Focus Prison Beds on Those Who Pose a Serious Threat to Public Safety

- Expand alternatives to incarceration.

- Revise drug penalties to target higher-level drug offenses.

- Consolidate laws on property crimes and raise the value threshold for felony charges.

- Distinguish penalties for illegal possession of a weapon based on the type of underlying felony.

- Reduce the window of time for which certain prior crimes count toward habitual offender penalty enhancements.

- Establish a temporary furlough policy for inmates with serious medical needs.

- Change parole eligibility laws for life sentences imposed for crimes committed as juveniles.

- Streamline parole release for those who are compliant with case plans and institutional rules.

## Strengthen Community Supervision

- Focus community supervision on the highest-risk period by reducing maximum probation terms and establishing an earned compliance credit incentive.

- Improve the process for responding to violations of probation and parole conditions with swift, certain, and proportional sanctions.

## Clear Away Barriers to Successful Reentry

- Eliminate certain collateral consequences of felony convictions that create barriers to reentry.

- Tailor criminal justice financial obligations to a person's ability to pay.

- Modify penalties for failure to pay criminal justice financial obligations.

- Suspend child support payments during incarceration.

- Expand incentives for inmates to participate in high-skilled workforce development and recidivism reduction programming.

- Expand eligibility period for Transitional Work Programs and increase take-home pay.

## Reinvest a Substantial Portion of the Savings

- Reinvest over $154 million dollars saved from lowering the prison population into research-based programs that reduce recidivism and services that support victims of crime.

# Impacts of the Task Force's
# Consensus Recommendations

The Task Force's consensus recommendations would avert the projected growth[1] in the number of prisoners in Louisiana and bend the prison population downward, for an overall reduction in the prison population of 13 percent (4,817 prison beds) by 2027. This decline in the number of prisoners would save Louisiana taxpayers $305 million over the next ten years. Savings in FY2018 alone would exceed $9 million.[2] The recommendations would reinvest over half of the savings — $154 million—into research-based programs that reduce recidivism and services that support victims of crime.

The recommendations would also reduce the community supervision population by 16 percent (11,421 people) by 2027, compared to the projected population absent reform. Assuming Division of Probation & Parole staffing levels remain constant, this drop in the community supervision population would reduce average caseload sizes from 139 to 113 cases per officer.[3]

## 13%
Drop in Prison Population

## 16%
Drop in Community Supervision Population

## $305 million
Cost Savings

## Average Caseload Size Reduced
## 139 → 113

## $154 Million
Reinvested into Research-Based Programs and Services that Support Victims



Louisiana Prison Population
With and Without Reform
45,000
40,000
35,000
30,000
25,000
20,000
35,885
39,867
35,682
36,541
31,724
Savings
Historical
Projected
2006
2007
2008
2009
2010
2011
2012
2013
2014
2015
2016
2017
2018
2019
2020
2021
2022
2023
2024
2025
2026
2027
Historical Prison Population
Baseline Prison Population
Prison Population With JRTF Recommendations

Louisiana Community Supervision Population
With and Without Reform
80,000
70,000
60,000
50,000
40,000
30,000
20,000
59,265
71,002
73,832
69,250
57,829
Historical
Projected
2006
2007
2008
2009
2010
2011
2012
2013
2014
2015
2016
2017
2018
2019
2020
2021
2022
2023
2024
2025
2026
2027
Historical Community Supervision Population
Baseline Community Supervision Population
Community Supervision Population With JRTF Recommendations

# Louisiana Justice Reinvestment Task Force

In 2015, the Louisiana State Legislature adopted House Concurrent Resolution 82, creating the Louisiana Justice Reinvestment Task Force.  Recognizing the recent statutory changes and investments that had helped control prison growth in Louisiana, the Resolution established the new Task Force to build on that foundation and chart a data-driven course for comprehensive reforms.

The Task Force was directed to develop recommendations for statutory and budgetary changes affecting sentencing and corrections practices, with three specific aims:  1) Reduce the corrections population and associated spending, 2) Expand research-based supervision and sentencing practices, and 3) Strategically reinvest savings to reduce recidivism and improve reentry outcomes.[4]

In a joint letter requesting technical assistance for the Task Force, Governor John Bel Edwards, Senate President John Alario, Speaker of the House Taylor Barras, and Chief Justice Bernette Johnson stressed that "*it is not just… budget pressures that motivate us to advance additional reforms*."[5]

*Even with all we have accomplished, we are still number one in… incarceration rate, and at a time when states across the country are finding more effective approaches, we submit this letter to support that Louisiana has the political will to embrace change….  We are committed to using data and scientific evidence to help identify ways to improve the functioning of Louisiana's sentencing and corrections system and are dedicated to advancing a comprehensive set of reforms in 2017 that yields more public safety and more justice.*

The Task Force is comprised of legislators, judges, attorneys from both defense and prosecution, law enforcement, the Corrections Secretary, the chair of the state sentencing commission, and members representing faith leaders and community advocates.  It received staff assistance from the Department of Corrections and the courts, and gathered individual level data going back 10 years.  The Task Force also received nonpartisan data analysis and technical assistance from The Pew Charitable Trusts.[6]

Beginning in the summer of 2016 and extending through March of the following year, the full Task Force conducted eight public meetings.  To provide the opportunity for further analysis and discussion of specific policy areas, the Task Force members also divided into three subgroups focused on sentencing, community corrections, and finance.

Throughout the process, Task Force members and their staff received information, input, and guidance from a broad range of stakeholders across the state, including judges, court administrators, corrections practitioners, law enforcement officials, behavioral health experts, service providers, formerly and currently incarcerated individuals and their families, justice reform advocates, victim advocates, business leaders, and faith leaders.

In addition to hosting town hall meetings in Lafayette, New Orleans, and Baton Rouge, four of the Task Force's meetings included time for public and invited testimony so that the body could gather input from community members.  The Task Force also made a site visit to Elayn Hunt Correctional Center to observe programming, education, and medical services; and hosted two separate roundtables to hear from crime victims, survivors, and victim advocates from rural and urban communities in the process of developing recommendations.

## Highest-in-the-Nation Imprisonment Rate

The Louisiana prison population, including felony inmates housed in state and parish prisons, peaked in 2012 at roughly 40,000 people.[7]  The number of prisoners has increased five-fold since the late 1970's, growing 30 times faster than the state resident population.[8]  Due in large part to evidence-based statutory changes passed by the state legislature and administrative changes adopted by the Department of Corrections, the number of prisoners dropped 9 percent between 2012 and 2015 while crime continued to decline.

Even with this reduction, Louisiana remains the state with the highest per-capita use of prison beds in the United States.  National data on imprisonment rates for 2014, which became available at the end of 2015, calculated Louisiana's imprisonment rate at 816 people in prison for every 100,000 residents, nearly double the national average, and significantly higher than the second- and third-highest states, Oklahoma and Alabama.[9]

High levels of imprisonment have come at great cost to Louisiana taxpayers without a proportionate benefit for public safety.  In Fiscal Year 2017, lawmakers appropriated $625 million for adult corrections – the third-largest state expenditure behind education and healthcare.[10]  The state has not, however, seen a strong return on investment, with one in three people released from Louisiana's prisons returning within three years.[11]

# 1 in 3

People released from Louisiana's prisons return within three years.

The Task Force found that reducing Louisiana's imprisonment rate, even just to match the state with the second-highest imprisonment rate in the country, could result in substantial annual savings.  If Louisiana's 2014 imprisonment rate matched Oklahoma's, the state would have saved nearly $49 million that year.[12]  If the rate equaled that of neighboring Mississippi, Louisiana would have saved more than $91 million.[13]



In a letter to the Task Force members on January 13th, 2017, Governor Edwards and Department of Corrections Secretary James LeBlanc highlighted the cost of being number one, and called for recommendations that would "reduce the state prison population significantly with the modest goal of not having the highest incarceration rate in the country."[14]

> Given the current budget climate, we must be strategic about our public safety investments.  Our work can help close the budget gap with thoughtful changes about who goes to prison and for how long, and if the savings are significant enough, we will be able to reinvest a substantial portion into programming and prison alternatives….
> While no reform package that is developed from this work can fix every problem, we believe the consequences of doing nothing are too high.  Louisiana citizens and a broad group of stakeholders in Louisiana are looking to you and this administration to make bold decisions.[15]

# National Picture

Louisiana's challenges with long-term prison growth are not unique. State and federal policy decisions that enhanced criminal penalties and limited release options drove up the number of people in U.S. jails and prisons seven-fold between 1972 and 2008, when it peaked at 2.3 million people.[16]

The incarcerated population grew nine times faster than the country's adult resident population, reaching a milestone in which one in every 100 American adults was behind bars. Counting those on felony probation and parole supervision in the community that year, one in every 31 adults in the country was under some form of correctional control.[17]

Taxpayer spending on corrections grew faster than any other state budget item except for Medicaid. States are spending nearly $50 billion each year on corrections, and the vast majority of those dollars are directed to prison beds rather than community supervision and other prison alternatives.[18] Prison spending also started to crowd out other criminal justice spending, leaving a smaller portion for law enforcement, victims' services, and other public safety priorities.[19] Meanwhile, re-arrest and re-incarceration rates nationally remain stubbornly high.[20]

Starting with Texas in 2007, a wave of states—now roughly 2/3 of them—have adopted law and policy reforms under the banner of "justice reinvestment." Justice reinvestment is a strategic response to rising costs and high recidivism rates that aims to get a better return on investment out of corrections spending. Under this approach, states pass measures that focus their prison beds on those who pose a serious threat to public safety. That leads to cost savings. States then reinvest a portion of the savings into evidence-backed prison alternatives, and expanding practices that reduce recidivism and support victims of crime.[21] That, in turn, reduces the flow of people into the courts and prisons, creating a continuous cycle of improved outcomes for public safety and public spending.

Reforms in the states led to the first reduction in the U.S. incarcerated population in more than four decades, and crime has continued to drop.[22] According to the Unified Crime Reporting Program, violent crime is half what it was when it peaked in 1991, and property crime is down by more than half.[23] The National Crime Victimization Survey found even larger reductions, with estimates that violent crime nationally is down by three-quarters since its peak, and property crime is down by two-thirds.[24] Between 2010 and 2015, 44 states experienced reductions in crime, 35 states reduced their imprisonment rates, and 31 states did both.[25]

Since its 2007 reforms, Texas's imprisonment rate is down 16 percent, it has closed three prisons, and its crime rate is down 30 percent.[26]  South Carolina adopted sentencing and corrections reforms in 2010, and has since closed six prisons, experiencing a 16 percent drop in both its imprisonment rate and its crime rate.[27]  Inspired by reforms passed in Texas and South Carolina, Georgia passed a justice reinvestment package in 2012, and has since seen a seven percent decline in imprisonment and an 11 percent decline in crime.[28]



In each of these reform initiatives, state working groups engaged key system stakeholders, analyzed data trends on prison admissions and length of stay, and examined whether practices in the state aligned with research on effective correctional interventions.  The cumulative result is a broad range of innovative and effective policy models that Louisiana's Justice Reinvestment Task Force consulted when discussing options for statutory and budgetary changes here in Louisiana.

# Key Findings

To comply with its directive in HCR 82, the Task Force analyzed Louisiana court and corrections data trends, reviewed the research on what works to reduce recidivism, and examined practices in other states.

Because the data analysis began in early 2016, the Task Force's findings mostly relate to the ten-year period between 2006 and 2015.  The body of national research the Task Force relied on included randomized control trials, quasi-experimental empirical design studies, and meta-analyses.  When referencing different types of crime, the Task Force utilized the Department of Corrections' categories and the violent crime list designated in La. R.S. 14:2(B).

The Task Force made findings in five key areas:
1. Imprisonment
2. Community supervision
3. Criminal justice financial obligations
4. Budgetary decisions
5. Crime victim and survivor priorities

# 1. *Findings:  Imprisonment*

**Louisiana locks people up for nonviolent crimes far more than other states do.**

Louisiana's violent and property crime rates in 2014 were similar to many other states in the South, as was Louisiana's use of prison as a response to violent crime.[29]  The primary difference between Louisiana and other states in the region was its use of prison as a response to *nonviolent* crime.  While Louisiana's crime rates were nearly identical to South Carolina's and Florida's, for example, Louisiana sent people to prison for nonviolent offenses at twice the rate of South Carolina and nearly three times the rate of Florida.[30]





**Additional prison growth is unlikely to reduce crime.**

Researchers examining the effect of incarceration on crime have found that it has passed the point of diminishing returns.[31]  Increased use of incarceration in the 1990's likely had some effect on the nation's crime decline.  Studies estimate that increased incarceration was responsible for 10-30 percent of the crime decline in that decade.[32]  However, states have since expanded the number of prisoners, and the pool of offenses eligible for prison, to the point where research now suggests there is little to no crime-reducing value of continuing to increase the prison population.[33]  While expanding the use of prisons 30 years ago may have improved public safety then, there's little reason to think it would have the same impact today.

**Incarceration is not more effective than alternatives at reducing recidivism.**

There are six possible purposes of criminal sentencing:  retribution (punishment for wrongdoing), incapacitation (removing an individual from the community to prevent him or her from committing new offenses), general deterrence (sending a message to society at large that certain behaviors are not tolerated), specific deterrence (persuading an individual that the costs of committing crimes in the future are greater than the benefits), rehabilitation (helping people change their attitudes and behaviors so they avoid future criminal activity, and restoration (returning victims as nearly as possible to their pre-crime state).

In keeping with its assigned mission, the Task Force focused its efforts on those purposes that will have the best chance of increasing public safety by reducing the likelihood of reoffending.  Leading criminologists in the field have examined whether the experience of prison, compared to non-custodial sanctions, makes people less likely to reoffend.  To do this, they conducted studies that matched samples of individuals sent to prison with similarly situated people who were given an alternative sanction like probation, and tracked re-arrest, re-conviction, and/or re-incarceration rates.  What they found was that, on average, incarceration did not reduce recidivism more than non-custodial sanctions.[34]

♦ *Louisiana is choosing prison over probation for a larger share of felony cases.*

Data trends in Louisiana cut against the research on recidivism.  The Task Force found a nearly 50 percent increase in newly sentenced prison admissions between 2006 and 2015, as well as an increase in the portion of Louisiana's felony convictions that resulted in a prison sentence rather than probation.[35]

About one in four felony convictions, or 4,536 people, were sentenced to prison in 2006 rather than probation.

By 2015, a larger share of felony convictions—about one in three, or 6,755 people—were sentenced to prison rather than probation.[36]



Newly sentenced prison admissions rose 13 percent for drug crimes, 53 percent for property crimes, 60 percent for violent crimes, and 117 percent for other nonviolent crimes.[37]  This increase in people sentenced to prison was not a reflection of increased crime.  Crime has dropped significantly in

Louisiana since the mid-1990's, as it has in every other state.  Crime rates declined in Louisiana when its prison population was growing and also in the last few years as the prison population has come down.[38]

♦ *Most people are sent to prison in Louisiana for nonviolent crimes and failures on supervision.*

Louisiana prisons took in 16,504 admissions in 2015, an increase of 8 percent from 2006.[39]  Fifty-nine percent of admissions were for failures on community supervision.  Among the other 41 percent—those sentenced directly to prison by the court rather than to probation—the ten most common crimes were all nonviolent.[40]  Five of the top ten were drug offenses, the most common by far being possession of Schedule II drugs (including cocaine, methamphetamine, and some prescription opioids).[41]

| Top 10 Offenses at Admission in 2015 |
|---|
| **(Newly Sentenced Prisoners)** |
| 1. Possession of Schedule II drug |
| 2. Simple burglary |
| 3. Operate vehicle while intoxicated |
| 4. Possession of a firearm by a felon |
| 5. Distribute Schedule II drug |
| 6. Possession with intent to distribute Schedule II drug |
| 7. Possession of Schedule I drug |
| 8. Simple burglary of an inhabited dwelling |
| 9. Possession with intent to distribute Schedule I drug |
| 10. Sex offender registration violation |

In total, 86 percent of the people admitted to prison in Louisiana in 2015 had a primary offense (the offense for which they were given the longest prison sentence) that was nonviolent.[42]  When counting secondary offenses (additional convictions that resulted in shorter prison terms), 81 percent of admissions were for nonviolent crimes.  The vast majority of those admitted for nonviolent crimes also had no prior primary violent crime on record with the Department of Corrections.[43]  Across offense categories—violent, property, drug, and other[44]—the largest number of admissions in 2015 was for drug offenses, more than half of which were admissions to prison for drug possession.[45]

# Primary Offense



In total, 86 percent of Louisiana's 2015 prison admissions had a primary offense (the offense for which they were given the longest prison sentence) that was nonviolent.

# Primary and Secondary Offense



When counting secondary offenses (additional convictions that resulted in shorter prison terms), 81 percent of 2015 admissions were for nonviolent crimes.

# Primary and Secondary Offense
# Plus Priors



Sixty-eight percent of admissions in 2015 had no primary or secondary violent convictions and no prior violent convictions (primary offenses) on record with the Department of Corrections.

**Longer prison terms do not reduce recidivism more than shorter terms.**

In addition to research comparing outcomes for prison and non-custodial alternatives, researchers have found that longer prison terms do not reduce recidivism more than shorter terms.[46] Studies on this subject compared recidivism outcomes for matched samples of similarly situated people who spent different amounts of time in prison. In general, they found no increased benefit of longer periods of incarceration, suggesting that prison terms could be reduced without increasing reoffending rates.[47]

In Louisiana, average time served for those who were released from prison in 2015 was about 2½ years. For possession of Schedule II drugs, the most common offense at admission, the average time served was about a year and five months.[48] A review of case files also determined that those sentenced to prison for common nonviolent offenses had served an additional six months in pretrial detention on average prior to being sentenced.[49]

♦ *Sentence lengths for common nonviolent crimes have increased.*

To highlight policy and practice areas affecting time served in Louisiana prisons, the Department of Corrections and technical assistance staff for the Task Force conducted a review of Department case files for inmates released in 2010 and in 2015.[50] The review showed a 10-month increase in average sentence lengths for newly sentenced prisoners convicted of common nonviolent offenses between the 2010 and 2015 samples.[51] It also showed average sentence lengths for probation revocations to be as long as those for newly sentenced prisoners.

♦ *Discretionary parole release used rarely, even for nonviolent crimes.*

The Parole Board heard 45 percent fewer cases in 2015 than it did 10 years prior, a reduction from 2,758 cases to only 1,504.[52] One likely explanation for the decline in cases heard is more restrictive eligibility. For example, nearly half of the 2015 case file sample of common nonviolent offenses was marked ineligible for parole, up from 38 percent in the 2010 sample.[53] In statute, most first- and second-time nonviolent felons are eligible for discretionary parole. Just between 2006 and 2015, though, the legislature adopted 55 new restrictions on parole eligibility for nonviolent crimes and another 25 new restrictions for violent crimes.[54]

♦ *Louisiana's longest-serving inmates have an outsized impact on prison resources.*

While the vast majority of people released from prison in 2015 had served less than three years, 605 people were released after having served more than 10 years.  Even though this is a small number of individuals, it's twice the number of people released in 2006 who had served that amount of time. Those 605 individuals also had an outsized impact on Louisiana's correctional resources, serving a combined 11,112 years in prison.[55]





At the end of 2015, there were 6,974 people in Louisiana's prisons who had already served more than 10 years.  This group of longest-serving inmates is large and growing fast, accounting for 19.3 percent of the total prison population and increasing in number by more than 2,400 since 2006.  Inmates in this category are likely to have been convicted of serious violent offenses.  Nearly half of the prisoners in this group were younger than 25 at the time of their offenses, and now nearly two-thirds are 45 years old or older.  Given the research that shows rates of offending peak in the late teens and early 20's,[56] it is likely that many of these prisoners have aged out of their crime committing years.  While lengthy prison terms may be justified as retribution for serious crimes, the research supports reducing prison terms for some of the state's longest serving inmates who no longer pose a threat to public safety.

Many of the longest-serving inmates in Louisiana's prisons are serving life sentences without the possibility of parole.  At the end of 2015, there were roughly 4,850 inmates serving these sentences.[57]  Unlike Louisiana, neighboring states like Texas, Mississippi, Georgia, Arkansas, and Alabama, provide parole eligibility for the vast majority of prisoners with life sentences.[58]

## 2. Findings:  Community Supervision

The prison population makes up just a third of Louisiana's total corrections population.  The other two-thirds, over 70,000 people and growing, are supervised in the community on probation or parole.[59]

As the supervised population has grown, so have caseloads.  Officers now maintain an average of 139 cases.[60]  High failure rates on supervision also feed the prison population.  At the end of 2015, revocations from probation and parole made up 43 percent of the state prison population.[61]

With the goal of increasing success rates for those on probation and parole, and ensuring that the state's resources are used effectively, the Task Force reviewed the body of literature on the principles of effective intervention.  These key principles of supervision and programming have been demonstrated by researchers to be strongly associated with reduced recidivism.  They include:

> 1) Focusing resources on those most likely to reoffend,
>
> 2) Addressing criminogenic needs associated with reoffending, and
>
> 3) Responding to violations with swift, certain, and proportional sanctions.

**Focus resources on those most likely to reoffend.**

Not every person with a criminal conviction is equally likely to reoffend.  Risk of re-offense can be reliably estimated with validated assessment tools based on a person's criminal history, age, and other relevant factors.  Research indicates that supervision practices have different success rates based on probationers' and parolees' risk levels.  To have the greatest impact on public safety, those who are most likely to reoffend should be the focus of the majority of supervision resources.[62]  Those who are less likely to reoffend are often most successful with little or no intervention.[63]

The Louisiana Department of Corrections currently uses the Louisiana Risk Needs Assessment (LARNA) tool to identify an individual's likelihood of reoffending and inform supervision levels for those on probation and parole.  The Department is also developing and piloting a new risk and needs assessment tool that improves upon the LARNA, the Targeted Interventions Gaining Enhanced Reentry (TIGER) tool.  Based on LARNA assessments, more than a third of those supervised by probation and parole officers have been assessed as low risk.[64]  Even with reduced reporting requirements, these supervisees make up a large share of caseloads and require state resources that could otherwise be dedicated to those who pose a higher risk of reoffending.

Alongside the research demonstrating that officers should focus on high-risk *supervisees*, there is also a body of research showing the value of focusing on high-risk *periods*.  Resources should be frontloaded in the first weeks and months of a person's supervision period when probationers and parolees are most likely to violate conditions or commit new crimes.  The number and rate of violations declines steadily over time, and the public safety benefit of supervising those who have been successful on community supervision declines significantly after the first year to 18 months.[65]

Average supervision terms in Louisiana are three years for probation and two years for parole,[66] well beyond the period when probationers and parolees are most likely to reoffend.  These long terms contribute to high caseloads and the growing community supervision population.  Frontloading supervision and programming in the initial high-risk months reduces recidivism more effectively than spreading resources evenly across long supervision terms.  By graduating those who are successful off of supervision after the initial high-risk period, officers can focus their attention on those who are more likely to reoffend.

**Address needs associated with reoffending.**

Effective community supervision aims to protect public safety by reducing the likelihood that a supervised person will commit another crime.  People on probation or finishing their sentences on parole may have a range of needs and challenges, only some of which are associated with reoffending.  Interventions should target "criminogenic needs," the factors most strongly associated with future criminal behavior.  Central factors that are predictive of recidivism include antisocial attitudes, substance abuse, and unstable employment, and can be addressed through a variety of evidence-based programming and treatment services.[67]

The Department of Corrections has made great strides in the past decade to identify and address prisoners' criminogenic needs.  Individuals in custody are rewarded with small amounts of time off of their prison stays for participating in reentry-focused classes and Certified Treatment and Rehabilitation Programs (CTRP) that address criminogenic needs.  A similar incentive structure, however, is not extended to those supervised in the community.  There are roughly twice as many people on probation and parole in Louisiana as there are in prison, yet there is no system-wide framework of incentives and rewards for those who comply with their supervision case plans, and rates of successful completion of supervision vary dramatically from one judicial district to another.[68]

The Task Force found incentives like "earned compliance credit" policies that are used in other states to be useful models for Louisiana.  For example, in 2012 the state of Missouri adopted a policy that shortened probation and parole terms by 30 days for each full calendar month that people on supervision complied with their conditions.  A 2016 study concluded that more than 36,000 probationers and parolees reduced their supervision terms by an average of 14 months with no uptick in recidivism.  As a result, the state's supervised population fell 18 percent, driving down caseloads for probation and parole officers.[69]

**Respond to violations with swift, certain, and proportional sanctions.**

In addition to incentives, research also suggests ways to structure sanctions to effectively deter reoffending and violations.  Sanctions that are delayed, inconsistently applied, or out of proportion in terms of severity are ineffective at changing problem behavior.  Randomized control trials and quasi-experimental studies have demonstrated the effectiveness of swift, certain, and proportional sanctions at reducing violations and new criminal behavior.[70]

The Legislature and Department of Corrections have established a range of intermediate penalties to respond to supervision violations with more swiftness, certainty, and proportionality than full revocations to prison.[71]  These include administrative sanctions that probation and parole officers can impose as soon as they become aware of violations, and Act 402 sanctions—three month jail penalties—that judges and the Parole Board can impose without terminating the person's community supervision.[72]

More than 2,000 Act 402 sanctions were imposed in 2015, helping reduce the number of full probation and parole revocations, even while the number of people on community supervision grew.[73]  An independent evaluation of the Act 402 policy in 2014 found that the three month penalty caps had reduced the average length of incarceration for first-time technical revocations in the state by roughly nine months, resulting in a net savings of approximately 2,034 prison beds per year, and saving taxpayers an average of $17.6 million in annual corrections costs.[74]

Despite this clear shift in approach toward evidence-based practices, intermediate sanctions are inconsistently applied, limited in terms of eligibility, and often more disruptive than necessary to the person's employment and family responsibilities.  Administrative sanctions, for example, are not authorized by every court, cannot be used for all technical violations, and impose jail time for even the least serious violations.  Act 402 sanctions are only available to those with underlying nonviolent crimes, and are restricted further to certain technical violations.  Additionally, for probationers, Act 402 sanctions can only be imposed once before resorting to full revocations.[75]

The most severe response to violations—revocation to prison—still accounts for the majority of prison admissions each year.[76]  Probation revocation sentences are often as long as those for newly sentenced prisoners, and unlike parolees, probationers do not generally receive credit toward their revocation prison terms for the portion of their sentences served in the community.[77]

## 3. Findings:  Criminal Justice Financial Obligations

Louisiana's court and corrections systems use fines, fees, restitution, and court costs to hold people accountable for criminal offenses and to help defray the cost of law enforcement, courts, and criminal justice services.  Fines and fees were a regular topic of public testimony before the Task Force and became a focus of its criminal justice system assessment.

**Criminal justice financial obligations should restore victims and hold people accountable without creating barriers to success.**

Studies of criminal justice financial obligations are relatively new compared to the decades of research on imprisonment and community corrections.  This emerging research suggests that when criminal justice debts become higher than a person can reasonably pay, they contribute to instability and increased risk of reoffending.

One recent study found that heightened financial stress created new barriers to success for those coming through the court system, a group that already had lower average employment rates and reduced earning capacity.  High criminal justice fines and fees resulted in housing and food instability, decreased ability to support children, and decisions to abscond from supervision or earn money through illegal means.[78]  Another study of fines and fees in juvenile court found increased likelihood of recidivism when adolescent defendants were unable to pay off criminal justice debt by the end of their supervision terms, a result which held true even when controlling for offense type, criminal history, and demographics.[79]

**The average probationer in Louisiana has large amounts of criminal justice debt.**

Beyond restitution to the crime victim and fines that are imposed as punishment for the offense, Louisiana statutes authorize hundreds of additional fees and costs.  They include:

- Monthly supervision fees;

- Fees to the indigent defender board and judicial expense fund;

- Payments for the cost of prosecution, law enforcement, and court services;

- Local jurisdiction fees; and

- Offense-specific fees for DWIs, drug-related crimes, and several others.[80]

Interest on unpaid criminal justice financial obligations also begins accruing 60 days after a person's sentence is imposed.[81]

Practitioners reported that most defendants agree to specified fines, fees, and costs as part of a plea agreement, without a separate determination by the court regarding their ability to pay those financial obligations.  Furthermore, Louisiana's statutes offer no guidance on partial payments, payment plans, or

debt forgiveness incentives, and there is no statewide oversight of financial obligations ordered and collected.[82]

Examining available Department of Corrections data, the Task Force found that the average person on felony probation had not paid his criminal justice debts in full at the time he was discharged from supervision.  A third of the restitution amount, when ordered, and half of other costs and fees, were still uncollected for the average probationer at the end of the supervision term.[83]  What's more, the penalties authorized in Louisiana's laws for failure to pay these debts in full—like incarceration or suspension of a person's driver's license—were creating additional barriers to successful reentry.[84]



*Totals only include those individuals ordered to pay these fines/fees.  Totals are restricted to fines/fees that the Department of Probation and Parole is responsible for collecting.

## *4. Findings:  Budgetary Decisions*

A companion piece of the Task Force's work, in addition to examining the research on evidence-based practices, was to review state budgetary decisions to assess whether they align with and support the research.

**Local decision-makers lack funding incentives to use prison alternatives.**

The Department of Corrections has achieved savings since 2014 with investments that expanded CTRP programs, shaving months off of participants' prison terms and helping to reduce reoffending.  The state also invested in expansions of Transitional Work Programs, Reentry Centers, and Day Reporting Centers to support inmates reentering the community and the workforce and to build out alternatives to parole revocations.[85]  However, similar funding incentives to expand programming and reduce prison admissions have not yet been extended to decision-makers in the parishes and judicial districts, or to community-based nonprofit organizations.

**Programming in parish jails is not adequately funded.**

While the state's Basic Jail Guidelines encourage those operating parish jails to provide treatment and rehabilitative programs,[86] the $24.39 per diem is only sufficient to cover housing and food.  Without additional funding from the state, sheriffs and wardens who provide programming must rely on local funding or community volunteers.  Additionally, because Transitional Work Programs rely on deductions of 64 percent of participants' gross wages,[87] its funding structure undercuts the primary purpose of those programs:  to help inmates build up savings prior to release.

**The state has cut behavioral health resources, and large numbers of people with substance abuse and mental health needs are landing in prison.**

The Task Force found a significant reduction in the number of adults served by Louisiana's behavioral health system, and a high concentration of people with behavioral health needs landing in prison. Between 2012 and 2015, the number of adults served by community behavioral health programs was nearly cut in half, from about 38,000 in 2012 to just over 21,000 in 2015.  In that same period of time, the number of adults served in Louisiana state psychiatric hospitals dropped 36 percent from just under 2,300 people to fewer than 1,500.[88]



Number of Adults Served by State Behavioral Health Services

Meanwhile 13 percent of those housed in state-operated prisons are diagnosed with a Serious Mental Illness (a prevalence rate about 3 times higher than in Louisiana's resident population), and 70 percent are diagnosed with a Substance Use Disorder (a prevalence rate roughly 8 times higher than the resident population).[89]

**Crime victim reparations funding has dwindled.**

Funding has also fallen significantly for crime victim reparations, which supplement restitution paid by the perpetrator of an offense to help victims restore damaged property and recoup medical costs, wages, and other losses related to the crime.  In 2015, Louisiana made no state appropriation for crime victim reparations.  Federal grant funding decreased 44 percent between 2010 and 2015, and additional victim restoration funds collected from fines and fees decreased 15 percent.[90]



## 5. *Findings:  Crime Victim and Survivor Priorities*

The Task Force hosted two roundtable discussions with crime victims, survivors, victim advocates, and justice professionals—one on November 14 at the Orleans Parish Courthouse, and a second one focused specifically on victim and survivor needs in rural communities on November 15 at the Rapides Parish Courthouse.  In addition to the roundtables, the Task Force and its technical assistance staff conducted interviews with service providers and Victim Assistance Coordinators, and heard testimony from victims and advocates at public hearings.[91]  The following issues were identified as priorities:

- ***Better enforcement of victims' rights:***  Testimony and outreach through the roundtables highlighted a need for more consistent enforcement of victims' rights to reasonable protection, including no-contact orders for victims and their children, and the inclusion of victim impact statements as part of pre-sentence investigations and plea agreements.  Roundtable participants called for education and training for justice system professionals on the dynamics of child abuse, domestic violence, and sexual assault.  They also recommended prioritizing collection of victim restitution, recognizing that it is one of the few ways the justice system holds people directly accountable to the person harmed.[92]

- ***Increased transparency and accessibility for victims:***  Roundtable participants recommended simplifying calculations for prison terms to make accurate information about the release dates of inmates more accessible and easier to understand.  They recommended developing a centralized, single point of entry for the automated victim notification system,[93] because currently victims and survivors must register twice:  first at the time of arrest and again after sentencing.  They also emphasized the need for law enforcement officers to provide victims with notice and registration forms, which participants said is already required by law but not consistently practiced.[94]

- ***Investment in victim services:***  Victim advocates reported that funding is needed for safety assessments and planning, trauma-informed services for adult and child victims, and shelters and transitional housing.  Noting that crime victims and survivors are a diverse group, they also recommended reinvestment of funds into services for victims who themselves have been incarcerated or who otherwise are members of under-served communities.

- ***Reducing the likelihood of re-offense and re-victimization:***  Victim advocates showed broad support for reinvestment into services that reduce reoffending.  They emphasized the need for substance abuse treatment in and out of prison, batterers' intervention programming, and expansion of prison alternatives and reentry services.  They also suggested reducing probation caseloads and removing restrictions on access to food stamps for those with drug convictions.[95]

# Policy Recommendations

Based on the Task Force's review of data and evidence-based practices and input from key stakeholders, the Task Force came to consensus on 21 policy recommendations that will help reduce Louisiana's nation-leading rate of imprisonment while protecting public safety.  As a package, the recommendations are projected to reduce the Louisiana prison population by 13 percent by 2027, achieving an estimated savings to the state of $305 million over the next decade.  The package would also reduce the community supervision population by 16 percent.  The Task Force recommends reinvesting more than half of the annual savings into evidence-backed prison alternatives, recidivism reduction programming, and services that support victims of crime.

These recommendations will:
- Ensure clarity and consistency in sentencing
- Focus prison beds on those convicted of serious violent offenses
- Strengthen community supervision
- Clear away barriers to successful reentry
- Reinvest a substantial portion of the savings
- Collect data and track outcomes

## *Ensure clarity and consistency in sentencing*

**Recommendation 1:  Implement a felony class system to eliminate inconsistencies in sentencing and release.**

As of 2016, there were at least 626 unique felony crimes in Louisiana. The state's haphazard and unwieldy system of individual penalties imposes disparate sentences for similar crimes. Stealing a cell phone worth $600, for example, is a misdemeanor with a maximum 6-month jail sentence, while *possession* of a stolen cell phone worth $600 is a felony with a maximum 10-year sentence.

Additionally, each individual crime has its own restrictions on how the sentence can be served, including whether it can be served on probation in the community and how much of it can be converted to parole supervision (by way of back-end release mechanisms like good time, parole release, and CTRP credit). Many practitioners report that options for parole release are particularly narrow and change often. Since 1968, the Legislature has adopted 153 individual statutory restrictions on parole.  Eighty of those restrictions were passed between 2006 and 2015.

Lawyers, judges, crime victims, and families of incarcerated people have expressed that the state's inconsistent and confusing sentencing and release laws make it needlessly difficult to predict how much time a person will spend in prison.

Specific Actions Recommended:  To simplify Louisiana's criminal penalties and create greater certainty in sentencing, the Task Force recommends:

a.  Adopting a felony class system in accordance with the table below, and linking each felony class to eligibility criteria for prison alternatives, hard labor requirements, and jury size.   A table of common offenses in each felony class and a full listing of offenses and their felony class designations are provided in Appendix A of this report.

| Felony Class | Sentence Range | Offense Examples | Hard Labor | Ability to suspend | Jury Type |
|---|---|---|---|---|---|
| Life | Life sentence or death penalty | Murder I | With | None | 12-person |
| Class A | 10 – 40 years | Armed robbery | With | Minimum cannot be suspended | 12-person |
| Class B | 2 – 40 years | First degree robbery | With | Minimum cannot be suspended for serious offenses[96] | 12-person |
| Class C | 1 – 20 years | Theft of over $25,000 | With | Minimum cannot be suspended for serious offenses[97] | 12-person |
| Class D | 1 – 10 years | Simple burglary | With or without | All | 6-person |
| Class E | 1 – 5 years (max 2 years unsuspended prison) | Unauthorized entry of an inhabited dwelling | With or without | All | 6-person |
| Class F | *Miscellaneous offenses with unchanged sentencing penalties* | *Trafficking of children* | *Unchanged* | | |

*Underlined numbers denote a mandatory minimum sentence.*

b.  Establishing intent language that encourages future legislatures to classify newly created crimes or penalty enhancements within the felony class system, ensuring that it remains a clear and consistent organizing structure for sentencing in Louisiana.

c.  Expanding and simplifying eligibility for release measures that convert sentences to community supervision by:

  i.  Consolidating eligibility for parole by class and prior offenses (i.e. eliminating individual statutory restrictions on parole offenses, excluding those in Class F).

ii.    Streamlining parole laws for those convicted of nonviolent offenses to set eligibility for discretionary parole at 25 percent of sentence served, and extending eligibility to those with two or more prior felony convictions.

iii.   Changing good time release incentives for the least serious nonviolent offenses (Class D and E nonviolent offenses) to authorize good time release at 35 percent of sentence served.

iv.    Consolidating parole and good time laws for those convicted of violent offenses, with no prior violent or sex offense convictions, setting eligibility for discretionary parole at 55 percent of sentence served, and eligibility for good time release at 65 percent of sentence served.  This would exclude those sentenced to life in prison.

v.     Unifying the definition of "sex offense" for the purposes of parole consideration and diminution of sentence, to ensure that these inmates only become eligible for discretionary parole consideration after 75 percent of their prison sentence has been served, and are ineligible for diminution of sentence.

**Recommendation 2:  Increase equity by making back-end release mechanisms retroactive for those convicted of nonviolent offenses.**

Because of numerous laws adopted by the Legislature affecting parole, good time, and CTRP credit, individuals in the corrections system often serve different amounts of time in prison, even with identical sentences.  Statutes related to good time, for example, have changed at least 12 times since 1992.[98]

Specific Action Recommended:  To create greater equity across criminal penalties, the Task Force recommends applying retroactively all back-end release mechanisms outlined in its first recommendation for those in prison for nonviolent offenses.

**Recommendation 3:  Improve and streamline the victim notification process, including registration into the system.**

At the Task Force's roundtables, crime victims, survivors, and victim advocates recommended developing a centralized, single point of entry for the automated victim notification system, because currently victims and survivors must register twice:  first at the time of arrest and again after sentencing. Participants also suggested creating an opportunity to provide a victim statement related to measures that should be put in place for their protection when prisoners reenter the community.[99]

<u>Specific Actions Recommended</u>:  To close gaps in victim notification and engagement, the Task Force recommends:

    a.  Simplifying the victim registration and notification process with electronic forms centralized with a single registration point.[100]

    b.  Creating an opportunity, when notified about a prisoner's upcoming release, for the victim to provide a statement requesting measures that they believe should be put in place for their protection.

*Focus prison beds on those who pose a serious threat to public safety*

**Recommendation 4:  Expand alternatives to incarceration.**

Leading criminologists, in examining whether the experience of prison changes people's behavior, have found that incarceration does not reduce recidivism more than non-custodial sanctions.[101]  Despite this research, Louisiana has sent a growing share of people convicted of felony offenses to prison over prison alternatives.  Thirty-three percent of felony cases in 2015 (6,755 cases) resulted in a prison sentence, up from 24 percent (4,536 cases) 10 years prior.[102]

The Task Force found that the use of probation and other prison alternatives was limited by restrictions that are built into Louisiana's statutes.  Probation and drug courts, for example are not available as options for any violent crimes, even less serious offenses that may be driven by substance abuse.[103]  Probation is also unavailable for most nonviolent crimes when the person has two prior felony convictions.[104]  Eligibility for the Substance Abuse Probation Program—a treatment-focused prison alternative—is even more restricted, excluding anyone whose crime was not drug possession or possession with intent to distribute, even if those other crimes were related to drug or alcohol addiction.[105]

Specific Actions Recommended:  To expand access to evidence-based prison alternatives for those who can be safely supervised in the community, the Task Force recommends:

a.  Extending probation eligibility to:
    i.   Third-time nonviolent offenses, excluding those who would be excluded as second-time felons under current law, and
    ii.  First- and second-time violent Class D and E felonies that are not related to domestic violence.

b.  Matching Substance Abuse Probation eligibility with drug court eligibility to include not only drug possession and possession-with-intent offenses, but also other offenses like property crimes that are related to drug and alcohol use.

c.  Expanding eligibility for drug court and Substance Abuse Probation to include those with lower-level violent offenses (first- and second-time Class D and E violent offenses that are not related to domestic violence) as well as those with prior violent or sex offenses.

**Recommendation 5:  Revise drug penalties to target higher-level drug offenses.**

Decades of research demonstrate that long prison sentences do not effectively deter lower-level drug crimes.  While lengthy prison terms may be important tools to incapacitate high-level traffickers who control drug markets, they fail to impact lower-level drug crime.  Long prison terms are not more effective than shorter terms at reducing recidivism.  They also fail to disrupt drug markets or impact the price and availability of illicit drugs, because new recruits quickly replace those incapacitated with prison terms.[106]

Given the limited impact of prison sentences on drug crime, the Task Force found that Louisiana could tailor penalties to better differentiate between lower-level drug crimes and higher level traffickers who control the marketplace.  The state's current penalties for drug possession, for example, do not distinguish addiction-driven behavior from more serious conduct. While average daily heroin use for an addicted person ranges from 300-500 milligrams,[107] the least severe penalty category for heroin possession encompasses 0-28 grams—imposing the same penalty for possession of a single day's dosage or nearly 90 times that amount.  Moreover, commercial drug offenses (sale and distribution) in Louisiana have no weight thresholds, so a person charged with selling less than 1 gram of heroin would face the same penalty as someone charged with moving several kilos.[108]

<u>Specific Actions Recommended</u>: To target higher-level drug offenses, the Task Force recommends:

a. Narrowing sentence ranges for lower-level possession offenses, and either:
    i. Reclassifying possession above certain weight thresholds as commercial drug activity (policy recommendation 1 in the table on the next page), or
    ii. Making no change to current laws for possession above those weight thresholds (policy recommendation 2 in the table on the next page).

b. Establishing presumptive probation sentences for first-time possession offenses that fall into the lowest weight threshold. This would create a rebuttable presumption that the person convicted will serve out the sentence under supervision in the community unless the court finds that he or she poses a significant risk to the public.

c. Scaling penalties for distribution, manufacturing, and other commercial drug offenses to distinguish larger-quantity from smaller-quantity commercial activity.  See the table on the next page.

| Weight | Possession | Commercial | Possession | Commercial |
|---|---|---|---|---|
| | Policy Recommendation 1 | | Policy Recommendation 2 | |
| *Marijuana + Synthetic Marijuana* | | | | |
| 0 – 2.5kg | *Unchanged* | D Felony | *Unchanged* | D Felony |
| 2.5kg+ | | C Felony | C Felony | |
| *Schedule I Controlled Substances (excluding marijuana)\** | | | | |
| 0 – 2g | 0 – 2 years* | Heroin: C Felony** Other: D Felony | 0 – 2 years* | Heroin: C Felony** Other: D Felony |
| 2g – 28g | D Felony* | | D Felony* | |
| 28g+ | *Unchanged* | Heroin: B Felony Other: C Felony | Heroin: B Felony Other: C Felony | |
| *Schedule II Controlled Substances* | | | | |
| 0 – 2g | 0 – 2 years | D Felony* | 0 – 2 years | D Felony* |
| 2g – 28g | E Felony | | E Felony | |
| 28g+ | *Unchanged* | C Felony* | C Felony* | |
| *Schedule III Controlled Substances* | | | | |
| Any | E Felony | D Felony | E Felony | D Felony |
| *Schedule IV Controlled Substances\*\*\** | | | | |
| Any | E Felony | D Felony | E Felony | D Felony |
| *Schedule V Controlled Substances* | | | | |
| Any | E Felony | D Felony | E Felony | D Felony |

*Excluding phencyclidine, which, for possession offenses, will be a C felony.*

**Production or manufacture of methamphetamine or amphetamine in front of a minor will maintain the existing penalty range and will not be included in the felony class system (15 – 30 years, with a minimum 15 years without probation, parole, or suspension of sentence).*

***Excluding flunitrazepam, which, for possession offenses, will be a D felony, and for commercial offenses, will be a C felony.*

**Recommendation 6:  Consolidate laws on property crimes and raise the value threshold for felony charges.**

Prison admissions for property crimes jumped 53 percent between 2006 and 2015.[109]  The increase was not related to a spike in property crime.  In fact, reported property crimes dropped 18 percent over that period of time.[110]  Louisiana laws create felony-level penalties for theft or property damage valued at $750, an amount lower than the felony threshold in two thirds of other states.[111]  A recent study of the 28 states that raised their felony theft thresholds between 2001 and 2011 found no correlation between the threshold amount and property crime rates, and no significant crime impact of raising the threshold amount.[112]

Louisiana has a high number of overlapping property offenses and several inconsistent penalties.  For example, state statutes include 11 different burglary and unauthorized-entry offenses, and 32 misappropriation (theft) offenses.  The maximum penalty in Louisiana statutes for *unauthorized use* of a motor vehicle worth $4,500 is more severe than the penalty for *theft* of that vehicle.  The piecemeal creation of property crimes and penalties in the state has generated a disjointed and over-complicated criminal code.

<u>Specific Actions Recommended</u>:  To simplify the criminal code, bring Louisiana's laws in line with other states, and focus costly prison beds on more serious crimes, the Task Force recommends:

a.  Raising the felony theft threshold to $1,500 for value-adjusted property crimes.[113]

b.  Reducing the maximum sentence to 2 years for unauthorized use of a motor vehicle.

c.  Merging the following crimes under the theft statute:  theft of goods, theft of livestock, theft of timber, theft of utility service, theft of utility property, theft of petroleum products, theft of oilfield geological survey equipment, theft of oil and gas equipment, cheating and swindling, theft of assets of a person who is aged or a person with a disability, theft of a business record, theft of animals, unauthorized removal of property from the Governor's mansion and state capitol complex, and theft of copper or other materials.

d.  Consolidating two forms of aggravated burglary crimes as a Class C offense—aggravated burglary and home invasion—to include four currently shared offense elements:
1) unauthorized entry, 2) of an inhabited dwelling, 3) while a person is present, 4) with intent to commit a felony, and with one of the accompanying aggravating factors:  a) armed with a dangerous weapon, b) with intent to commit a violent felony, or c) with a vulnerable victim present.

**Recommendation 7:  Distinguish penalties for weapons offenses and enhancements according to the severity of the underlying crime.**

Louisiana has experienced an uptick in prison admissions for weapons offenses, driven in large part by the offense of possession of a firearm by a felon.  Admissions for that offense more than tripled in the last decade.  By 2015, it was the fourth most common offense at admission.[114]

Upon examination of weapons crimes in Louisiana, Task Force members found that current weapons crimes do not adequately differentiate penalties by the severity of the underlying offense.  Someone who was convicted of a drug possession offense, for example, would be subject to the same mandatory minimum for a subsequent weapons offense as someone convicted of armed robbery.

<u>Specific Actions Recommended</u>:  To provide greater differentiation within weapons offenses, the Task Force recommends:

a.  Tiering penalties for possession of a weapon by a felon by the severity of the predicate offense, as outlined in the table below.

| Offense | Current Sentence | MM | Recommended Sentence | |
|---|---|---|---|---|
| Possession of a weapon by a felon | <u>10</u> to 20 yrs* | 10 | Prior crime of violence | Unclassified (<u>10</u> to 20 yrs)* |
| | | | Prior commercial drug offense | |
| | | | **Prior sex offense** | **D 1 to 10 years** |
| | | | **Prior possession or other enumerated offense** | **E 1 to 5 years** |
| Attempted possession of a weapon by a felon | 0 to 7.5 yrs | 0 | E 1 to 5 years | |

<u>*Underlined numbers*</u> *denote a mandatory minimum sentence.*

*\*With the exception of possession of a weapon by a person convicted of domestic abuse battery, which currently carries a maximum 5 year sentence.*

b. Classifying penalties as more severe for illegal use or carrying of a weapon or dangerous instrumentality during a violent crime or commercial drug offenses than during a non-commercial drug offense, as outlined in the table below.

| Offense | Current Sentence | MM | Underlying Crime | Recommended Sentence |
|---|---|---|---|---|
| **La. R.S. 14:94    Illegal use of weapon or dangerous instrument** | | | | |
| Illegal use of a weapon | 0 – 2 yrs | 0 | NA | E 1 to 5 years |
| Illegal use of a weapon, 2nd conviction | 5 – 7 yrs | 5 | NA | D 1 to 10 years |
| Discharging weapon from motor vehicle | 5 – 10 yrs | 5 | NA | D 1 to 10 years |
| Discharging a firearm during crime of violence/drug offense | 10 – 20 yrs | 10 | **Commercial Drug/Violent** | **A 10 to 40 years** |
| | | | Non commercial | B 2 to 40 years |
| Discharging a firearm during crime of violence/drug offense, second offense | 20 – 99 yrs | 0 | Any | A 10 to 40 years |
| Discharging a firearm during crime of violence/drug offense with silencer or machine gun | 20 – 30 yrs | 20 | **Commercial Drug/Violent** | **A 10 to 40 years** |
| | | | Non commercial | B 2 to 40 years |
| Discharging a firearm during crime of violence/drug offense with silencer or machine gun, second or subsequent conviction | Life | Life | Any | Life or Capital |
| **La. R.S. 14:95    Illegal carrying of weapons or dangerous instrumentalities** | | | | |
| During crime of violence | 1 – 2 yrs | 0 | NA | E 1 to 5 years |
| During crime of violence, second conviction | 0 – 5 yrs | 0 | NA | E 1 to 5 years |
| During crime of violence, third and subsequent conviction | 0 – 10 yrs | 0 | NA | D 1 to 10 years |
| Uses or possesses weapon during crime of violence or drug offense | 5 – 10 yrs | 5 | **Commercial Drug/Violent** | **C 1 to 20 years** |
| | | | Non commercial | D 1 to 10 years |
| Uses or possesses weapon during crime of violence or drug offense, second conviction | 20 – 30 yrs | 20 | **Commercial Drug/Violent** | **B 2 to 40 years** |
| | | | Non commercial | C 1 to 20 years |

**Recommendation 8:  Reduce the window of time for which certain prior crimes would count toward current habitual offender penalty enhancements.**

While they make up a small percentage of total annual admissions, the number of prisoners admitted with habitual offender penalty enhancements more than doubled between 2006 and 2015.[115]  Currently, the "cleansing period" for prior felonies under the habitual offender law is 10 years, meaning any felony sentence completed within the prior 10 years, whether it is a prior possession offense or aggravated rape offense, can trigger mandatory minimum prison time and a doubling of the maximum available sentence.[116]

Specific Action Recommended:  To better focus the application of habitual offender penalty enhancements on those with serious priors, the Task Force recommends reducing the cleansing period for lower-level felonies—those that under the felony class system would be categorized as Class C, D, and E felonies—to 5 years.  The law would remain the same for priors that were higher-level felonies.

**Recommendation 9:  Establish a temporary furlough policy for inmates with serious medical needs.**

The Task Force found that a small number of Louisiana prisoners with serious medical needs were costing the Department of Corrections (and ultimately taxpayers) millions of dollars each year.  Because Medicaid eligibility is suspended during periods of incarceration under federal law, costly treatment for prisoners with cancer, heart disease, and other chronic or urgent medical conditions is paid for entirely with state tax dollars.

Specific Action Recommended:  To reduce the cost burden on state taxpayers, the Task Force recommends creating a medical furlough policy permitting the Department of Corrections, with approval by the Parole Board, to temporarily release inmates with serious medical needs to parole supervision in the community, where their treatment costs can be covered by Medicaid.  All inmates besides those on death row would be eligible for the temporary furlough option if they have limited mobility and/or are unable to perform daily activities unassisted.

**Recommendation 10:  Expand incentives for inmates to participate in recidivism reduction programming.**

While longer prison terms do not reduce recidivism more than shorter terms,[117] research has demonstrated that what does work to reduce recidivism is tailoring treatment and programming to an inmate's individual criminogenic needs, and incentivizing inmates to participate in and complete that programming.[118]  Louisiana has already taken an important step toward recidivism reduction with the creation of Certified Treatment and Rehabilitation Program (CTRP) credit, which permits inmates to convert up to 360 days of their prison sentences to community supervision time for participation in certain evidence-based programming.

However, while the Task Force's data analysis revealed an increase in the share of prisoners with underlying nonviolent crimes receiving CTRP credits,[119] a large number of high-risk and high-needs prisoners in Louisiana, who would benefit most from evidence-based programming, are ineligible for the CTRP credit incentive by virtue of their offense type, priors, or habitual offender penalty enhancement.[120]  Additionally, programs like the Workforce Development Transitional Work Program, which helps train and place inmates in high-skilled jobs as licensed craftsmen,[121] and the 100-hour Reentry Program, are subject to the same limits on CTRP time maximums as less demanding alternatives, reducing the incentive to complete them.

<u>Specific Actions Recommended</u>:  To incentivize participation in programming designed to reduce reoffending for a broader group of prison inmates, as well as programming that leads to reentry into high-skilled jobs, the Task Force recommends:

a.  Expanding eligibility for CTRP credit to those convicted of violent offenses with one serious prior offense.

b.  Extending eligibility for CTRP credit to those sentenced under the habitual offender penalty enhancements (excluding people convicted of violent offenses with one prior serious offense, and people convicted of sex offenses).

c.  Lifting the statutory 90-day limit on how much CTRP credit can be awarded for individual programs.

d.  Expanding the maximum amount of CTRP time that inmates can earn for participation in the Workforce Development Transitional Work Program, based on the following formula:  One year of CTRP credit for successfully completing the intensive 6-month training program, followed by one month of CTRP credit for every satisfactory 6-month review of on-the-job training.

**Recommendation 11:  Bring Louisiana into compliance with the *Montgomery* decision by retroactively extending parole eligibility to inmates who were juveniles sentenced to life without parole.**

In 2012, the U.S. Supreme Court concluded in *Miller v. Alabama* that mandatory sentences of life without the possibility of parole were unconstitutional when applied to people who were under the age of 18 at the time of the offense.[122]  In 2016, the Court clarified in *Montgomery v. Louisiana* that the ruling in *Miller* applied retroactively for those already in prison with life sentences for offenses committed as juveniles.[123]  In Louisiana, this retroactive ruling would affect more than 300 inmates.[124]

Specific Actions Recommended:  To comply with Supreme Court case law, the Task Force recommends retroactively extending parole eligibility after 30 years served to juveniles sentenced to life without parole prior to 2012 for homicide offenses.

**Recommendation 12:  Streamline parole releases for those who are compliant with case plans and institutional rules.**

One mechanism to safely reduce prison terms for those who have demonstrated behavioral progress and complied with case plans and institutional rules is discretionary parole.  However, the portion of inmates released on discretionary parole has diminished.  In 2015, only two percent of those released from prison were discretionary parole releases.[125]

This reduction in parole releases was not due to a more restrictive Parole Board (whose grant rates have actually increased in recent years), but instead due to fewer hearings.  The Parole Board heard 45 percent fewer cases in 2015 than they did 10 years prior, a reduction from over 2,700 cases to roughly 1,500.[126]  This is partly, but not entirely, explained by a growing number of parole eligibility restrictions.  While it is difficult to pinpoint exactly why a shrinking number of prisoners have the opportunity to present their case to the Parole Board, practitioners also point to time intensive administrative requirements associated with the parole release process and increased eligibility for other types of release mechanisms.

Specific Action Recommended: To streamline the parole release process for inmates who are compliant with their case plans and institutional rules, the Task Force recommends establishing an "on-time parole" policy in statute.  The policy would authorize and direct the Department of Corrections to release a person onto parole supervision, with notification to the Parole Board, if a prisoner has reached his or her parole eligibility date and complied with institutional rules and his or her case plan (if a case plan was created for the person).  The Parole Board would provide timely notice to the victim and an opportunity to request a hearing.  Otherwise discretionary parole hearings would be reserved for inmates who have not complied with their case plans or with institutional rules.  (This recommendation is a prospective policy only.)

## Strengthen Community Supervision

**Recommendation 13:  Focus community supervision on the highest-risk period by reducing maximum probation terms and establishing an earned compliance credit incentive.**

Researchers have found that probationers and parolees are most likely to violate conditions or commit new crimes during the first months of supervision. The number and rate of violations declines steadily over time, and the public safety benefit of supervising those who have been successful on community supervision drops significantly after the first year.[127]  Average supervision terms in Louisiana are three years for probation and two years for parole,[128] well beyond the period when probationers and parolees are most likely to reoffend.

These long terms contribute to a large and growing community supervision population.  An average officer in Louisiana supervises 139 probationers and parolees at a time,[129] and the state's court and corrections systems lack a consistent framework for graduating those who have been successful off of those caseloads.  Incentives like "earned compliance credit" policies adopted in Missouri and many other states may serve as good models for Louisiana.  An August 2016 study of Missouri's policy concluded that more than 36,000 probationers and parolees in that state had reduced their supervision terms by an average of 14 months, without increased re-offense rates.  As a result, the state's supervised population fell 18 percent, driving down caseloads for probation and parole officers.[130]

<u>Specific Actions Recommended</u>: To frontload limited resources during the highest-risk supervision period and incentivize compliance with probation and parole conditions, the Task Force recommends:

a. Establishing probation sentence ranges of 0-3 years instead of 1-5 years.

b. Establishing an earned compliance credit law that awards 30 days off of a probation or parole term for every full calendar month that the person complies with their supervision conditions. The law would authorize the sentencing judge or parole board to take away or reduce the 30-day credit each month for noncompliance.  The law would be applied prospectively for new supervision intakes, and to ensure equity, those currently on supervision would be able to start earning credits as of the law's effective date.

**Recommendation 14:  Address gaps and deficiencies in swift, certain, and proportional sanctions for violations of probation and parole conditions.**

Research has demonstrated repeatedly that swift, certain, and proportional sanctions are strongly associated with reduced violations and recidivism.[131]  Even very short sanctions, when applied with swiftness and certainty, can redirect behavior without significant disruption to a person's job and family responsibilities.[132]  In the last decade, the Louisiana Legislature and Department of Corrections have established a range of intermediate penalties that can be imposed in response to supervision violations with more swiftness, certainty, and proportionality than full revocations from prison.[133]

Despite this clear shift in approach toward the principles of effective intervention, intermediate sanctions in Louisiana are inconsistently applied, limited in terms of eligibility, and often more disruptive than necessary to the person's employment and family responsibilities.  Administrative sanctions, for example, are not authorized by every court, cannot be used for all technical violations, and impose jail time for even the least serious violations.  Act 402 sanctions are only available to those with underlying nonviolent crimes, and are restricted further to certain technical violations.  Additionally, for probationers, Act 402 sanctions can only be imposed once before resorting to full revocations.[134]  The most severe response to violations—revocation to prison—still accounts for the majority of prison admissions each year.[135]  They also remain the primary response to violations,[136] as shown by the table below:

| Sanction type | Number of Sanctions Imposed in 2015 |
|---|---|
| Revocations | 9,658 |
| Act 402 sanctions | 2,311 |
| Administrative jail sanctions | 1,767 |

Probation revocation sentences are long, and unlike parolees, probationers do not generally receive credit toward their revocation sentences for time successfully served in the community.[137]

<u>Specific Actions Recommended</u>: To address gaps and deficiencies in swift, certain, and proportional sanctions for violations of probation and parole conditions, the Task Force recommends:

a. Directing the Department of Corrections to incorporate incentives into its administrative sanctions grid, to eliminate jail sanctions for the lowest level violations of supervision conditions, and to reduce administrative jail sanctions for the other categories of violations.

b. Expanding eligibility for administrative sanction to include probationers and parolees who are arrested on charges that are not violent, sex, or related to domestic violence.

c. Authorizing Act 402 sanctions for all noncriminal violations[138] and for all probationers and parolees regardless of their underlying offense, and reducing their length to 15 days for the first Act 402 sanction, 30 days for the second, and 45 days for a subsequent sanction.

| Sanction Number | Available Penalty |
|---|---|
| First Act 402 Sanction | Up to 15 days in jail |
| Second Act 402 Sanction | Up to 30 days in jail |
| Subsequent Act 402 Sanction | Up to 45 days in jail |

   i. In cases where the supervisee agrees to participate in a 90-day treatment program in incarceration, and complete it, the law would credit the time toward the person's supervision sentence.

d. Resolving discrepancies for revocation and intermediate sanction policies as they apply to people on probation and those on parole supervision, including:

   i. Requiring credit toward suspended sentences for time successfully served on probation (as it is for parole revocation sentences).
   ii. Eliminating the cap on the number of Act 402 sanctions available for probationers (to match the current policy for parolees).
   iii. Authorizing supervision officers statewide to impose administrative sanctions for probation violations (to match their authority to impose sanctions for parolees).
   iv. Providing credit for time served pre-revocation-hearing for parolees (equal to the time-served calculation for probationers).
   v. Clarifying in statute that pre-revocation-hearing detainers for parolees are temporary and should expire if the judge sets bond for the new charge (to mirror bond practices for probationers awaiting revocation hearings).

e. Applying the same good time calculation for revocations as for newly sentenced prison admissions.

## *Clear Away Barriers to Successful Reentry*

**Recommendation 15:  Address collateral consequences of felony convictions that create barriers to reentry.**

Because researchers have found that parolees are most likely to fail in the first weeks and months following release from prison, both supervision and reentry supports should be frontloaded to focus on that high-risk period.[139]  To increase parolees' odds of long-term stability and success in the community, the Department of Corrections has expanded its transition and reentry services into more parish jails, and has launched the Louisiana Prisoner Reentry Initiative to strengthen collaboration with community stakeholders and improve access to housing, employment, and treatment for addiction recovery.  State law, however, contains provisions that restrict access to housing, employment, food stamps, and other reentry supports, and many of the restrictions provide little to no public safety benefit.[140]

<u>Specific Actions Recommended</u>:  To remove hurdles for those with felony convictions and ease the transition for parolees reentering the community and the workforce, the Task Force recommends:

a.  Eliminating the restriction for those with drug convictions from receiving Supplemental Nutrition Assistance Program benefits during their first year following release from prison.

b.  Improving the licensing board requirements adopted in Act 809 of 2014 to require full professional licensure to qualified applicants rather than provisional licenses, to eliminate waiting periods for license applications, and to prohibit discrimination in licensure based on underlying violent or sex offenses, except where the profession is specifically relevant to the nature of the crime.

c.  Directing the Louisiana State Law Institute to study restrictions in the law placed on those convicted of sex offenses, and recommend statutory changes to improve compliance rates, streamline and reduce redundancies, and eliminate reentry barriers that provide little to no public safety benefit.

**Recommendation 16:  Tailor criminal justice financial obligations to a person's ability to pay.**

Emerging research suggests that imposing fines, fees, and other criminal justice financial obligations in amounts greater than defendants can reasonably pay creates barriers to successful reentry, and may increase the person's likelihood of absconding or reoffending.[141]  Defendants in Louisiana generally agree to financial obligations at sentencing without a determination by the court of whether they would cause financial hardship, and Department of Corrections data suggest that most felony probationers do not pay off the debts imposed even by the end of their probation terms.

Specific Actions Recommended:  To hold people accountable for criminal behavior without creating new barriers to success, the Task Force recommends:

a.  Establishing in statute the Legislature's intent that the purpose of criminal justice financial obligations is to hold people accountable and to help defray the cost of criminal court and criminal justice services, and that they should not create barriers to successful rehabilitation and reentry.  Further establishing that obligations in excess of what a defendant can reasonably pay undermine the primary purpose of the justice system to deter criminal behavior and encourage compliance with the law.  Therefore, obligations that cause undue hardship should be waived, modified, or forgiven.

b.  Requiring the court at sentencing to determine whether payment in full of the criminal justice financial obligations ordered by the court or negotiated in a plea agreement would cause substantial financial hardship to the defendant or his or her dependents.  Substantial financial hardship is defined in law at La. R.S. 15:175, and should be presumed if the defendant has been found indigent for purposes of appointing counsel.

c.  Mandating waiver of criminal justice financial obligations, or a single payment plan for all obligations relevant to the conviction, if payment in full would cause substantial financial hardship.  The plan should calculate monthly payments of "one day's pay" based on the defendant's average gross daily income for an eight-hour workday.
   i.  If victim restitution is ordered, half of the person's monthly payment should go toward restitution.
   ii.  During any periods of unemployment, homelessness, or other circumstances in which the person is unable to make a monthly payment the court or the person's probation officer should be authorized to impose a payment alternative.  Payment alternatives would include, but would not be limited to, substance abuse treatment, education, job training, or up to 15 hours of community service.
   iii.  The court would retain its authority to waive or modify criminal justice financial obligations after they have been ordered if the person's circumstances and ability to pay change.

d.  Incentivizing people to make regular payments by forgiving outstanding criminal justice debts after 12 months of consistent payments or half of a person's supervision term, whichever is longer.

**Recommendation 17:  Modify penalties for failure to pay criminal justice financial obligations.**

Penalties authorized by Louisiana laws for failure to pay criminal justice debts in full may make it harder for those who are otherwise compliant with conditions of supervision to successfully reenter the community and the workforce.  Incarcerating a person, suspending their driver's license, or extending their probation term for failure to pay the full amount of fines and fees ordered upends the prosocial aspects of their lives that promote stability and reduce likelihood of reoffending.  They also make it harder for people to disentangle themselves from the criminal justice system.[142]

Specific Actions Recommended:  To support successful reentry into the community and the workforce, and to distinguish between those *choosing not to pay* criminal justice financial obligations from those who are *unable to pay* them, the Task Force recommends:

a.  Restricting incarceration and suspension of driver's licenses as penalties for failure to pay criminal justice financial obligations to only those cases in which the court finds willful failure to pay, as opposed to inability to pay.

b.  Mandating proactive steps to address missed payments or hearings on criminal justice financial obligations before resorting to bench warrants.  At a minimum, steps would include: 1) notification to the defendant's last known address of the process for resolving the missed payment or hearing, 2) a clear statement that the person will not be jailed for inability to pay, and 3) a date by which the defendant should make the payment or request a payment alternative or a modification of their criminal justice financial obligations.

c.  Eliminating interest on unpaid criminal justice financial obligations.

d.  Prohibiting the extension of a person's probation supervision for purposes of collecting unpaid criminal justice debts.

**Recommendation 18:  Suspend child support during incarceration.**

Research has shown that parolees are most likely to fail in the first weeks following release from prison, and that achieving some early stability by reentering the workforce during that transition period increases the person's odds of long-term success.[143]  The Task Force found that a common hurdle for those reentering the workforce is the deduction of large amounts of child support arrears from their initial paychecks during that highest-risk period of post-release supervision.  Minimum monthly child support payments in Louisiana are $100, and there is currently no law suspending payments and arrears while a person is incarcerated.[144]

Specific Action Recommended:  To strengthen the transition from prison back to the workforce, and to avoid garnishment of full paychecks during the highest-risk period post-release, the Task Force recommends requiring courts to suspend child support payments and arrears if the payer is incarcerated longer than 30 days.  Courts would be authorized to reactivate payments when the person is released from jail or prison, or if the person is placed in a Transitional Work Program while incarcerated.

**Recommendation 19:  Expand eligibility period for Transitional Work Programs and increase take-home pay.**

Transitional Work Programs place state inmates in full-time jobs earning more than minimum wage, allowing them to make employer contacts, build job skills, and build up savings prior to release from prison.[145]  The Task Force's budget and finance subgroup found that the funding structure for these programs, which relies in part on garnishing participants' wages by up to two-thirds,[146] undercuts their primary purpose of enabling participants to build up savings prior to release.

Specific Actions Recommended:  To better equip those returning home from prison to reenter the workforce and to resume financial responsibilities, the Task Force recommends:

a.  Expanding the eligibility period for participation in Transitional Work Programs for most inmates to include the last six years of the person's prison term (for those currently eligible during the last four years of their prison terms).

b.  Reducing the local housing per diem for inmates who have become eligible for transfer into a Transitional Work Program from $24.39 to $10.25 in order to encourage local facilities that do not provide Transitional Work Programs to transfer eligible inmates to facilities that do.

c.  Reducing the portion of wages that can be taken as participation fees for Transitional Work Programs from 64% or $451.50 per workweek (whichever is less) to 50% or $350 per workweek (whichever is less), and increasing the minimum balance for inmate trust accounts for those participating in Transitional Work Programs from $200 to $400.[147]  The wage garnishment policy change would be partially offset by a per diem increase for Transitional Work Programs.

## *Reinvest a Substantial Portion of the Savings*

**Recommendation 20:  Reinvest more than half of the dollars saved from reduction in the state prisoner population.**

High levels of imprisonment have come at great cost to Louisiana taxpayers.  Given the high recidivism rates of those released from Louisiana's prisons, however, the state has not seen a commensurate return on investment.  The Task Force found that reducing Louisiana's imprisonment rate, even just to match the state with the second-highest rate could result in substantial savings,[148] and its directive in HCR 82 and from leaders of all three branches of state government is to develop recommendations to strategically reinvest those savings to improve criminal justice system outcomes.[149]

Research supports the expansion of programming, education, treatment, and prison alternatives tailored to a person's criminogenic needs.[150]  In Louisiana the use of prison alternatives and the provision of recidivism reduction programming in and out of prison are limited by funding.  Specialty courts and diversion programs are often locally funded, and the per diem for housing inmates in parish jails is inadequate to provide programming and treatment.[151]

Additionally, incentive funding for programming and prison alternatives that has been successful at the state level has not been extended to decision-makers in the parishes and judicial districts, or to community-based nonprofit partner organizations.[152]  Expansion of prison alternatives and reentry services that reduce recidivism received broad support from the participants in the Task Force's victim roundtables; as did funding for victim safety assessments and planning, trauma-informed services for adult and child victims, and domestic violence shelters and transitional housing.[153]

Specific Actions Recommended:  In order to reduce recidivism, support victims and survivors of crime, and improve other justice system outcomes, the Task Force recommends recalibrating the state's portfolio of public safety investments by:

a.  Requiring the Department of Corrections to calculate annual savings from reductions in the state prison population after the justice reinvestment reform package is adopted into law, and establishing legislative intent that 70 percent of the savings in the first fiscal year and 50 percent of the annual savings thereafter should be directed into a reinvestment fund to be administered by the Department for the purposes outlined below.

b.  Directing 30 percent of annual reinvestment fund dollars to incentive grants for parishes, judicial districts, and nonprofit community partner organizations to expand evidence-backed prison alternatives and reduce admissions to the state prison system.

c.  Transferring 20 percent of annual reinvestment fund dollars to the Louisiana Commission on Law Enforcement to administer as grant funding for victim services and other priorities identified in the Task Force's victim roundtables report.  Competitive grants should be awarded

to expand crime victim safety assessments and planning, trauma-informed treatment and services for victims and survivors, shelters and transitional housing, batterers' intervention programming, and victim-focused education and training for justice system professionals.

d.  Utilizing the remainder of annual reinvestment fund dollars for targeted investments by the Department of Corrections in reentry services, community supervision, educational and vocational programming, transitional work programs, and contracts with parish jails and other local facilities that house state inmates to incentivize expansion of recidivism reduction programming and treatment services.

  i.  Directing the Department of Corrections to establish performance benchmarks and quality assurance measures for each of these investments;

  ii.  Directing the Department of Corrections to develop an annual plan for education, training, and re-entry of incarcerated individuals, including tactics to maximize state, federal, and other funding sources; and

  iii.  Authorizing the Department to make housing and transfer decisions between local facilities that house state inmates based on the individual needs of the inmate, and the programming and services offered by the facility.  As the state inmate population decreases, the Department should choose which facilities continue to receive state inmates, based in part on programming and performance evaluation.





Louisiana Prison Population
With and Without Reform
45,000
40,000
35,000
30,000
25,000
20,000
35,885
39,867
35,682
36,541
31,724
Savings
Historical
Projected
2006
2007
2008
2009
2010
2011
2012
2013
2014
2015
2016
2017
2018
2019
2020
2021
2022
2023
2024
2025
2026
2027
Historical Prison Population
Baseline Prison Population
Prison Population With JRTF Recommendations

Annual Projected Savings
from Justice Reinvestment Package
Reinvestment
Net Savings
$9.1M
$2.7M
$6.4M
$16M
$8M
$8M
$21.6M
$10.8M
$10.8M
$27.4M
$13.7M
$13.7M
$32.2M
$16.1M
$16.1M
$35.8M
$17.9M
$17.9M
$38.4M
$19.2M
$19.2M
$40.2M
$20.1M
$20.1M
$41.5M
$20.8M
$20.8M
$42.6M
$21.3M
$21.3M
FY18
FY19
FY20
FY21
FY22
FY23
FY24
FY25
FY26
FY27

| Fiscal Year | Grants for prison alternatives (30%) | Grants for victims' services (20%) | DOC investments in parish jail programming, education, reentry, transitional work, and community supervision (50%) | Total Projected Reinvestment | |
|---|---|---|---|---|---|
| | | | | $ amount | % of savings |
| FY18 | $1.91 million | $1.27 million | $3.18 million | **$6.35 million** | **70%** |
| FY19 | $2.40 million | $1.60 million | $4.00 million | **$8.00 million** | **50%** |
| FY20 | $3.24 million | $2.16 million | $5.39 million | **$10.79 million** | **50%** |
| FY21 | $4.11 million | $2.74 million | $6.86 million | **$13.71 million** | **50%** |
| FY22 | $4.84 million | $3.23 million | $8.06 million | **$16.13 million** | **50%** |
| FY23 | $5.38 million | $3.59 million | $8.96 million | **$17.93 million** | **50%** |
| FY24 | $5.77 million | $3.85 million | $9.62 million | **$19.24 million** | **50%** |
| FY25 | $6.03 million | $4.02 million | $10.06 million | **$20.11 million** | **50%** |
| FY26 | $6.23 million | $4.15 million | $10.38 million | **$20.77 million** | **50%** |
| FY27 | $6.39 million | $4.26 million | $10.65 million | **$21.30 million** | **50%** |
| **Total** | **$46.30 million** | **$30.87 million** | **$77.17 million** | **$154.33 million** | |

*Numbers rounded up to nearest $10,000 increment.*

## Collect Data and Track Outcomes

**Recommendation 21:  Mandate data collection and tracking of performance measures to monitor implementation and outcomes of the state's Justice Reinvestment reforms.**

Specific Action Recommended:  In order to monitor implementation of Louisiana's Justice Reinvestment reforms, mandate collection and reporting of data by the courts, Department of Corrections, and other entities relevant to sentencing, release, community supervision, criminal justice financial obligations, collateral consequences of felony convictions, and reinvestment of savings.  Additionally, in order to measure the success of the reforms, require collection and reporting of recidivism rates, probation and parole success rates, prison and community supervision populations, and other performance measures relevant to the statutory and budgetary changes recommended in this report.

# Majority Recommendations

*The Louisiana District Attorneys Association (LDAA) is committed to working within the goals of HCR 82 that include focusing prison space on serious and violent offenders. Therefore, any policy recommendations contained the Justice Reinvestment Task Force Report that go beyond nonviolent and non-serious offenders the LDAA opposes. The LDAA will only support measures that insure (1) public safety is not compromised, (2) victims' rights and commitments made to those victims are respected and maintained, and (3) a significant majority of any savings realized by reducing the costs of incarceration are used to fund preventative programs that deter individuals from entering the criminal justice system and rehabilitative/transitional programs designed and proven to five individuals the best opportunity to be successful upon their release from incarceration.*

In addition to the above recommendations, a majority of Task Force members also supported the following evidence-based statutory changes.

**Majority Recommendation 1:  Provide the opportunity for parole consideration to some of Louisiana's longest-serving inmates.**

At the end of 2015, roughly 7,000 prisoners—19.3 percent of the prison population—in Louisiana had already served more than 10 years in prison.  This group of longest-serving inmates is large and growing fast, increasing by more than 2,400 since 2006.  Inmates in this category are likely to have been convicted of serious violent offenses, but, because they have been in prison for a long time, they may have "aged out" of criminal offending behavior.  Nearly half were younger than 25 at the time of their offenses, and now roughly two-thirds are 45 years old or older. Research suggests that criminal offending peaks in the late teens or twenties and declines after that.[154]

Many of the longest-serving inmates in Louisiana's prisons are serving life sentences without the possibility of parole.  At the end of 2015, there were 4,850 inmates serving these sentences.  Until the 1970s, a life sentence commonly translated into a 10-year prison term.  By the 1990s, however, it meant mandatory life in prison without the possibility of parole (barring a commutation), inspiring the popular saying, "life means life."[155]

Statutory changes to life sentences in Louisiana drove prison growth and made the state a national outlier.  Louisiana is one of only two states (along with Mississippi) that provide for mandatory life without parole sentences for second degree murder, a crime that in Texas would be punished with a 5-99 year sentence with parole eligibility after 30 years, and in Arkansas with a 10-40 year sentence.[156]

The Legislature has severely limited parole eligibility for long-serving inmates who are not sentenced to life in prison.  In 1995, Louisiana adopted Act 1099, which prevented those convicted of violent offenses

from being considered for the state's "old-timer" parole provision. While the former law would have authorized parole consideration for this group after serving 20 years of their sentences and reaching the age of 45, Act 1099 required them to serve 85 percent of their sentences.[157] In 2014, lawmakers further restricted the state's "old-timer" parole provision by removing eligibility for those convicted of sex offenses.[158]

<u>Specific Actions Recommended</u>: To address this expensive, and in many cases elderly population that poses a low-risk of recidivism, a majority of the Task Force members recommend:

a.  Ensuring that inmates sentenced to life imprisonment who have demonstrated substantial growth behind bars receive an opportunity for release by creating a parole valve for current and future inmates who have served 30 years behind bars and have reached the age of 50, excluding those sentenced for first degree murder.

b.  Ensuring that long-serving inmates not serving life sentences who have demonstrated substantial growth behind bars receive an opportunity for release by restoring eligibility for "old-timer" parole to current and future inmates convicted of sex and violent crimes. This policy change would authorize parole consideration at the discretion of the Parole Board after serving 20 years of a prison sentence and reaching the age of 45.

**Majority Recommendation 2:  Prospectively eliminate life without parole sentences for juveniles, granting parole review after 30 years.**

Drawing on research about adolescent brain development that shows increased risk-taking and decreased capacity to weigh long-term consequences, the U.S. Supreme Court concluded in the 2012 *Miller v. Alabama* case that life without parole sentences should be used only for the "rare" and "uncommon" juvenile, and that laws mandating life without parole for juveniles were unconstitutional.[159]

However, since the 2012 decision, the vast majority of juveniles convicted of homicide in Louisiana—81 percent—have received life without parole sentences.[160] In an effort to comply with the *Miller* decision, a number of states have moved in recent years to prohibit juveniles from being sentenced to life without parole, giving them an opportunity to be released based on their growth and performance while in prison. Today, 21 states ban the sentence for all or nearly all cases, including West Virginia, Kentucky, and Texas. Three additional states have never imposed the sentence.[161]

<u>Specific Action Recommended</u>: To ensure compliance with the *Miller* decision and to join a rapidly growing number of states, a majority of Task Force members recommend the following: For juveniles convicted and given a life sentence, they shall be eligible to apply to the parole board after serving a minimum of 30 years.[162]

**Majority Recommendation 3:  Make parole eligibility changes for violent offenses retroactive.**

Research has found no evidence that longer prison terms are more effective than shorter terms at reducing recidivism.[163]  They have also found limited impact of long prison terms on deterring crime.  The National Research Council, for example, concluded in 2014 that "statutes mandating lengthy prison sentences cannot be justified on the basis of their effectiveness in preventing crime."[164]

Based on this large and growing body of research, the Task Force recommended reducing time served requirements before parole eligibility for those convicted of violent offenses without serious priors[165] to 55 percent of sentence served (from 75 percent under current law).  This policy would bring Louisiana closer to the parole eligibility standards that existed prior to the passage of truth-in-sentencing in 1997, ensuring that those convicted of violent offenses without serious criminal histories have an opportunity to demonstrate release readiness after having served more than half of their sentences.[166]

<u>Specific Action Recommended</u>:  To ensure equity between pre- and post-Justice Reinvestment sentences, a majority of Task Force members recommend retroactively extending the parole change, setting parole eligibility at 55 percent of sentence served, to currently incarcerated people convicted of violent offenses without prior violent or sex offenses.

**Majority Recommendation 4:  Focus habitual offender penalties on more serious crimes.**

Many courtroom practitioners report that Louisiana's habitual offender statute, which raises both the high and low ends of sentence ranges for those with prior felony convictions, influences many plea negotiations.  Only a small share of people coming to prison, however—five percent of newly sentenced prison admissions in 2015—are actually sentenced under the habitual offender statute.

When used, it is mainly directed at non-violent, lower-level incident offenses.  Nearly three-fourths of habitual offender admissions, for example, have a primary drug or property offense, and possession of a Schedule II drug is the most common primary offense admitted to prison under the enhancement.

| Top 5 Habitual Offender Admissions | Number of 2015 Admissions |
|---|---|
| Possession of Schedule II drug | 56 |
| Simple burglary | 34 |
| Possession of Schedule I drug | 23 |
| Theft | 18 |
| Possession with intent to distribute Schedule II drug | 17 |

<u>Specific Action Recommended</u>:  To focus habitual offender penalty enhancements on more serious crimes, a majority of Task Force members recommend prohibiting the lowest level offenses (Class D and E felony offenses) from being enhanced through the habitual offender statute.  Under this recommendation, Class D and E felony offenses could still be used as predicates for purposes of the habitual offender statute to enhance crimes in other felony classes.

**Majority Recommendation 5:  Target mandatory minimum sentences for possession of a firearm by a felon on those with prior violent felony convictions.**

Between 2006 and 2015, prison admissions for possession of a firearm by a felon have more than tripled.  By 2015, it was the fourth most common offense at admission.  Unlike other common offenses admitted to prison in Louisiana, possession of firearm by a felon carries a ten year mandatory minimum prison term.[167]

While the Task Force's consensus recommendation would reduce sentences and mandatory minimums for those with predicate nonviolent and sex crimes, there was not full agreement on reducing mandatory minimum sentences for those with underlying violent and commercial drug offenses.

<u>Specific Action Recommended</u>:  To ensure that judges have sufficient discretion to impose appropriate sentences for people convicted of 'felon in possession of a firearm,' a majority of the Task Force members recommend the changes in the Majority Recommendation column of the table below.

| Offense | Current Sentence | Underlying Crime | Consensus Recommendation | Majority Recommendation |
|---|---|---|---|---|
| Possession of a weapon by a felon | <u>10</u> to 20 yrs | Violent Offense | (<u>10</u> to 20 yrs) | 10 to 20 yrs, with a 1-year mandatory minimum* |
| | | Sex offense | D Felony 1 to 10 yrs | D Felony 1 to 10 yrs |
| | | Commercial Drug Offense | (<u>10</u> to 20 yrs) | E Felony 1 to 5 yrs |
| | | Drug Possession Offense | E Felony 1 to 5 yrs | |
| | | Other Nonviolent Enumerated offense | | |
| Attempted possession of a weapon by a felon | 0 to 7.5 yrs | *Any* | E Felony 1 to 5 years | E Felony 1 to 5 years |

<u>*Underlined numbers*</u> *denote a mandatory minimum sentence.*

*\*A Court would be authorized, for example, to impose a 10 year sentence with 9 years suspended.*

# Acknowledgments

The Louisiana Justice Reinvestment Task Force would like to thank the following individuals and organizations for their assistance and input throughout the Task Force's work:

**Task Force staff support from:**

Kristie Cross, Charmel Gaulden, Michelle Ghetti, Alanah Odoms Hebert, Gary Johnson, Natalie Laborde, Michelle Ridge, Tiffany Simpson, Julia Spear, and Nacole Wilson

**Governor's office staff support from:**

Carlton Miller and Erin Monroe Wesley

**Commissioner of Administration staff support from:**

Rick McGimsey

**Legislative staff support from:**

Mark Antoon, Monique Appeaning, Peter Conroy, Kari Couvillon, Kelly Fogleman, Katie Leleux, and Ashley Menou

**Louisiana Department of Corrections staff support from:**

Marilee Andrews, Thomas Bickham, Rhett Covington, Tracy Dibenedetto, Derek Ellis, Pete Fremin, Angela Griffin, Melanie Gueho, Jamie Lee, Jan Rodrigue, Dr. Raman Singh, Seth Smith, Gerald Starks, Mary Strickland, Jonathan Vining, and Angela Whittaker

**Technical assistance staff support from:**

Laura Bennett, Ken Hardy, Emily Levett, Nicole Roussell, Michelle Russell, Terry Schuster, and Zoë Towns

**Louisiana Parole Board:**

Mary Fuentes and Sheryl Ranatza

**Louisiana Court System:**

Kristina Kent, Kerry Lentini, and Jerry Tassin

**Louisiana District Attorneys Association:**

Pete Adams

**Louisiana Department of Health and Hospitals, Office of Behavioral Health:**

Tom Jarlock

**Louisiana Department of Child and Family Services:**

Chip Coulter

Louisiana Sheriff's Association:

Gary Bennett and Mike Ranatza

Louisiana Legislative Auditor's Office:

Michael Boutte, Erin Deville, and Karen LeBlanc

Testimony and system assessment support from:

Francis Abbott, Sheriff Rodney Arbuckle, DA Ricky Babin, Mitchell Bergeron, Lindsay Jarrell Blouin, Frederick Boutte, Brett Brunson, Daniel Burkhalter, Randy Clark, Darryl Campbell, Judge Mary Doggett, Chris Domingue, Mac Dyess, Judge Marion Edwards, Jean Faria, Harry Fontenot, Annie Frietas, Marianne Fisher Giorlando, Rafael Goyeneche, Gee Gee Hargon, Roger Henson, Sheriff William Earl Hilton, Doug Hollingsworth, Tim Hooper, Judge Arthur Hunter, Judge Donald Johnson, Sheriff Victor Jones, Sally Kenney, Judge William "Rusty" Knight, Judge Patricia Koch, Carol Kolinchak, Mathilde Laisne, Judge Lauren Lemmon, Sheriff Tony Mancuso, Michael Mitchell, DA Hillar Moore, DA Warren Montgomery, Judge Brady O'Callaghan, Joshua Perry, Richard Pittman, Kristen Raby, Rob Reardon, Dennis Reed, Sarah Schirmer, Judge Scott Schlegel, Dennis Schrantz, Ed Shihadeh, Keith Nordyke, Pam Smart, Will Snowden, Perry Stagg, DA James Stewart, Erik Stilling, Judge Gene Thibodeaux, Sheriff Bud Torres, Susan Tucker, Sheriff Craig Webre, Charles West, Judge Ricky Wicker, Jon Wool, Gary Young, and representatives of the Baton Rouge Area Chamber, Blueprint Louisiana, Broussard Chamber of Commerce, Committee of 100, Chamber Southwest Louisiana, Crowley Chamber of Commerce, Greater New Orleans Inc., HOPE Foundation, Jefferson Chamber, Louisiana Association of Business and Industry, Louisiana Center for Children's Rights, Louisiana Interchurch Conference, Louisianans for Prison Alternatives, Louisiana Smart On Crime coalition, Louisiana State Bar Association, One Acadiana, New Orleans Chamber, Prison Fellowship Ministries, Right On Crime – Louisiana, and Voices Of The Experienced (VOTE)

Participants in victim/survivor/advocate roundtables:

Lorrie Brennan, DA Leon Cannizarro, Vicki Chance, Debra Cotton, Matthew Dauzat, Anne-Marie Easley, Lori Forte, Hal Hutchinson, Stuart John, Shaena Johnson, Vicky Landry, Stacie LeBlanc, Andrew Lewis, Henrietta Lewis, Andree Mattix, Cammie Maturin, Numa Metoyer, Melanie Millett, Lara Naughton, Pamela Plaisance, Anne Seymour, Debra Sheehan, Kim Sport, Carolyn Stapleton, Catalene Theriot, T.W. Thompson, Leigh Anne Wall, Wes Ware, Nia Weeks, Bob Wertz, and Eleanor Wohl

# Endnotes

[1] Louisiana's prison population dropped 9 percent from its peak between 2012 and 2015.  This drop was driven in large part by retroactive reforms to good time that were passed in 2010, as well as policy and legislative changes passed when Louisiana first launched a Justice Reinvestment process in 2011 and 2012.  However, beginning in 2016, the impact of these reforms began to wane, and reductions in the population slowed.  Absent further policy reform, Louisiana is now projecting limited prison growth (2 percent) over the next 10 years.

[2] This projection assumes no change in the prison population between January and June 2017.  These impacts are contingent upon successful legislative and executive enactment of the Task Force's recommendations.  The estimated costs and savings in this report relate only to changes in the prison population and recommended reinvestments.  Additional implementation costs and savings unrelated to prison population reduction may be incorporated into legislative fiscal notes.

[3] Average caseload size calculated by dividing the number of people on supervision by the number of Probation & Parole field officers.

[4] Louisiana House of Representatives Concurrent Resolution 82 (2015).

[5] Letter from Governor Edwards, Senate President Alario, Speaker Barras, and Chief Justice Johnson to Adam Gelb, Director of the Public Safety Performance Project at The Pew Charitable Trusts and Denise O'Donnell, Director of the Bureau of Justice Assistance (Apr. 29, 2016).

[6] The Pew Charitable Trusts Public Safety Performance Project and Community Resources for Justice Crime and Justice Institute provide technical assistance as part of the Justice Reinvestment Initiative, a public-private partnership with the U.S. Department of Justice, Bureau of Justice Assistance.

[7] Unless otherwise noted, all figures cited in this report were analyzed by the Task Force's technical assistance staff using data from the Louisiana Department of Corrections and U.S. Department of Justice, Bureau of Justice Statistics.

[8] U.S. Census Bureau and U.S. Department of Justice, Bureau of Justice Statistics.

[9] U.S. Department of Justice, Bureau of Justice Statistics.

[10] Louisiana FY17 State Budget.

[11] Louisiana Department of Corrections.

[12] U.S. Department of Justice, Bureau of Justice Statistics; *See* La. R.S. 15:824 for local housing per diem rate for state inmates.

[13] Ibid.

[14] Letter from Governor Edwards and Secretary LeBlanc to Louisiana Justice Reinvestment Task Force members (Jan. 13, 2017).

[15] Ibid.

[16] U.S. Department of Justice, Bureau of Justice Statistics.

[17] Ibid; The Pew Charitable Trusts, *One in 31: The Long Reach of American Corrections* (2009).

[18] National Association of State Budget Officers.

[19] Ibid.

[20] U.S. Department of Justice, Bureau of Justice Statistics.

[21] *See* Urban Institute, Research Report, *Reforming Sentencing and Corrections Policy: The Experience of Justice Reinvestment Initiative States* (Dec. 2016).

[22] U.S. Department of Justice, Bureau of Justice Statistics.

[23] FBI, Crime in the United States series, 1960-2015.

[24] Jennifer Truman and Rachel Morgan, *Criminal Victimization, 2015*, Bureau of Justice Statistics (Oct. 2016).

[25] The Pew Charitable Trusts, *National Imprisonment and Crime Rates Continue to Fall* (Dec. 2016).

[26] U.S. Department of Justice, Bureau of Justice Statistics.

[27] Ibid; *see also* Robert Kittle, *2010 Law Saved South Carolina Taxpayers Almost $500 Million*, available at http://wspa.com/2016/11/28/2010-law-saved-south-carolina-taxpayers-almost-500-million/.

[28] U.S. Department of Justice, Bureau of Justice Statistics.

[29] Department of Corrections statistical reports for Alabama, Arkansas, Florida, Georgia, Louisiana, South Carolina, Tennessee, and Texas.

[30] Ibid.

[31] National Research Council, *The Growth of Incarceration in the United States* (2014).

[32] Ibid.; Franklin Zimring, *The Great American Crime Decline* (2006).

[33] National Research Council, *The Growth of Incarceration in the United States* (2014).

[34] Daniel Nagin, Francis Cullen, and Cheryl Lero Jonson, *Imprisonment and Reoffending* (2009); Patrice Villetaz, Gladys Gilleron, and Martin Killian, *The Effects on Reoffending of Custodial vs. Non-Custodial Sanctions: An Updated Systematic Review of the State of Knowledge* (2015); Daniel Nagin and G. Matthew Snodgrass, *The Effect of Incarceration on Re-offending: Evidence from a Natural Experiment in Pennsylvania* (2013).

[35] Louisiana Department of Corrections.

[36] Ibid.

[37] Ibid.

[38] FBI, Crime in the United States series, 1960-2015; Louisiana Department of Corrections.

[39] Louisiana Department of Corrections.

[40] Ibid.  Violent crimes are defined in Louisiana statutes at La. R.S. 14:2(B).

[41] *See* La. R.S. 40:964.

[42] Louisiana Department of Corrections.

[43] Ibid.

[44] Common offenses that fall in the "other" category include driving while intoxicated, possession of a weapon by a felon, and failure to register as a sex offender.

[45] Louisiana Department of Corrections.

[46] Daniel Nagin, Francis Cullen, and Cheryl Lero Jonson, *Imprisonment and Reoffending* (2009); Paul Gendreau, Claire Goggin, and Francis Cullen, *The Effects of Prison Sentences on Recidivism* (1999); United States Sentencing Commission, *Recidivism Among Offenders Receiving Retroactive Sentence Reductions: The 2007 Crack Cocaine Amendment* (2014); Benjamin Meade, Benjamin Steiner, Matthew Makarios, and Lawrence Travis, *Estimating a Dose-Response Relationship Between Time Served in Prison and Recidivism* (2012).

[47] Ibid.

[48] Louisiana Department of Corrections.

[49] The Department of Corrections and technical assistance staff for the Task Force conducted a review of 800 randomly selected Department case files focused on prisoners released in 2010 and 2015 who had been admitted to prison with a primary offense that was one of the 16 most common nonviolent crimes at admission.

[50] See description of file review, *supra* note 43.

[51] Average sentence lengths increased from three years and eight months for the 2010 sample to four years and six months for the 2015 sample.

[52] Louisiana Department of Corrections Briefing Book (Apr. 2016 update).  Notably, the Parole Board's grant rate for discretionary parole nearly doubled over the same ten-year period from 24 percent being granted release to 46 percent.

[53] Louisiana Department of Corrections file review.

[54] Louisiana Department of Corrections "PED Hot List" (2015 listing).

[55] Louisiana Department of Corrections.

[56] David Farrington, *Age and Crime* (1986); Daniel Nagin and Kenneth Land, *Age, Criminal Careers, and Population Heterogeneity* (1993).

[57] Louisiana Department of Corrections.

[58] The Sentencing Project, *Life Goes On: The Historic Rise of Life Sentences in America* (2013).

[59] Ibid.

[60] Interview with Pete Fremin, Deputy Director of Probation and Parole, Louisiana Department of Corrections.

[61] Ibid.

[62] Don Andrews, *Recidivism is Predictable and Can Be Influenced* (1999); James Bonta and Don Andrews, *Risk-Need-Reponsivity Model for Offender Assessment and Rehabilitation* (2007).

[63] Christopher Lowenkamp and Ed Latessa, *Understanding the Risk Principle: How and Why Correctional Interventions Can Harm Low-Risk Offenders* (2004).

[64] Louisiana Department of Corrections.

[65] National Research Council, *Parole, Desistence from Crime, and Community Integration* (2007); Ryken Grattet, Joan Petersilia, and Jeff Lin, *Parole Violations and Revocations in California* (2008); The Pew Charitable Trusts, *Maximum Impact: Targeting Supervision on Higher-Risk People, Places, and Times* (2009).

[66] Ibid.

[67] James Bonta and Don Andrews, *Risk-Need-Responsivity Model for Offender Assessment and Rehabilitation* (2007); Washington State Institute for Public Policy, *Adult Criminal Justice "Benefit-Cost Results"* available at http://www.wsipp.wa.gov/BenefitCost?topicId=2.

[68] Louisiana Department of Corrections.  Probation success rates range from 33 percent in the 37th Judicial District to 79 percent in the 39th Judicial District.  Parole success rates range from 30 percent in the 37th Judicial District to 68% in the 11th Judicial District.

[69] The Pew Charitable Trusts, *Missouri Policy Shortens Probation and Parole Terms, Protects Public Safety: Individuals on Community Supervision Can Earn Credits to Reduce Their Sentences* (Aug. 2016); *See also* Eric Wodahl, Brett Garland, Scott Culhane and William McCarty, *Utilizing Behavioral Interventions to Improve Supervision Outcomes in Community-Based Corrections* (2011).

[70] Daniel Nagin and Greg Pogarsky, *Integrating Celerity, Impulsivity, and Extralegal Sanction Threats into a Model of General Deterrence: Theory and Evidence* (2000); Eric Wodahl, Brett Garland, Scott Culhane and William McCarty, *Utilizing Behavioral Interventions to Improve Supervision Outcomes in Community-Based Corrections* (2011); Angela Hawkin and Mark Kleiman, *Managing Drug Involved Probationers with Swift and Certain Sanctions: Evaluating Hawaii's HOPE* (2009); Angela Hawken, Steven Davenport, and Mark Kleiman, *Managing Drug-Involved Offenders*, Working Paper, National Criminal Justice Reference, National Institute of Justice (2014).

[71] *See* La. R.S. 15:574.7, 15:574.9; and La. CCrP 899.1, 900.

[72] Ibid.  In 2015, the Legislature passed Act 299, which expanded these intermediate sanctions for parolees who have already had one 402 sanction imposed, permitting a jail stay up to 120 days for the second sanction, and up to 180 days for the third.

[73] Louisiana Department of Corrections.

[74] The Pew Charitable Trusts, *Reducing Incarceration for Technical Violations in Louisiana* (2014).

[75] *See* La. R.S. 15:574.7, 15:574.9; and La. CCrP 899.1, 900.

[76] Louisiana Department of Corrections.

[77] Louisiana Department of Corrections file review; La. R.S. 15:574.9; La. CCrP 900.

[78] Alexes Harris, Heather Evans, and Katherine Beckett, *Drawing Blood from Stones* (2010).

[79] Alex Piquero and Wesley Jennings, *Justice System Imposed Financial Penalties Increase the Likelihood of Recidivism in a Sample of Adolescent Offenders* (2016).

[80] *See, e.g.,* La. CCrP 887, 890.2, 895.1, 895.4; La. R.S. 13:722, 13:841.4, 13:847, 13:853, 13:995.29, 13:1000.13, 13:1381 et seq., 13:1894.2, 13:2106, 13:2496.4, 13:3049, 13:5535, 13:5722; 14:98 et seq., 15:168, 15:176, 15:255, 15:541-543, 15:574 et seq., 16:16 et seq., 40:2266.1, 46:1816, and 46:2633. (Not a comprehensive list.)

[81] La. CCrP 886.

[82] *See* La. R.S. 13:4206, 15:175; La. CCrP 884, 887; La. Dist. Ct. Rule 8.0.

[83] Louisiana Department of Corrections.

[84] *See* La. CCrP 884, 885.1, 886, 893, 900; La. R.S. 47:1676.

[85] Louisiana Government Efficiencies Management Support, Final Report (2014).

[86] Louisiana Basic Jail Guidelines.

[87] Louisiana Department of Corrections Standard Operating Procedure A-04-002, Transitional Work Programs, Ch. 17, sec. 2.g.3.a. (Aug. 1, 2015); La. R.S. 15:711.

[88] SAMHSA Behavioral Health Barometer (2015), Louisiana; SAMHSA Behavioral Health Barometer (2012), Louisiana.

[89] Ibid.; Louisiana Department of Corrections.

[90] Louisiana Crime Victims Reparations Board, Annual Report Fiscal Year 2015.

[91] Anne Seymour, *Victim/Survivor/Advocate Roundtables Summary Report and Priorities* (Jan. 2017).

[92] Ibid.

[93] *See* U.S. Department of Justice, Bureau of Justice Assistance, *Statewide Automated Victim Information and Notification (SAVIN) Guidelines and Standards* (2006).

[94] Anne Seymour, *Victim/Survivor/Advocate Roundtables Summary Report and Priorities* (Jan. 2017).

[95] Ibid.

[96] Serious offenses here denotes violent crimes as defined in La. R.S. 14:2(B) or sex offenses as defined in La. R.S. 15:541.

[97] *See* definition of serious offenses, *supra* note 90.

[98] *See* Act 138 (1992); Acts 110, 149 and 150 (1994); Act 946 (1995); Acts 138 and 1099 (1997); Act 209 (1999); Act 186 (2001); Act 572 (2006); Act 649 (2010), and Act 110 (2012).

[99] Anne Seymour, *Victim/Survivor/Advocate Roundtables Summary Report and Priorities* (Jan. 2017); *see* U.S. Department of Justice, Bureau of Justice Assistance, *Statewide Automated Victim Information and Notification (SAVIN) Guidelines and Standards* (2006).

[100] To the extent that funding is available to modify the current electronic victim notification systems.

[101] Daniel Nagin, Francis Cullen, and Cheryl Lero Jonson, *Imprisonment and Reoffending* (2009); Patrice Villetaz, Gladys Gilleron, and Martin Killian, *The Effects on Reoffending of Custodial vs. Non-Custodial Sanctions: An Updated Systematic Review of the State of Knowledge* (2015); Daniel Nagin and G. Matthew Snodgrass, *The Effect of Incarceration on Re-offending: Evidence from a Natural Experiment in Pennsylvania* (2013).

[102] Louisiana Department of Corrections.

[103] La. CCrP 893; La. R.S. 13:5304.

[104] La. CCrP 893. Certain third-time non-capital felonies are eligible for probation only with District Attorney consent, and fourth-time DWI is eligible for probation only if a sentencing alternative like a specialty court has not previously been made available.

[105] La. CCrP 903.1.

[106] David Boyum and Peter Reuter, *An Analytic Assessment of Drug Policy* (2005); Matthew Durose, Alexia Cooper, and Howard Snyder, *Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010* (2014); Daniel Nagin, Francis Cullen, Cheryl Lero Jonson, *Imprisonment and Reoffending* (2009); Paul Gendreau, Clair Goggin, and Francis Cullen, *The Effects of Prison Sentences on Recidivism* (1999); Steve Aos, Polly Phipps, Robert Barnoski, and Roxanne Leib, *The Comparative Costs and Benefits of Programs to Reduce Crime* (2001); Alfred Blumstein and Joel Wallman, *The Crime Drop in America* (2006).

[107] *See* National Highway Traffic Safety Administration, *Drugs and Human Performance Fact Sheets: Morphine (And Heroin)*, available at https://one.nhtsa.gov/people/injury/research/job185drugs/morphine.htm.

[108] *See* La. R.s. 40:966.

[109] Louisiana Department of Corrections.

[110] U.S. Department of Justice, Bureau of Justice Statistics.

[111] The Pew Charitable Trusts, *The Effects of Changing State Theft Penalties* (Feb. 2016).

[112] Ibid.

[113] "Value-adjusted" here means crimes defined in statute based on the value of the property damaged or misappropriated.

[114] Louisiana Department of Corrections.

[115] Ibid.

[116] La. R.S. 15:529.1.

[117] Daniel Nagin, Francis Cullen, and Cheryl Lero Jonson, *Imprisonment and Reoffending* (2009); Paul Gendreau, Claire Goggin, and Francis Cullen, *The Effects of Prison Sentences on Recidivism* (1999); United States Sentencing Commission, *Recidivism Among Offenders Receiving Retroactive Sentence Reductions: The 2007 Crack Cocaine Amendment* (2014); Benjamin Meade, Benjamin Steiner, Matthew Makarios, and Lawrench Travis, *Estimating a Dose-Response Relationship Between Time Served in Prison and Recidivism* (2012).

[118] James Bonta and D. Andrews, *Risk-Need-Responsivity Model for Offender Assessment and Rehabilitation* (2007); Washington State Institute for Public Policy, *Adult Criminal Justice "Benefit-Cost Results"* available at http://www.wsipp.wa.gov/BenefitCost?topicId=2; *See* Eric Wodahl, Brett Garland, Scott Culhane and William McCarty, *Utilizing Behavioral Interventions to Improve Supervision Outcomes in Community-Based Corrections* (2011).

[119] Louisiana Department of Corrections file review.

[120] *See* La. R.S. 15:571.3.

[121] *See* Louisiana Department of Corrections Standard Operating Procedure A-04-002, Transitional Work Programs, Chapter 24.

[122] *Miller v. Alabama*, 132 S.Ct. 2455 (2012).

[123] *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016).

[124] Jill Pasquarella, Louisiana Center for Children's Rights, Presentation to the Louisiana Justice Reinvestment Task Force (Jan. 20, 2017).

[125] Louisiana Department of Corrections.

[126] Louisiana Department of Corrections Briefing Book (Apr. 2016 update).

[127] National Research Council, *Parole, Desistence from Crime, and Community Integration* (2007); Ryken Grattet, Joan Petersilia, and Jeff Lin, *Parole Violations and Revocations in California* (2008); The Pew Charitable Trusts, *Maximum Impact: Targeting Supervision on Higher-Risk People, Places, and Times* (2009).

[128] Louisiana Department of Corrections.

[129] Ibid.

[130] The Pew Charitable Trusts, *Missouri Policy Shortens Probation and Parole Terms, Protects Public Safety: Individuals on Community Supervision Can Earn Credits to Reduce Their Sentences* (Aug. 2016).

[131] Daniel Nagin and Greg Pogarsky, *Integrating Celerity, Impulsivity, and Extralegal Sanction Threats into a Model of General Deterrence: Theory and Evidence* (2000); Eric Wodahl, Brett Garland, Scott Culhane and William McCarty, *Utilizing Behavioral Interventions to Improve Supervision Outcomes in Community-Based Corrections* (2011); Angela Hawkin and Mark Kleiman, *Managing Drug Involved Probationers with Swift and Certain Sanctions: Evaluating Hawaii's HOPE* (2009); Angela Hawkin, Steven Davenport, and Mark Kleiman, *Managing Drug-Involved Offenders*, Working Paper, National Criminal Justice Reference, National Institute of Justice (2014).

[132] Ibid.

[133] *See* La. R.S. 15:574.7, 15:574.9; La. CCrP 899.1, 900.

[134] *See* La. R.S. 15:574.7, 15:574.9; La. CCrP 899.1, 900.

[135] Louisiana Department of Corrections.

[136] Ibid.

[137] *See* La. R.S. 15:574.9; La. CCrP 900.

[138] Non-criminal violation defined as any violation that is not a new felony conviction.

[139] National Research Council, *Parole, Desistence from Crime, and Community Integration* (2007); Ryken Grattet, Joan Petersilia, and Jeff Lin, *Parole Violations and Revocations in California* (2008); The Pew Charitable Trusts, *Maximum Impact: Targeting Supervision on Higher-Risk People, Places, and Times* (2009).

[140] *See* La. R.S. 15:542; 37:31-37:36; 40:501; 46:233.2.

[141] Alex Piquero and Wesley Jennings, *Justice System Imposed Financial Penalties Increase the Likelihood of Recidivism in a Sample of Adolescent Offenders* (2016).

[142] Brennan Center for Justice, *Criminal Justice Debt: A Barrier to Reentry* (2010).

[143] *See* National Research Council, *Parole, Desistance from Crime, and Community Integration* (2007); Ryken Grattet, Joan Petersilia, and Jeff Lin, *Parole Violations and Revocations in California* (2008); The Pew Charitable Trusts, *Maximum Impact: Targeting Supervision on Higher-Risk People, Places, and Times* (2009).

[144] *See* La. R.S. 9:315.1, 9:315.14, and 9:315.23.

[145] *See* La. R.S. 15:711, 15:1111.

[146] Louisiana Department of Corrections Standard Operating Procedure for Transitional Work Programs, Ch. 17, sec. 2.g.3.a. (Aug. 1, 2015).

[147] Louisiana Department of Corrections Standard Operating Procedure A-04-002 currently requires a minimum of $200 to remain in a Transitional Work Program participant's individual account at all times as savings for when the person is released from secure custody.

[148] U.S. Department of Justice, Bureau of Justice Statistics; *See* La. R.S. 15:824 for local housing per diem rate for state inmates.

[149] Louisiana House of Representatives Concurrent Resolution 82 (2015); Letter from Governor Edwards, Senate President Alario, Speaker Barras, and Chief Justice Johnson to Adam Gelb, Director of the Public Safety Performance Project at The Pew Charitable Trusts and Denise O'Donnell, Director of the Bureau of Justice Assistance (Apr. 29, 2016); Letter from Governor Edwards and Secretary LeBlanc to Louisiana Justice Reinvestment Task Force members (Jan. 13, 2017).

[150] James Bonta and Don Andrews, *Risk-Need-Responsivity Model for Offender Assessment and Rehabilitation* (2007); Washington State Institute for Public Policy, *Adult Criminal Justice "Benefit-Cost Results"* available at http://www.wsipp.wa.gov/BenefitCost?topicId=2.

[151] *See* La. CCrP 893, 903.1; La. R.S. 13:5401, 13:5304; Louisiana Legislative Auditor's Office; Louisiana Supreme Court, Drug Court Program Brochure 2016.

[152] *See* Louisiana Government Efficiencies Management Support, Final Report (2014).

[153] Anne Seymour, *Victim/Survivor/Advocate Roundtables Summary Report and Priorities* (Jan. 2017).

[154] See David Farrington, Age and Crime (1986); Daniel Nagin and Kenneth Land, Age, Criminal Careers, and Population Heterogeneity (1993); https://www.nij.gov/topics/crime/Pages/delinquency-to-adult-offending.aspx#note2.

[155] Marc Mauer et al., The Meaning of Life: Long Prison Sentences in Context (2004).

[156] Tex. Penal Code § 19.02; Ark. Code § 5-10-102.

[157] La. Sess. Law Ser. Act 1099 (H.B. 146).

[158] *See* Act 332 (2014).

[159] *Miller v. Alabama*, 132 S. Ct. 2455 (2012).

[160] Jill Pasquarella, Louisiana Center for Children's Rights, presentation to the Louisiana Justice Reinvestment Task Force (Jan. 2017).

[161] The Campaign for the Fair Sentencing of Youth, "Righting Wrongs: The Five-Year Groundswell of State Bans on Life Without Parole for Children" (2016).

[162] A number of Task Force members find that the possibility of parole release after 30 years does not constitute a meaningful opportunity for release and, therefore, that the minimum term of years prior to parole eligibility under this policy should be reduced.

[163] Daniel Nagin, Francis Cullen, and Cheryl Lero Jonson, Imprisonment and Reoffending (2009); Paul Gendreau, Claire Goggin, and Francis Cullen, The Effects of Prison Sentences on Recidivism (1999); United States Sentencing Commission, Recidivism Among Offenders Receiving Retroactive Sentence Reductions: The 2007 Crack Cocaine Amendment (2014); Benjamin Meade, Benjamin Steiner, Matthew Makarios, and Lawrench Travis, Estimating a Dose-Response Relationship Between Time Served in Prison and Recidivism (2012).

[164] National Research Council, The Growth of Incarceration in the United States: Exploring Causes and Consequences (2014), at p. 78.; See also The Pew Charitable Trusts, Time Served: The High Cost, Low Return of Longer Prison Terms (2012).

[165] Defined as prior violent or sex felony offenses under La. R.S. 14:2(B) and 15:541.

[166] *See* Act 782 (1981).  Prior to 1997, a person convicted of a first-time violent offense would be eligible for parole after serving one-third of the sentence imposed, and a person convicted of a second-time violent offense would be eligible for parole after serving one-half of the sentence imposed.

[167] *See* La. R.S. 14:95.1.

# Appendix A: Offenses in Each Felony Class

The table below provides examples of some common crimes in each felony class. The following pages outline how each unique crime in Louisiana will be designated within the felony class system.

| Felony Class | Sentence Range | Offense Examples |
|---|---|---|
| Life | Life sentence or death penalty (death penalty if specified in statute) | • Murder I<br>• Murder II<br>• Aggravated rape<br>• Aggravated kidnapping<br>• Treason |
| Class A | <u>10</u> – 40 years* | • Armed robbery<br>• Manslaughter, victim under 10 years of age<br>• Promotion of pornography<br>• Illegal use of weapons during crime of violence<br>• Vehicular homicide, BAC over .20 |
| Class B | 2 – 40 years | • Manslaughter<br>• First degree robbery<br>• Crime against nature, victim under 18<br>• Vehicular homicide<br>• Operate vehicle while intoxicated, fourth offense |
| Class C | 1 – 20 years | • Theft of over $25,000<br>• Home invasion<br>• Carjacking<br>• Distribution of over 28g of cocaine<br>• Purse snatching |
| Class D | 1 – 10 years | • Simple burglary<br>• Theft between $5,000 and $25,000<br>• Forgery<br>• Distribution of less than 28g of cocaine<br>• Aggravated escape |
| Class E | 1 – 5 years (max 2 years unsuspended prison) | • Unauthorized entry of an inhabited dwelling<br>• Possession of less than 2g of cocaine<br>• Theft between $1,500 and $5,000<br>• Illegal use of a weapon<br>• Unauthorized use of food stamps |
| Class F | *Miscellaneous offenses with unchanged sentencing penalties* | • Molestation of a juvenile, victim under 13<br>• Sexual battery, victim under 13, offender over 17<br>• Possession of pornography involving juveniles, victim under 13<br>• Distribution of controlled substances to a student |

*<u>Underlined numbers</u> denote a mandatory minimum sentence.*

A - 1

| Statute | Offense | Current Range | Violent Crime (14:2) | Sex Crime (15:541) | Ability to suspend | Felony Class |
|---|---|---|---|---|---|---|
| 14:25 | Accessory after the fact | 0 – 5 years, max no greater than 1/2 the principal | N | N | All | E |
| 14:26 | Conspiracy, non capital or life offense | 1/2 offense max | N | N | In the same manner as contemplated | F |
| 14:26 | Conspiracy, capital or life offense | 0 – 30 years | N | N | None | B |
| 14:27 | Attempt, receiving stolen things, value over $25,000 | 0 – 5 years | N | N | In the same manner as offense attempted | E |
| 14:27 | Attempt | 1/2 offense max | N | N | In the same manner as offense attempted | F |
| 14:27 | Attempt, if punishable by death or life and victim is peace officer performing his duties | 20 – 50 years | N | N | None | F |
| 14:27 | Attempt, if punishable by death or life | 10 – 50 years | N | N | None | F |
| 14:28 | Inciting a felony | 0 – 2 years | N | N | All | E |
| 14:28.1 | Solicitation for murder | 5 – 20 years | Y | N | All | C |
| 14:28.C | Inciting a felony, person under age 17 | 0 – 5 years | N | N | All | E |
| 14:30 | First degree murder | Life or Capital | Y | N | None | Life or Capital |
| 14:30.1 | Second degree murder | Life | Y | N | None | Life |
| 14:31 | Manslaughter, victim under 10 | 10 – 40 years | Y | N | None | A |
| 14:31 | Manslaughter | 0 – 40 years | Y | N | All | B |
| 14:32 | Negligent homicide, victim under 10 | 2 – 5 years | N | N | None | E |
| 14:32 | Negligent homicide | 0 – 5 years | N | N | All | E |
| 14:32 | Negligent homicide, if killed by dog or animal when the owner is reckless | 0 – 5 years | N | N | All | E |
| 14:32.1 | Vehicular homicide | 5 – 30 years | N | N | All but 3 years | B |
| 14:32.1 | Vehicular homicide, BAC >.15 | 5 – 30 years | N | N | All but 5 years | B |
| 14:32.1 | Vehicular homicide, BAC >.20 | 5 – 30 years | Y | N | All but 5 years | A |
| 14:32.1 | Vehicular homicide, previous DUI conviction | 5 – 30 years | N | N | All but 5 years | B |
| 14:32.6 | First degree feticide | 0 – 15 years | N | N | All | D |
| 14:32.7 | Second degree feticide | 0 – 10 years | N | N | All | D |
| 14:32.8 | Third degree feticide | 0 – 5 years | N | N | All | E |
| 14:32.9 | Criminal abortion | 1– 5 years | N | N | All | E |
| 14:32.9 | Aggravated criminal abortion by dismemberment | 1– 10 years | N | N | All | D |
| 14:32.10 | Partial birth abortion | 1– 10 years | N | N | All | D |
| 14:32.12 | Criminal assistance to suicide | 0 – 10 years | N | N | All | D |
| 14:34 | Aggravated battery, victim is active member of the United States Armed Forces or disabled veteran | 0 – 10  years | Y | N | All but 1 year | D |
| 14:34 | Aggravated battery | 0 – 10  years | Y | N | All | D |
| 14:34.1 | Second degree battery, victim member of armed forces or a disabled veteran | 0 – 8 years | Y | N | All but 1.5 years | E |
| 14:34.1 | Second degree battery | 0 – 8 years | Y | N | All | E |
| 14:34.2 | Battery of a police officer, when the offender is detained | 1 – 5 years | Y | N | None | E |
| 14:34.2 | Battery of a police officer, when the battery results in injury that requires medical attention | 1 – 5 years | Y | N | All but 30 days | E |
| 14:34.3 | Battery of a school teacher by non-student or injury requires medical attention | 1 – 5 years | N | N | All | E |
| 14:34.5 | Battery of a correctional officer, if offender is prisoner | 1 – 5 years | N | N | None | E |
| 14:34.6 | Disarming of a peace officer | 0 – 5 years | Y | N | All | E |
| 14:34.7 | Aggravated second degree battery, victim is active member of the United States Armed Forces or a disabled veteran | 0 – 15 years | Y | N | All but 1 year | D |
| 14:34.7 | Aggravated second degree battery | 0 – 15 years | Y | N | All | D |
| 14:34.8(C)(2) | Battery of an emergency room employee, requiring medical attention | 1 – 5 years | N | N | All but 5 days | E |
| 14:35.1 | Simple battery of child welfare or adult protective service worker, requiring medical attention | 1 – 5 years | N | N | All but 3 days | E |
| 14:35.3 | Domestic abuse battery, third offense | 1 – 5 years | N | N | All but 1 year | E |
| 14:35.3 | Domestic abuse battery, burning | 5 – 50 years | Y | N | None | A |
| 14:35.3 | Domestic abuse battery, third and subsequent offense, child under 13 present | 4 – 30 years | N | N | All but 4 years | C |
| 14:35.3 | Domestic abuse battery, third offense, victim pregnant | 2– 5 years | N | N | All but 2 years | E |
| 14:35.3 | Domestic abuse battery, fourth and subsequent offense, victim pregnant | 4 – 30 years | N | N | All but 4 years | C |
| 14:35.3 | Domestic abuse battery, fourth and subsequent offense | 10 – 30 years | N | N | All but 3 years | B |
| 14:35.3 b (3) | Domestic abuse, strangulation | 0 – 3 years | N | N | None | E |
| 14:37.1 | Assault by drive by shooting | 1 – 5 years | Y | N | None | E |
| 14:37.2 | Aggravated assault on a peace officer with a firearm | 1 – 10 years | Y | N | All | D |
| 14:37.4 | Aggravated assault with a firearm | 0 – 10 years | Y | N | All | D |
| 14:37.5 | Aggravated assault on utility service employee with a firearm | 1 – 3 years | N | N | All | E |
| 14:37.6 | Aggravated assault with a motor vehicle on a peace officer | 1 – 10 years | Y | N | All | D |
| 14:37.7 | Aggravated assault, domestic abuse | 1 – 5 years | Y | N | All | E |
| 14:37.7(D) | Aggravated assault, domestic abuse, with 13 year old present | 2 – 5 years | Y | N | All but 2 years | E |
| 14:38.1 | Mingling harmful substances | 0 – 2 years | Y | N | All | E |
| 14:38.2 | Assault on teacher by non student | 1 – 3 years | N | N | All | E |
| 14:39.2 | First degree vehicular negligent injuring | 0 – 5 years | N | N | All | E |
| 14:40.1 | Terrorizing | 0 – 15 years | N | N | All | D |
| 14:40.2 | Stalking, victim in fear of harm and under 18 | 2 – 5 years | Y | N | None | E |
| 14:40.2 | Stalking, victim in fear of harm | 1 – 5 years | Y | N | None | E |
| 14:40.2 | Stalking, person under 18 | 0 – 3 years | Y | N | All | E |
| 14:40.2 | Stalking, victim under 12 | 1 – 3 years | Y | N | All | E |
| 14:40.2 | Stalking, victim under protective order | 3 months – 2 years | Y | N | All | E |
| 14:40.2 | Stalking, 2nd offense within 7 years | 5 – 20 years | Y | N | None | C |

| Statute | Offense | Current Range | Violent Crime (14:2) | Sex Crime (15:541) | Ability to suspend | Felony Class |
|---|---|---|---|---|---|---|
| 14:40.2 | Stalking, third and subsequent offense | 10 – 40 years | Y | N | All | B |
| 14:40.3 | Cyber stalking, third and subsequent offense within 7 years | 2 – 5 years | N | N | All | E |
| 14:40.3 | Cyber stalking, second offense within 7 years | 6 months – 3 years | N | N | All | E |
| 14:40.4 | Burning cross with intent to intimidate | 0 – 15 years | N | N | All | D |
| 14:40.6 | Disruption of school operation | 1 – 5 years | N | N | All | E |
| 14:42 | Aggravated rape/first degree rape | Life or Capital | Y | Y | None | Life or Capital |
| 14:42.1 | Second degree rape/forcible rape | 5 – 40 years | Y | Y | All but 2 years | B |
| 14:43 | Simple rape/ third degree rape | 0 – 25 years | Y | Y | None | C |
| 14:43.1 | Sexual battery, when the victim is under 13, offender over 17 | 25 – 99 years | Y | Y | All but 25 years | F |
| 14:43.1 | Sexual battery | 0 – 10 years | Y | Y | None | D |
| 14:43.2 | Second degree sexual battery, victim is under 13 offender over 17 | 25 – 99 years | Y | Y | All but 25 years | F |
| 14:43.2 | Second degree sexual battery | 0 – 15 years | Y | Y | None | D |
| 14:43.2 | Sexual degree sexual battery, offender over 17, and (a) the act is without the consent of the victim and the victim is over 65, or (b) the act is without the consent of the victim and the victim is unable to resist | 25–99 years | Y | Y | All but 25 years | F |
| 14:43.3 | Oral sexual battery, victim under 13, offender over 17 | 25 – 99 years | Y | Y | All but 25 years | F |
| 14:43.3 | Oral sexual battery, offender over 17, and (a) the act is without the consent of the victim and the victim is over 65, or (b) the act is without the consent of the victim and the victim is unable to resist | 25 – 99 years | N | Y | All but 25 years | F |
| 14:43.3 | Oral sexual battery | 0 – 10 years | N | Y | None | D |
| 14:43.4 | Female genital mutilation | 0 – 15 years | N | N | All | D |
| 14:43.5 | Intentional exposure to AIDS | 0 – 10 years | Y | Y | All | D |
| 14:43.5 | Intentional exposure to AIDS, victim is a police officer | 0 – 11 years | Y | Y | All | D |
| 14:44 | Aggravated kidnapping | Life | Y | N | None | Life |
| 14:44.1 | Second degree kidnapping | 5 – 40 years | Y | N | All but 2 years | B |
| 14:44.2 | Aggravated kidnapping of a child | Life | N | N | None | Life |
| 14:45 | Simple kidnapping | 0 – 5 years | Y | N | All | E |
| 14:46.1 | False imprisonment with dangerous weapon | 0 – 10 years | N | N | All | D |
| 14:46.2 | Human trafficking, victim under age 18 | 5 – 25 years | Y | Y | All but 5 | F |
| 14:46.2 | Human trafficking | 0 – 10 years | Y | Y | All | F |
| 14:46.2 | Human trafficking, w/ commercial sexual activity | 0 – 20 years | Y | Y | All | F |
| 14:46.2 | Human trafficking, victim under age 21 w/commercial sexual activity | 15 – 50 years | Y | Y | All | F |
| 14:46.3 | Trafficking children for sexual purposes, when the violator was previously convicted of a sex offense with a minor | 50 – Life | Y | Y | All but 50 | F |
| 14:46.3 | Trafficking children for sexual purposes, victim under 14, violator is parent, custodian | 25 – 50 years | Y | Y | All but 25 | F |
| 14:46.3 | Trafficking children for sexual purposes | 15 – 50 years | Y | Y | All | B |
| 14:46.4 | Re-homing of a child | 0 – 5 years | N | N | All | E |
| 14:51 | Aggravated arson | 6 – 20 years | Y | N | All but 2 years | C |
| 14:51.1 | Injury by arson | 6 – 20 years | N | N | All but 2 years | C |
| 14:52 | Simple arson, damage <$500 | 0 – 5 years | N | N | All | E |
| 14:52 | Simple arson, damage >$500 | 2 – 15 years | N | N | All | D |
| 14:52.1 | Simple arson of a religious building | 2 – 15 years | N | N | All but 2 years | D |
| 14:53 | Arson with intent to defraud | 0 – 5 years | N | N | All | E |
| 14:54.1 | Communicating false information of planned arson | 0 – 20 years | N | N | All | C |
| 14:54.2 | Manufacture and possession of delayed action indendiary devices | 0 – 20 years | N | N | All | C |
| 14:54.3 | Manufacture or possession of bomb | 0 – 20 years | N | N | All | C |
| 14:54.5 | Fake explosive device | 0 – 5 years | N | N | All | E |
| 14:54.6 | Communicating false information of planned bombing on school property at a school function, or in a firearm free zone | 0 – 20 years | N | N | All | C |
| 14:55 | Aggravated criminal damage to property | 1 – 15 years | N | N | All | D |
| 14:56 | Simple criminal damage to property, >$500, <$50,000 | 0 – 2 years | N | N | All | E |
| 14:56 | Simple criminal damage to property, >$50,000 | 1 – 10 years | N | N | All | D |
| 14:56.1 | Criminal damage to coin operated devices, damage> $100 | 0 – 2 years | N | N | All | E |
| 14:56.3 | Criminal damage to genetically engineered crops, facilities, information | 0 – 5 years | N | N | All | E |
| 14:56.4 | Criminal damage to property by graffiti, damage $500<x<$50,000 | 0 – 2 years | N | N | All | E |
| 14:56.4 | Criminal damage to property by graffiti, damage > $50,000 | 1 – 10 years | N | N | All | D |
| 14:56.5 | Criminal damage to historic building or landmarks by graffiti | 0 – 2 years | N | N | All | E |
| 14:56.2.C | Criminal damage of a pipeline facility | 0 – 5 years | N | N | All | E |
| 14:56.2.D | Criminal damage of a pipeline facility, if foreseeable life threatened | 2 – 10 years | N | N | All | D |
| 14:57 | Damage to property with intent to defraud | 0 – 4 years | N | N | All | E |
| 14:58 | Contaminating water supplies | 0 – 5 years | N | N | All | E |
| 14:58 | Contaminating water supplies, when human life or health is endangered | 0 – 20 years | N | N | All | C |
| 14:60 | Aggravated burglary | 1 – 30 years | Y | N | All | C |
| 14:61 | Unauthorized entry of critical infrastructure | 0 – 6 years | N | N | All | E |
| 14:62 | Simple burglary | 0 – 12 years | N | N | All | D |
| 14:62.1 | Simple burglary of a pharmacy, second  or subsequent offense | 2 – 12 years | N | N | All but 2 years | D |
| 14:62.1 | Simple burglary of a pharmacy, first offense | 1 – 12 years | N | N | All but 1 year | D |
| 14:62.2 | Simple burglary of inhabited dwelling | 1 – 12 years | N | N | All but 1 year | D |
| 14:62.3 | Unauthorized entry of an inhabited dwelling | 0 – 6 years | N | N | All | E |
| 14:62.4 | Unauthorized entry of a business | 0 – 6 years | N | N | All | E |
| 14:62.5 | Looting | 0 – 15 years | N | N | All | D |
| 14:62.6 | Simple burglary of religious building | 2 – 12 years | N | N | All but 2 years | D |
| 14:62.8 | Home invasion when a person present is under 12, over 65 years | 10 – 25 years | Y | N | All but 10 years | A |
| 14:62.8 | Home invasion | 0 – 25 years | Y | N | All | C |

A - 3

| Statute | Offense | Current Range | Violent Crime (14:2) | Sex Crime (15:541) | Ability to suspend | Felony Class |
|---|---|---|---|---|---|---|
| 14:62.8 | Home invasion with a dangerous weapon | 5 – 30 years | Y | N | All | B |
| 14:62.9 | Simple burglary of law enforcement or emergency vehicle | 0 – 20 years | N | N | All | C |
| 14:62.5(C) | Looting during state of emergency | 3–15 years | N | N | None | D |
| 14:64 | Armed robbery | 10 – 99 years | Y | N | None | A |
| 14:64.1 | First degree robbery | 3 – 40 years | Y | N | None | B |
| 14:64.2 | Carjacking | 2 – 20 years | Y | N | None | C |
| 14:64.3 | Armed robbery use of a firearm | 10 – 99 + 5 | Y | N | None | A |
| 14:64.4 | Second degree robbery | 3 – 40 years | Y | N | All | B |
| 14:65 | Simple robbery | 0 – 7 years | Y | N | All | C |
| 14:65.1 | Purse snatching | 2 – 20 years | Y | N | All | E |
| 14:66 | Extortion | 1 – 15 years | Y | N | All | D |
| 14:67 | Theft, $5,000 - $25,000 | 0 – 10  years | N | N | All | See Recommendation 6 |
| 14:67 | Theft, $750 - $5,000 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:67 | Theft, <$750, 2 prior offenses | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:67 | Theft >$25,000 | 5 – 20 years | N | N | All | See Recommendation 6 |
| 14:67.1 | Theft of livestock | 0 – 10  years | N | N | All | See Recommendation 6 |
| 14:67.2 | Theft of timber >$25,000 | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:67.2 | Theft of timber <$25,000 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:67.3 | Unauthorized use of access card, $5,000 - $25,000 | 0 – 10  years | N | N | All | See Recommendation 6 |
| 14:67.3 | Unauthorized use of access card,  $750 - $5,000 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:67.3 | Unauthorized use of access card, <$750, 2 prior offenses | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:67.3 | Unauthorized use of access card >$25,000 | 5 – 20 years | N | N | All | See Recommendation 6 |
| 14:67.4 | Anti skimming act, uses scanning device and a re-encoder | 0 – 10 years | N | N | All | D |
| 14:67.4 | Anti skimming act, third or subsequent conviction | 0 – 10 years | N | N | All | D |
| 14:67.4 | Anti skimming act | 0 – 5 years | N | N | All | E |
| 14:67.6 | Theft of utility service, 2nd + | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:67.7 | Theft of petroleum products | 1 – 10 years | N | N | All | See Recommendation 6 |
| 14:67.8 | Theft of oilfield geological survey, seismograph, and production maps | 1 – 10 years | N | N | All | See Recommendation 6 |
| 14:67.9 | Theft of oil and gas equipment, $300-$500 | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:67.9 | Theft of oil and gas equipment, $500- $25,000 | 1 – 10 years | N | N | All | See Recommendation 6 |
| 14:67.9 | Theft of oil and gas equipment, $25,000+ | 5 – 30 years | N | N | All | See Recommendation 6 |
| 14:67.10 | Theft of goods <$500, 2 or more priors | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:67.10 | Theft of goods, $500-$1,499 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:67.10 | Theft of goods, >$1,500 | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:67.11 | Credit card fraud by one authorized to provide goods and services | 0 – 15 years | N | N | All | D |
| 14:67.15 | Theft of a firearm, 3rd offense | 15–30 years | N | N | None | B |
| 14:67.15 | Theft of a firearm, 2nd offense | 5 – 15 years | N | N | None | D |
| 14:67.15 | Theft of a firearm, 1st offense | 2 – 10 years | N | N | None | D |
| 14:67.16 | Identity theft,  $1,000 + | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:67.16 | Identity theft, victim is 60 years old or older, under 17 year old, or a person with a disabilty, and the value is >$1,000 | 3– 10 years | N | N | All | See Recommendation 6 |
| 14:67.16 | Identity theft, $300-499 | 0 – 3 years | N | N | All | See Recommendation 6 |
| 14:67.16 | Identity theft, victim is 60 years old or older, under 17 year old, or a person with a disabilty, and the value is >$300-$499 | 1– 3 years | N | N | All | See Recommendation 6 |
| 14:67.16 | Identity theft,  $500-$999 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:67.16 | Identity theft, victim is 60 years old or older, under 17 year old, or a person with a disabilty, and the value is $500-$999 | 2 – 5 years | N | N | All | See Recommendation 6 |
| 14:67.16 | Identity theft, third+ offense | 0 –10 years | N | N | All | See Recommendation 6 |
| 14:67.18 | Cheating and swindling, $1,500 + | 0 – 10  years | N | N | All | See Recommendation 6 |
| 14:67.18 | Cheating and swindling, <$500, 2 or more priors | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:67.18 | Cheating and swindling, $500 - $1,499 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:67.19 | Theft of anhydrous ammonia | 0 – 2 years | N | N | All | E |
| 14:67.19.1 | Unauthorized possession of anhydrous ammonia | 0 – 2 years | N | N | All | E |
| 14:67.20 | Theft of a business record | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:67.21 | Theft of aged or disabled person's assets, $1,500+ | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:67.21 | Theft of aged or disabled person's assets, any value, 2 priors | 0 – 10 years | N | N | All but 2 years | See Recommendation 6 |
| 14:67.21 | Theft of aged or disabled person's assets, $500-$1,499 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:67.22 | Fradulent acquisition of a credit card | 0 – 10  years | N | N | All | D |
| 14:67.24 | Theft of utility property | 2 – 10 years | N | N | All | See Recommendation 6 |
| 14:67.25 | Organized retail theft, over $500 in a 180 day period | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:67.25 | Organized retail theft, under $500 in a 180 day period | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:67.26 | Theft of a motor vehicle, $1,500 + | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:67.26 | Theft of a motor vehicle, $500 - $1499 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:67.26 | Filing a false affadavit to support an alleged theft of a motor vehicle | 0 – 5 years | N | N | All | E |
| 14:67.28 | Theft of copper, 1 or more prior | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:67.28 | Theft of copper, <$500 | 1 – 2 years | N | N | All | See Recommendation 6 |
| 14:67.28 | Theft of copper, $500 - $999 | 2 – 5 years | N | N | All | See Recommendation 6 |
| 14:67.28 | Theft of copper, $1,000+ | 5 – 10 years | N | N | All | See Recommendation 6 |
| 14:67.30 | Theft of animals, third and subsequent | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:68.2 | Unauthorized use of food stamps | 0.5 – 10  years | N | N | All | D |
| 14:68.4 | Unauthorized use of a moveable, $500+ | 0 – 5 years | N | N | All | E |
| 14:68.4 | Unauthorized use of a motor vehicle | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:68.5 | Unauthorized removal of property from governor's mansion, state capitol complex, >$750, 2 priors | 0 – 2 years | N | N | All | See Recommendation 6 |

| Statute | Offense | Current Range | Violent Crime (14:2) | Sex Crime (15:541) | Ability to suspend | Felony Class |
|---|---|---|---|---|---|---|
| 14:68.5 | Unauthorized removal of property from governor's mansion, state capitol complex, $750 - $5,000 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:68.5 | Unauthorized removal of property from governor's mansion, state capitol complex, $5,000 - $25,000+ | 1 – 10 years | N | N | All | See Recommendation 6 |
| 14:68.5 | Unauthorized removal of property from governor's mansion, state capitol complex, $25,000+ | 5 – 20 years | N | N | All | See Recommendation 6 |
| 14:68.7 | Receipts and product code labels, $1,500+ | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:68.7 | Receipts and product code labels, 2+ priors | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:68.7 | Receipts and product code labels, $500- $1,499 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:68.7 | Possessing a device to manufacture fraudulent retail sales | 0 – 5 years | N | N | All | E |
| 14:69 | Illegal possession of stolen things, 2 priors | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:69 | Illegal possession of stolen things, $500 - $1,499 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:69 | Illegal possession of stolen things, $1,500+ | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:69.1 | Illegal possession of a stolen weapon, first offense | 1 – 5 years | N | N | All | E |
| 14:69.1 | Illegal possession of a stolen weapon, second offense | 2 – 10 years | N | N | All | D |
| 14:70.1 | Medicaid fraud | 0 – 5 years | N | N | All | E |
| 14:70.2 | Refund or access device application fraud, $1,500+ | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:70.2 | Refund of access device application fraud, 2 priors | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:70.2 | Refund of access device application fraud, $500 -$1,499 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:70.4 | Access device fraud, 2 priors | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:70.4 | Access device fraud, $1,500+ | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:70.4 | Access device fraud, $500- $1,499 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:70.5 | Fraudulent remuneration | 0 – 5 years | N | N | All | E |
| 14:70.7 | Unlawful production, manufacturing, distribution, or possession of fraudulent documents for identification purposes | 0 – 3 years | N | N | All | E |
| 14:70.8 | Illegal transmission of monetary funds | 0 – 10 years | N | N | All | D |
| 14:71 | Issuing worthless checks, 2 priors | 0 – 2 years | N | N | All | See Recommendation 6 |
| 14:71 | Issuing worthless checks, $500- $1,500 | 0 – 5 years | N | N | All | See Recommendation 6 |
| 14:71 | Issuing worthless checks, $1,500 + | 0 – 10 years | N | N | All | See Recommendation 6 |
| 14:71.1 | Bank fraud | 0 – 10 years | N | N | All | D |
| 14:71.3 | Mortgage fraud | 0 – 10 years | N | N | All | D |
| 14:72 | Forgery | 0 – 10 years | N | N | All | D |
| 14:72.1.1 | Forgery of insurance certificate or ID card | 0 – 5 years | N | N | All | E |
| 14:72.2 | Monetary instrument abuse | 6 months – 10 years | N | N | All | D |
| 14:72.6 | Forgery of a motor vehicle inspection certificate | 0 – 5 years | N | N | All | E |
| 14:73.3 | Offenses against computer equipment, damage $500 or more | 0 – 5 years | N | N | All | E |
| 14:73.4 | Offenses against computer users $500+ | 0 – 5 years | N | N | All | E |
| 14:73.5 | Computer fraud | 0 – 5 years | N | N | All | E |
| 14:73.7 | Computer tampering; A(3) and A(4) | 0 – 5 years | N | N | All | E |
| 14:73.7 | Computer tampering; A(3) and A(4) with the intention of disrupting vital services or operations of the state, any parish, or municipality, utility company or with the intention of causing death or great bodily harm | 0 – 15 years | N | N | All | D |
| 14:73.8 | Unauthorized use of wireless router system with pornography involving juveniles | 2 – 10 years | N | N | None | D |
| 14:73.9 | Unauthorized use of wireless router system with pornography involving juveniles, victim under 13 and violator over 17 | 25–99 years | N | N | All but 25 years | F |
| 14:73.2A | Offenses against intellectual property, damage $500+ | 0 – 5 years | N | N | All | E |
| 14:75.C(1) | Failure to pay child support, second offense | 0 – 2 years | N | N | All | E |
| 14:75.C(5) | Failure to pay child support, obligation is more than $15,000 and 1 year outstanding | 0 – 2 years | N | N | All | E |
| 14:76 | Bigamy | 0 – 5 years | N | N | All | E |
| 14:77 | Abetting in bigamy | 0 – 5 years | N | N | All | E |
| 14:79 | Violation of protective order, 3rd conviction, non battery or crime of violence cases | 14 days – 2 years | N | N | All  but 14 days | E |
| 14:79.1 | Criminal abandonment | 0 – 1 year | N | N | All | E |
| 14:79.C | Violation of protective order, involving battery or crime of violence, 2 priors | 1 – 5 years | N | N | All but 1 | E |
| 14:79.C | Violation of protective order, involving battery or crime of violence, 1 prior | 3 months – 2 years | N | N | All but 30 days | E |
| 14:80 | Felony carnal knowledge of a juvenile | 0 – 10  years | N | Y | All | D |
| 14:81 | Indecent behavior with juveniles, victim over 13 | 0 – 7 years | N | Y | All | E |
| 14:81 | Indecent behavior with juveniles, victim under 13 | 2 – 25 years | N | Y | All but 2 years | C |
| 14:81.1 | Promotion of pornography | 10 – 20 years | N | Y | None | A |
| 14:81.1 | Possession of pornography (PWID) involving juveniles | 5 – 20 years | N | Y | None | C |
| 14:81.1 | Parent of legal guardian consenting to child's participation in pornography | 5 – 20 years | N | Y | None | C |
| 14:81.1 | Possession of pornography (PWID) involving juveniles, victim under 13 | 25 – 99 years | N | Y | None | F |
| 14:81.1 | Possession (PWID) of pornography involving juveniles, 2nd offense | 0 – 40 years | N | Y | None | B |
| 14:81.2 | Molestation of a juvenile when the offender is the juvenile's educator, victim under 13 | 5 – 40 years | N | Y | All but 5 years | A |
| 14:81.2 | Molestation of a juvenile, multiple instances within one year | 5 – 40 years | N | Y | All but 5 years | A |
| 14:81.2 | Molestation of a juvenile, victim under 13 or disabled | 25 – 99 years | N | Y | All but 25 years | F |
| 14:81.2 | Molestation of juvenile, offender has control or supervision | 5 – 20 years | N | Y | None | A |
| 14:81.2 | Molestation of a juvenile | 5 – 10 years | N | Y | None | D |
| 14:81.3 | Computer-aided solicitation of a minor, victim under 13 | 10 – 20 years | N | Y | None | A |
| 14:81.3 | Computer-aided solicitation of a minor, subsequent conviction | 10 – 20 years | N | Y | None | A |
| 14:81.3 | Computer-aided solicitation of a minor, victim age 13-16 | 5 – 10 years | N | Y | None | D |
| 14:81.3 | Computer-aided solicitation of a minor, victim reasonably believed to be under 17 | 2 – 10 years | N | Y | None | D |

| Statute | Offense | Current Range | Violent Crime (14:2) | Sex Crime (15:541) | Ability to suspend | Felony Class |
|---|---|---|---|---|---|---|
| 14:81.3 | Computer-aided solicitation of a minor, actual sexual conduct and age difference 5 years or more | 7 – 10 years | N | Y | All | D |
| 14:81.4 | Prohibited sexual conduct between educator and student, second offense | 1 – 5 years | N | Y | All | E |
| 14:82 | Prostitution, 2nd conviction | 0 – 2 years | N | N | All | E |
| 14:82 | Prostitution, 3rd conviction | 2 – 4 years | N | N | All | E |
| 14:82 | Prostitution, if under age 18 | 15 – 50 years | N | N | All | B |
| 14:82 | Prostitution, if under age 14 | 25 – 50 years | N | N | All | B |
| 14:82.1 | Prostitution, if under age 14, parent or tutor consents | 25 – 50 years | N | Y | All but 10 years | A |
| 14:82.1 | Prostitution, if under age 18, parent or tutor consents | 15 – 50 years | N | Y | All but 5 years | A |
| 14:82.1 | Prostitution, if under age 14 | 25 – 50 years | N | Y | All but 25 years | B |
| 14:82.1 | Prostitution, if under age 18 | 15 – 50 years | N | Y | All | B |
| 14:82.2 | Purchase of commercial sexual activity, second offense | 0 – 2 years | N | Y | All | E |
| 14:82.2 | Purchase of commercial sexual activity, third+ offense | 2 – 4 years | N | Y | All | E |
| 14:82.2 | Purchase of commercial sexual ativity, victim 14-17 or a known victim of human trafficking | 15 – 50 years | N | Y | All | F |
| 14:82.2 | Purchase of commericial sexual activity, victim under 14 | 15 – 50 years | N | Y | All | F |
| 14:83 | Soliciting for prostitution, if under age 18 | 15 – 50 years | N | N | All | B |
| 14:83 | Soliciting for prostitution, if under age 14 | 25–50 years | N | N | All | B |
| 14:83.1 | Inciting prostitution, person under 18 | 15 – 50 years | N | N | All | B |
| 14:83.1 | Inciting prostitution, person under 14 | 25 – 50 years | N | N | All | B |
| 14:83.2 | Promoting prostitution | 0 – 2 years | N | N | All | E |
| 14:83.2 | Promoting prostitution, person under 18 | 15 – 50 years | N | N | All | B |
| 14:83.2 | Promoting prostitution, person under 14 | 25 – 50 years | N | N | All | B |
| 14:84 | Pandering | 0 – 5 years | N | N | All | E |
| 14:84 | Pandering, person under 18 | 15 – 50 years | N | N | All | B |
| 14:84 | Pandering, person under 14 | 25 – 50 years | N | N | All | B |
| 14:85 | Letting premises for prostitution, victim under age 18 | 15 – 50 years | N | N | All | B |
| 14:85 | Letting premises for prostitution, victim under age 14 | 25 – 50 years | N | N | All | B |
| 14:86 | Enticing persons into prositution | 2 – 10 years | N | N | All | D |
| 14:86 | Enticing persons into prositution, victim under age 18 | 15 – 50 years | N | N | All | B |
| 14:86 | Enciting persons into prositution, victim under age 14 | 25 – 50 years | N | N | All | B |
| 14:87 | Abortion | 1 – 10 years | N | N | All | D |
| 14:87.1 | Killing a child during delivery | Life | N | N | None | Life |
| 14:87.2 | Human experimentation | 5 – 20 years | N | N | All | C |
| 14:87.3 | Prohibited sale, receipt, or transport of fetal organs or body parts | 10 – 50 years | N | N | All but 10 years | F |
| 14:87.5 | Intentional failure to sustain life or health of aborted viable infant | 0 – 21 years | N | N | All | C |
| 14:89 | Crime against nature, incest, if child, parent, or sibling | 0 – 15 years | N | Y | All | D |
| 14:89 | Crime against nature | 0 – 5 years | N | Y | All | E |
| 14:89 | Crime against nature, incest, if uncle and niece or aunt and nephew | 0 – 5 years | N | Y | All | E |
| 14:89 | Crime against nature, if under age 14 | 25 – 50 years | N | Y | All | B |
| 14:89 | Crime against nature, if under age 18 | 15 – 50 years | N | Y | All | B |
| 14:89.1 | Aggravated crime against nature | 3 – 15 years | Y | Y | None | C |
| 14:89.1 | Aggravated crime against nature, if related and victim under age 13 and offender over age 17 | 25 – 99 years | Y | Y | All but 25 years | F |
| 14:89.1 | Aggravated crime against nature, if under age 18 and related as a child, grandchild, brothwer, sister, half-brother, half-sister, uncle, aunt, nephew, or niece, whether biological, step, or adoptive relative | 5 – 20 years | Y | Y | All | C |
| 14:89.2 | Crime against nature by solicitation, 2nd conviction | 0 – 2 years | N | Y | All | E |
| 14:89.2 | Crime against nature by solicitation, if person solicited 14-17 | 15 – 50 years | N | Y | All | E |
| 14:89.2 | Crime against nature by socilication, if person soilicited under 14 | 25 – 50 years | N | Y | All but 25 years | F |
| 14:89.6 | Human-animal hybrids | 0 – 10  years | N | N | All | D |
| 14:90 | Gambling: financing or supervising | 0 – 5 years | N | N | All | E |
| 14:90.3 | Gambling by computer player: design, develop, manage, maintain | 0 – 5 years | N | N | All | E |
| 14:90.6 | Gambling at cockfights, financing | 0 – 5 years | N | N | All | E |
| 14:90.7 | Gambling by electronic sweepstakes device | 0 – 5 years | N | N | All | E |
| 14:91.5 | Unlawful use of social networking, second offense | 5 – 20 years | N | N | None | C |
| 14:91.5 | Unlawful use of social networking, first offense | 0 – 10  years | N | N | None | D |
| 14:92 | Contributing to the delinquency of juveniles, involvement in a felony and parent of guardian is convicted | 0 – 2 years | N | N | All but 1 year | E |
| 14:92 | Contributing to the delinquency of juveniles, involvement in a felony | 0 – 2 years | N | N | All | E |
| 14:92 | Contributing to the delinquency of juveniles, involvment in a violent crime or drug offense | 2 – 10 years | N | N | All | D |
| 14:92.2 | Improper supervision of a minor by a parent or custodian, violation of court-ordered safety plan | 0 – 2 years | N | N | All | E |
| 14:92.A.(7) | Contributing to the delinquency of juveniles, perform a sexually immoral act | 0 – 2 years | N | Y | All | E |
| 14:93 | Cruelty to juveniles | 0 – 10 years | N | N | All | D |
| 14:93.2.3 | Second degree cruelty to juveniles | 0 – 40 years | Y | N | All | B |
| 14:93.3 | Cruelty to infirmed, 2nd and subsequent conviction | 5 – 10 years | N | N | All but 5 years | D |
| 14:93.3 | Cruelty to infirmed | 0 – 10 years | N | N | All but 1 year | D |
| 14:93.4 | Exploitation of the infirmed | 0 – 10 years | N | N | All | D |
| 14:93.5 | Sexual battery of the infirmed | 0 – 10  years | N | Y | All | D |
| 14:94 | Illegal use of a weapon, 2nd conviction | 5 – 7 years | Y | N | None | See Recommendation 7 |
| 14:94 | Illegal use of a weapon | 0 – 2 years | Y | N | All | See Recommendation 7 |
| 14:94.E | Illegal use of weapons or dangerous instrumentalities, discharging weapon from motor vehicle | 5 – 10 years | Y | N | None | See Recommendation 7 |

| Statute | Offense | Current Range | Violent Crime (14:2) | Sex Crime (15:541) | Ability to suspend | Felony Class |
|---|---|---|---|---|---|---|
| 14:94.F | Illegal use of weapons or dangerous instrumentalities, during crime of violence/drug offense with silencer or machine gun | 20 – 30 years | Y | N | None | See Recommendation 7 |
| 14:94.F | Illegal use of weapons or dangerous instrumentalities, during crime of violence/drug offense | 10 – 20 years | Y | N | None | See Recommendation 7 |
| 14:94.F | Illegal use of weapons or dangerous instrumentalities, during crime of violence/drug offense with silencer or machine gun, second or subsequent conviction | Life | Y | N | None | See Recommendation 7 |
| 14:94.F | Illegal use of weapons or dangerous instrumentalities, uses or possesses weapon during crime of violence/drug offense, second offense | 20 – 99 years | Y | N | All | See Recommendation 7 |
| 14:95 | Illegal carrying of weapons or dangerous instrumentalities, uses or possesses weapon during crime of violence or drug offense, second conviction | 20 – 30 years | N | N | None | See Recommendation 7 |
| 14:95 | Illegal carrying of weapons or dangerous instrumentalities, uses or possesses weapon during crime of violence or drug offense | 5 – 10 years | N | N | None | See Recommendation 7 |
| 14:95 | Illegal carrying of weapons or dangerous instrumentalities, during crime of violence, third and subsequent conviction | 0 – 10 years | N | N | None | See Recommendation 7 |
| 14:95 | Illegal carrying of weapons or dangerous instrumentalities, during crime of violence, second conviction | 0 – 5 years | N | N | All | See Recommendation 7 |
| 14:95 | Illegal carrying of weapons or dangerous instrumentalities during crime of violence | 1 – 2 years | N | N | All | See Recommendation 7 |
| 14:95.1 | Possession of firearm by person convicted of a felony, attempt | 0 – 7.5 years | N | N | None | See Recommendation 7 |
| 14:95.1 | Possession of a firearm by a felon | 10 – 20 years | N | N | None | See Recommendation 7 |
| 14:95.1.1 | Illegally supplying felon with firearm | 0 – 5 years | N | N | All but 1 year | E |
| 14:95.1.2 | Illegally supplying felon with ammunition | 0 – 5 years | N | N | All | E |
| 14:95.1.3 | Fradulent firearm and ammunition purchase | 1 – 5 years | N | N | All but 1 year | E |
| 14:95.2 | Carrying dangerous weapon on school property | 0 – 5 years | N | N | All | E |
| 14:95.2 | Carrying dangerous weapon on school property, used in crime of violence | 1 – 5 years | N | N | All | E |
| 14:95.2.1 | Illegal carrying of firearm used in crime of violence at a parade | 1 – 5 years | N | N | All | E |
| 14:95.2.2 | Reckless discharge of a firearm at a parade | 5 – 15 years | N | N | All but 3 years | D |
| 14:95.3 | Unlawful use or possession of body armor | 0 – 2 years | N | N | All | E |
| 14:95.7 | Possession of/dealing firearms with obliterated number, 1st offense | 1 – 5 years | N | N | All | E |
| 14:95.7 | Possession of/dealing firearms with obliterated number, 2nd or subsequent offense | 2 – 10 years | N | N | All | D |
| 14:95.8 | Illegal possession of gun by juvenile, 2nd conviction | 0 – 2 years | N | N | All | E |
| 14:95.8 | Illegal possession of gun by juvenile, 3rd or subsequent conviction | 0 – 5 years | N | N | All | E |
| 14:95.8 | Illegal possession of gun by juvenile, previously adjudicated on crime of violence | 6 months – 5 years | N | N | All | E |
| 14:95.10 | Possession of a firearm or carrying of a concealed weapon by a person convicted of domestic abuse battery | 1 – 5 years | N | N | All | E |
| 14:96 | Aggravated obstruction of highway | 0 – 15 years | N | N | All | D |
| 14:98 | Operate vehicle while intoxicated, fourth conviction, if child endangerment law applies | 10 – 30 years | N | N | None | B |
| 14:98 | Operate vehicle while intoxicated, 4th conviction, previous conviction resulted in probation, parole, or suspended sentence | 10 – 30 years | N | N | None | B |
| 14:98 | Operate vehicle while intoxicated, 4th conviction, previously participated in substance abuse treatment or home incarceration , drug division | 10 – 30 years | N | N | All but 3 years | B |
| 14:98 | Operate vehicle while intoxicated, 4th conviction | 10 – 30 years | N | N | All but 2 years | B |
| 14:98 | Operate vehicle while intoxicated, 3rd conviction, previously received parole, probation, or suspension of sentence etc. | 2 – 5 years | N | N | All but 2 years | E |
| 14:98 | Operate vehicle while intoxicated, 3rd conviction | 1 – 5 years | N | N | All but 1 year | E |
| 14:98 | Operate vehicle while intoxicated, 3rd conviction, if child endangerment law applies | 1 – 5 years | N | N | None | E |
| 14:98 | Operate vehicle while intoxicated, 2nd conviction, if child endangerment law applies | 1 – 5 years | N | N | All but 1 year | E |
| 14:98.C.(3) | Operate vehicle while intoxicated, 2nd conviction, first offense was vehicular homicide or negligent injuring | 1 – 5 years | N | N | All but 6 months | E |
| 14:99.1 | Hit and run damaging a potable waterline | 0 – 5 years | N | N | All | E |
| 14:100 | Hit and run driving, when death or serious injury occurs | 0 – 10 years | N | N | All | D |
| 14:100 | Hit and run driving, when death or serious injury occurs, driver knew that he was involved in accident, driver had previously been convicted of DUI or vehicular homicide crime | 5 – 20 years | N | N | All | C |
| 14:101.1 | Purchase or sale of human organs | 0 – 5 years | N | N | All | E |
| 14:102.1 | Simple cruelty to animals, 2nd conviction | 1 – 10 years | N | N | All | D |
| 14:102.5 | Dogfighting: training/possessing dogs for fighting | 1 – 10 years | N | N | All | D |
| 14:102.8 | Injuring or killing of a police animal | 1 – 3 years | N | N | All | E |
| 14:102.8 | Injuring or killing of a police animals, 2nd conviction | 5 – 7 years | N | N | All | D |
| 14:102.22 | Haboring/concealing animal which has bitten a human | 0 – 2 years | N | N | All | E |
| 14:102.23 | Cockfighting, 2nd offense | 1 – 3 years | N | N | At least 6 months | E |
| 14:102.1.B(1) | Aggravated cruelty to animals | 1 – 10 years | N | N | All | D |
| 14:104 | Keeping a disorderly place, for purposes of prostitution of a person if under age 14 | 25 – 50 years | N | N | All | D |
| 14:104 | Keeping a disorderly place, for purposes of prostitution of a person under age 18 | 15 – 50 years | N | N | All | B |
| 14:105 | Letting a disorderly place, for purposes of prostitution of a person if under age 14 | 25 – 50 years | N | N | All | D |
| 14:105 | Letting a disorderly place, for purposes of prostitution of a person if under age 18 | 15 – 50 years | N | N | All | B |
| 14:106 | Obscenity, first and second | 6 months – 3 years | N | N | All | E |
| 14:106 | Obscenity, third | 2 – 5 years | N | N | All | E |
| 14:106.1 | Promotion of obscene devices | 6 months – 3 years | N | N | All | E |
| 14:106.A(5) | Obscenity, victim unmarried and under 17 | 2 – 5 years | N | Y | None | E |
| 14:107.1 | Ritualistic acts | 0 – 5 years | N | N | All | E |
| 14:107.1 | Ritualistic acts, involving torture or mutilation | 5 – 25 years | N | N | All | C |

| Statute | Offense | Current Range | Violent Crime (14:2) | Sex Crime (15:541) | Ability to suspend | Felony Class |
|---|---|---|---|---|---|---|
| 14:107.2 | Hate crime, underlying offense is felony | 0 – 5 years | N | N | All | E |
| 14:108.2 | Resisting police force or violence | 1 – 3 years | N | N | All | E |
| 14:108.1C | Aggravated flight from an officer | 0 – 5 years | Y | N | All | E |
| 14:108.1C | Aggravated flight from an officer, resulting in bodily harm | 0 – 10 years | Y | N | All | D |
| 14:110 | Simple escape from prison | 2 – 5 years | N | N | All | E |
| 14:110 | Simple escape from prison, home incarceration program | 0.5 – 5 years | N | N | All | E |
| 14:110 | Aggravated escape from prison | 5 – 10 years | N | N | All | D |
| 14:110.1 | Jumping bail, felonies | 0 – 2 years | N | N | All | E |
| 14:110.1.1 | Out of state bail jumping | 1 – 3 years | N | N | All | E |
| 14:110.1.2 | Providing false, nonexistent, or incomplete declaration of residence for bail, underlying offense is a felony | 0 – 2 years | N | N | All | E |
| 14:110.3 | Tampering with surveillance, accounting, inventory, or monitoring systems, if the system is on the premise of a correctional facility | 0 – 2 years | N | N | All | E |
| 14:111 | Assisting escape | 0 – 5 years | N | N | All | E |
| 14:112.1 | False personation of a peace officer | 0 – 2 years | N | N | All | E |
| 14:112.3 | Fraudelent portrayal of a law enforcement officer or fire figher | 0 – 2 years | N | N | All | E |
| 14:113 | Treason | Capital | N | N | None | Capital |
| 14:114 | Misprison of treason | 0 – 10 years | N | N | All | D |
| 14:115 | Criminal anarchy | 0 – 10 years | N | N | All | D |
| 14:118 | Public bribery | 0 – 5 years | N | N | All | E |
| 14:118.1 | Bribery of sports participants | 1 – 5 years | N | N | All | E |
| 14:120 | Corrupt influencing | 0 – 10 years | N | N | All | D |
| 14:122 | Public intimidation | 0 – 5 years | N | N | All | E |
| 14:123 | Perjury, all other cases | 0 – 5 years | N | N | All | E |
| 14:123 | Perjury, hard labor trial | 1 – 20 years | N | N | All | C |
| 14:123 | Perjury, death or life sentence trial | 5 – 40 years | N | N | All | B |
| 14:125.2 | False statements concerning paternity | 0 – 5 years | N | N | All | E |
| 14:126.1 | False swearing for purpose of violating public health or safety | 1 – 5 years | N | N | All | E |
| 14:126.2 | False swearing concerning denial of constitutional rights | 1 – 5 years | N | N | All | E |
| 14:126.3.1 | Unauthorized participation in medical assistance programs,  when an underlying criminal conviction is a felony | 0 – 5 years | N | N | All | E |
| 14:128.1 | Terrorism, intentional aggravated criminal damage to property | 1 – 30 years | Y | N | All | F |
| 14:128.1 | Terrorism, aggravated arson | 6 – 40 years | Y | N | All but 4 years | F |
| 14:128.1 | Terrorism, kidnapping | 0 – 10  years | Y | N | None | F |
| 14:128.1 | Terrorism, intentional killing of a human being | Life | Y | N | None | Life |
| 14:128.1 | Terrorism, intentional infliction of bodily harm | 0 – 30 years | Y | N | None | F |
| 14:128.2 | Aiding others in terrorism, if aided act punishable by life imprisonment | 10 – 50 years | N | N | None | F |
| 14:128.2 | Aiding others in terrorism, other cases | Not more than 1/2 of r | N | N | All | F |
| 14:129 | Jury tampering, civil case | 0 – 5 years | N | N | All | E |
| 14:129 | Jury tampering, other criminal cases | In same manner as offe | N | N | All | F |
| 14:129 | Jury tampering, criminal case involving death or life sentence | 0 – 99 years | N | N | All | B |
| 14:129.1 | Intimidating, impeding witnesses, civil case | 0 – 5 years | N | N | All | E |
| 14:129.1 | Intimidating, impeding witnesses, other criminal cases | 0 – 5 years | N | N | All | E |
| 14:129.1 | Intimidating, impeding witnesses, criminal case involving hard labor | 0 – 20 years | N | N | All | C |
| 14:129.1 | Intimidating, impeding witnesses, criminal case involving death or life | 0 – 40 years | N | N | All | B |
| 14:130.1 | Obstruction of justice, when the criminal proceeding involves any other crime | 0 – 5 years | N | N | All | E |
| 14:130.1.B(1) | Obstruction of justice, when the criminal proceeding involves a sentence of life or death | 0 – 40 years | N | N | All | B |
| 14:130.1.B(2) | Obstruction of justice, when the criminal proceeding involves a crime at hard labor for any sentence less than life | 0 – 20 years | N | N | All | C |
| 14:131 | Compounding a felony | 0 – 2 years | N | N | All | E |
| 14:132 | Injuring public records, first degree | 0 – 5 years | N | N | All | E |
| 14:133 | Filing or maintaining false public records | 0 – 5 years | N | N | All | E |
| 14:133.6 | Filing a false lean against a law enforcement or court officer | 0 – 2 years | N | N | All | E |
| 14:134 | Malfeasance in office | 0 – 5 years | N | N | All | E |
| 14:134.1 | Malfeasance in office, sexual conduct prohibited with persons sentenced to DOC | 0 – 10 years | N | N | All | D |
| 14:134.2 | Malfeasance in officer, tampering with evidence | 0 – 3 years | N | N | All | E |
| 14:134.3 | Abuse of office | 1 – 5 years | N | N | All | E |
| 14:135 | Public salary deduction | 0 – 5 years | N | N | All | E |
| 14:136 | Public salary extortion | 0 – 5 years | N | N | All | E |
| 14:138 | Public payroll fraud | 0 – 2 years | N | N | All | E |
| 14:139 | Political payroll padding | 0 – 5 years | N | N | All | E |
| 14:139.1 | Political payroll padding by sheriff | 0 – 5 years | N | N | All | E |
| 14:139.2 | Transfer of capital assets of court clerk's office prohibited | 0 – 5 years | N | N | All | E |
| 14:140 | Public contract fraud | 0 – 5 years | N | N | All | E |
| 14:141 | Prohibited splitting of profits, fees, or commissions | 0 – 10 years | N | N | All | E |
| 14:201 | Collateral securites, unauthorized use or withdrawal prohibited | 0 – 10 years | N | N | All | D |
| 14:202 | Contractors, misapplication of payments prohibited, amount greater than $1,000 | 0 – 5 years | N | N | All | E |
| 14:202.1 | Residential contractor fraud, taking valued $1,500 or more | 0 – 10 years | N | N | All | D |
| 14:202.1 | Residential contractor fraud, taking valued $500 - $1,500 | 0 – 5 years | N | N | All | E |
| 14:204.1 | Fire-raising on lands in a correctional facility | 0 – 3 years | N | N | All | E |
| 14:207 | Alteration of motor vehicles with altered VIN numbers | 0 – 2 years | N | N | All | E |
| 14:207 | Alteration of motor vehicles with altered VIN numbers, second offense | 0 – 4 years | N | N | All | E |
| 14:207 | Alternation of motor vehicles with altered VIN numbers, 3rd and subsequent offense | 3 – 5 years | N | N | All | E |

| Statute | Offense | Current Range | Violent Crime (14:2) | Sex Crime (15:541) | Ability to suspend | Felony Class |
|---|---|---|---|---|---|---|
| 14:209 | Seals, breaking prohibited | 0 – 2 years | N | N | All | E |
| 14:211 | Sale of forest products, $500 or more | 0 – 10 years | N | N | All | D |
| 14:218 | Seafood sales and purchases; commercial license required, third offense | 6 months – 2 years | N | N | All | E |
| 14:220 | Leased vehicles, obtaining by false representation | 0 – 5 years | N | N | All | E |
| 14:220.1 | Leased movables, obtaining by false representation, $1000 or more | 0 – 2 years | N | N | All | E |
| 14:221 | Avoiding payment for telecommunications, 2nd offense | 0 – 5 years | N | N | All | E |
| 14:222.1 | Unauthorized interception of cable services, disrupt services , or 2nd or subsequent conviction | 0 – 2 years | N | N | All | E |
| 14:222.2 | Cellular telephone counterfeiting, possession, 2nd or subsequent conviction | 0 – 10 years | N | N | All | D |
| 14:222.2 | Cellular telephone counterfeiting, possession | 0 – 2 years | N | N | All | E |
| 14:222.2 | Cellular telephone counterfeiting, sale | 2 – 5 years | N | N | All | E |
| 14:222.2 | Cellular telephone counterfeiting, possession of interception instrument | 5 – 7 years | N | N | All | D |
| 14:222.3 | Unlawful use of a cellular tracking device | 0 – 2 years | N | N | All | E |
| 14:223 | Sound reproductions without consent, 100 or more phonorecords | 0 – 5 years | N | N | All | E |
| 14:223 | Sound reproductions without consent, 2nd offense | 2 – 5 years | N | N | All | E |
| 14:223.5 | Recording of performances without consent, 100 or more phonorecords | 0 – 5 years | N | N | All | E |
| 14:223.5 | Recording of performances without consent, 2nd or subsequent | 2 – 5 years | N | N | All | E |
| 14:223.6 | Sale of improperly labeled articles, 100 or more  phonorecords | 0 – 5 years | N | N | All | E |
| 14:223.6 | Sale of improperly labeled articles, 2nd or subsequent offense | 2 – 5 years | N | N | All | E |
| 14:223.7 | Counterfeiting or possession counterfeit labels, 100 or more labels | 0 – 5 years | N | N | All | E |
| 14:223.7 | Counterfeiting or possession counterfeit labels, 2nd or subsequent offense | 2 – 5 years | N | N | All | E |
| 14:223.8 | Possession tools for manufacturing unauthorized sound recording, 1st offense | 0 – 2 years | N | N | All | E |
| 14:223.8 | Possession tools for manufacturing unauthorized sound recording, 2nd offense | 2 – 5 years | N | N | All | E |
| 14:223.9 | Unlawful operation of a recording device, 2nd and subsequent offense | 0 – 5 years | N | N | All | E |
| 14:225.B(2) | Institutional vandalism, $500 - $50,000 | 0 – 2 years | N | N | All | E |
| 14:225.B(3) | Institutional vandalism, $50,000+ | 1 – 10 years | N | N | All | D |
| 14:229 | Illegal use of counterfeit trademark | 0 – 5 years | N | N | All | E |
| 14:230 | Money laundering, $3,000 - $20,000 | 2 – 10  years | N | N | All | D |
| 14:230 | Money laundering, $20,000 - $100,000 | 2 – 20 years | N | N | All | C |
| 14:230 | Money laundering, $100,000+ | 5 – 99 years | N | N | All | B |
| 14:230 | Air bag fraud, violation for manufacture of bags, $100,000 or more | 1 – 5 years | N | N | All | E |
| 14:230 | Air bag fraud, $5,000-$100,000 | 6 months-2 years | N | N | All | F |
| 14:282 | Operation of places of prostitution, under the age of 18 | 15 – 50 years | N | Y | All | F |
| 14:282 | Operation of places of prostitution, under the age of 14 | 25 – 50 years | N | Y | All | F |
| 14:283 | Video voyeurism, 2nd and subsequent offense | 6 months – 3 years | N | Y | None | |
| 14:283 | Video voyeurism, involving sexual intercourse | 1 – 5 years | N | Y | All | E |
| 14:283 | Video voyeurism | 0 – 2 years | N | Y | All | E |
| 14:283 | Video voyeurism, victim under age 17 | 2 – 10 years | N | Y | None | D |
| 14:283.2 | Non consensual disclosure of private image | 0 – 2 years | N | N | All | E |
| 14:285 | Telephone communications, harassment, second and subsequent offense | 0 – 2 years | N | N | All | E |
| 14:286 | Sale of minor children | 0 – 10 years | N | N | All | D |
| 14:313 | Sex offenders wearing of hoods, masks, or disguises | 6 months – 3 years | N | N | All | E |
| 14:313.1 | Sex offenders distributing candy on Halloween | 6 months – 3 years | N | N | All | E |
| 14:327 | Obstructing a fireman, equivalent to simple battery, aggravated assault, or false imprisonment | 2 – 10 years | N | N | All | D |
| 14:327 | Obstructing a fireman, all other cases | 6 months – 5 years | N | N | All | E |
| 14:327 | Obstructing a fireman, attempted obstruction | Not less than 2/3 of the | N | N | All | F |
| 14:327 | Obstructing a fireman, equivalent to aggravated battery | 5 – 20 years | N | N | All | C |
| 14:327 | Obstructing a fireman, equivalent to manslaughter | 10 – 35 years | N | N | All | B |
| 14:329.1 | Riot, if bodily injury or significant property damage occurs | 0 – 5 years | N | N | All | E |
| 14:329.2 | Inciting a riot, if bodily injury or significant property damage  occurs | 0 – 5 years | N | N | All | E |
| 14:329.2 | Inciting a riot, if death occurs | 0 – 21 years | N | N | All | C |
| 14:329.3 | Command to disperse, failure to comply, if bodily injury or significant property damage occurs | 0 – 5 years | N | N | All | E |
| 14:329.3 | Command to disperse, failure to comply, if death occurs | 0 – 21 years | N | N | All | C |
| 14:329.4 | Wrongful use of public property, if bodily injury or property damage occurs | 0 – 5 years | N | N | All | E |
| 14:329.4 | Wrongful use of public property, if death occurs | 0 – 21 years | N | N | All | C |
| 14:329.5 | Interference with educational process, if bodily injury or significant property damage occurs | 0 – 5 years | N | N | All | E |
| 14:329.5 | Interference with educational process, if death occurs | 0 – 21 years | N | N | All | C |
| 14:329.5 | Interfering with law enforcement investigation, if bodily injurty or property damage exceeding $5000 | 0 – 5 years | N | N | All | E |
| 14:329.7 | Interfering with law enforcement investigation, if death occurs | 0 – 21 years | N | N | All | C |
| 14:336 | Unlawful aiming of laser at an aircraft | 1 – 5 years | N | N | All | E |
| 14:336 | Unlawful aiming of laser at an aircraft, 2nd conviction | 2 – 10 years | N | N | All | D |
| 14:356 | Sheriffs, solicitation of legal business | 0 – 2 years | N | N | All | E |
| 14:356.1 | Unlawful referrals by wrecker drivers | 0 – 5 years | N | N | All | E |
| 14:356.3 | Unlawful referrals by ambulance drivers and others | 0 – 5 years | N | N | All | E |
| 14:362 | Failure to register orgnaizations | 0 – 5 years | N | N | All | E |
| 14:363 | Failure to register individuals | 0 – 5 years | N | N | All | E |
| 14:367 | Labeling of propaganda | 0 – 5 years | N | N | All | E |
| 14:375 | Illegal consideration for criminal bail bonds, amount $100 - $499 | 0 – 2 years | N | N | All | E |
| 14:375 | Illega consideration for criminal bail bonds, amount $500+ | 0 – 5 years | N | N | All | E |
| 14:388 | False statements in affidavid as perjury, all other cases | 0 – 5 years | N | N | All | E |
| 14:388 | False statements in affidavid as perjury, necessarily hard labor, less than life sentence | 1 – 20 years | N | N | All | C |

| Statute | Offense | Current Range | Violent Crime (14:2) | Sex Crime (15:541) | Ability to suspend | Felony Class |
|---|---|---|---|---|---|---|
| 14:388 | False statements in affidavid as perjury, life or death sentence | 5 – 40 years | N | N | All | B |
| 14:402.1 | Taking contraband to state owned hospitals | 0 – 3 years | N | N | All | E |
| 14:402 | Taking contraband to a correctional facility | 0 – 5 years | N | N | All | E |
| 14:404 | Self mutilation by a prisoner | 0 –  2 years | N | N | All | E |
| 14:511 | Loansharking | 1 – 5 years | N | N | All | E |
| 14:512 | Aggravated loansharking | 5 – 30 years | N | N | All | B |
| 14:1061.27 | Partial birth abortion | 1 – 10 years | N | N | All | D |
| 14:402A | Introduction of contraband | 0 – 5 years | N | N | All | E |
| 14:402B | Possession of contraband | 0 – 5 years | N | N | All | E |
| 15:542.1.4 | Sex offender registration violation, 2nd and subsequent | 5 – 20 years | N | N | None | C |
| 15:542.1.4 | Sex offender registration violation, first | 2 – 10 years | N | N | None | E |
| 15:553 | Prohibition of employment - sex offender | 5 – 10 years | N | N | All but 3 years | D |
| 15:560.4 | Failure to comply with electronic monitoring of sex offenders, 2nd or subsequent conviction | 5 – 20 years | N | N | None | C |
| 15:560.4 | Failure to comply with electronic monitoring of sex offenders | 2 – 10 years | N | N | None | D |
| 15:561.7 | Failure to comply with provisions of supervised released, 2nd or subsequent conviction | 5 – 20 years | N | N | None | C |
| 15:561.7 | Failure to comply with provisions of supervised release, 1st conviction | 2 – 10 years | N | N | None | D |
| 15:1303 | Interception and disclosure of wire communication | 0 – 10 years | N | N | All | D |
| 15:1304 | Manufacture, distribution of wire, electronic, or oral communication intercepting devices prohibited | 2 – 10 years | N | N | All | D |
| 15:1352 | Racketeering | 0 – 50 years | N | N | All but 5 | B |
| 15:1403 | Criminal gang activity, felony committed for the benefit of a criminal street gang | 1 – 1/2 of penalty othe | N | N | All | F |
| 21:21 | Fraud in obtaining accomodations | 0 – 2 years | N | N | All | E |
| 22:1924 | Insurance fraud | 0 – 5 years | N | N | All | E |
| 22:1925 | Auto fraud | 0 – 5 years | N | N | All | E |
| 23:1208 | Misrepresentations concerning benefit payments, $10,000 or more | 0 – 10 years | N | N | All | D |
| 23:1208 | Misrepresentations conerning benefit payments, $2,500 to $10,000 | 0 – 5 years | N | N | All | E |
| 27:99 | Making false statements related to gaming | 0 – 10 years | N | N | All | D |
| 32:724 | Possession of a stolen vehicle | 1 – 5 years | N | N | All | E |
| 32:1502 | Reckless handling of hazardous material | 5 – 10 years | N | N | All | D |
| 37:219 | Unlawful payments by attorneys | 3 months – 5 years | N | N | All | E |
| 37:788 | Practice dentistry without license | 0 – 5 years | N | N | All | E |
| 37:925 | Unlicensed practicing registered nurse | 0 – 5 years | N | N | All | E |
| 38:211 | Cutting or destroying levees | 0 – 10 years | N | N | All | D |
| 40:962.1.1 | Possession of more than 12 grams of ephedrine | 0 – 10 years | N | N | All | E |
| 40:966 | Manufacture, distribution, PWID of heroin, 1st offense | 10 - 50 years | N | N | All but 10 years | See Recommendation 5 |
| 40:966 | Manufacture, distribution, PWID of heroin, 2nd offense | 10 - 99 years | N | N | All but 10 years | See Recommendation 5 |
| 40:966 | Manufacture, distribution, PWID schedule I narcotics (excluding heroin) | 10 - 50 years | N | N | All but 10 years | See Recommendation 5 |
| 40:966 | Manufacture, distribution, PWID schedule I non narcotics (excluding marijuana and synthetic marijuana) | 5 - 30 years | N | N | All but 5 years | See Recommendation 5 |
| 40:966 | Manufacture, distribution, PWID schedule I, marijuana and synthetic marijuana | 5 - 30 years | N | N | All but 5 years | See Recommendation 5 |
| 40:966 | Possession of a schedule I drug, heroin and other narcotics, <28g | 4 - 10 years | N | N | All | See Recommendation 5 |
| 40:966 | Possession of a schedule I drug, heroin and other narcotics, 28g-200g | 5 - 30 years | N | N | All but 5 years | See Recommendation 5 |
| 40:966 | Possession of a schedule I drug, heroin and other narcotics, 200g-400g | 10 - 30 years | N | N | All but 10 years | See Recommendation 5 |
| 40:966 | Possession of a schedule I drug, heroin and other narcotics, 400g-2000g | 15 - 30 years | N | N | All but 10 years | See Recommendation 5 |
| 40:966 | Possession of non narcotics, excluding marijuana and phencyclidine, any weight | 0 - 5 years | N | N | All | See Recommendation 5 |
| 40:966 | Possession of phencyclidine, any weight | 5 - 20 years | N | N | All | See Recommendation 5 |
| 40:966 | Possession of marijuana, 2nd offense, 14g-2.5lbs | 0 - 2 years | N | N | All | See Recommendation 5 |
| 40:966 | Possession of marijuana, 4th + offense, 14g-2.5lbs | 0 - 8 years | N | N | All | See Recommendation 5 |
| 40:966 | Possession of marijuana or synthetic marijuana  2.5lbs - 60lbs | 2 - 10 years | N | N | All but 2 years | See Recommendation 5 |
| 40:966 | Possession of marijuana or synthetic marijuana 60lbs- 2000lbs | 5 - 30 years | N | N | All but 5 years | See Recommendation 5 |
| 40:966 | Possession of marijuana or synthetics marijuana 2k-10klbs | 10 - 40 years | N | N | All but 10 years | See Recommendation 5 |
| 40:966 | Possession of marijuana or synthetics marijuana 10klbs+ | 25 - 40 years | N | N | All but 25 years | See Recommendation 5 |
| 40:966 | Possession of synthetic marijuana 0 - 2.5lbs, 2nd offense | 0 - 10 years | N | N | All | See Recommendation 5 |
| 40:966 | Possession of synthetic marijuana 0 - 2.5lbs, 3rd offense | 0 - 20 years | N | N | All | See Recommendation 5 |
| 40:967 | Possession of schedule II substance, cocaine, amphetamine, methamphetamine, GHB <28g | 0 - 5 years | N | N | All | See Recommendation 5 |
| 40:967 | Possession of schedule II substance, cocaine, amphetamine, methamphetamine, GHB 28-200g | 5 - 30 years | N | N | All but 5 years | See Recommendation 5 |
| 40:967 | Possession of schedule II substance, cocaine, amphetamine, methamphetamine, GHB 200-400g | 10 - 30 years | N | N | All but 10 years | See Recommendation 5 |
| 40:967 | Possession of schedule II substance, cocaine, amphetamine, methamphetamine, GHB 400+g | 15 - 30 years | N | N | All but 15 years | See Recommendation 5 |
| 40:967 | Possession of schedule II substance, Pentzocine, any amount | 2 - 5 years | N | N | All | See Recommendation 5 |
| 40:967 | Possession of schedule II substance, all other substances, any amount | 0 - 5 years | N | N | All | See Recommendation 5 |
| 40:967 | Manufacture, distribution, PWID schedule II narcotics, any amount | 2 - 30 years | N | N | All but 2 years | See Recommendation 5 |
| 40:967 | Manufacture, distribution, PWID schedule II, cocaine, methadone, amphetamine, meth, any amount | 10 - 30 years | N | N | All but 10 years | See Recommendation 5 |
| 40:967 | Production of methamphetamine in from of minor <12 | 15 - 30 years | N | N | All but 15 years | See Recommendation 5 |
| 40:967 | Manufacture, distribution, PWID schedule II, Pentazocine | 2 - 10 years | N | N | All but 2 years | See Recommendation 5 |
| 40:967 | Manufacture, distribution, PWID, all otherschedule II substances, any amount | 0 - 10 years | N | N | All | See Recommendation 5 |
| 40:968 | Distribute schedule III | 0 - 10 years | N | N | All | See Recommendation 5 |
| 40:968 | Manufacture/grow schedule III drugs | 0 - 10 years | N | N | All | See Recommendation 5 |
| 40:968 | Possess schedule III drug | 0 - 5 years | N | N | All | See Recommendation 5 |
| 40:968 | Possession with intent to distribute schedule III | 0 - 10 years | N | N | All | See Recommendation 5 |
| 40:969 | Distribute schedule IV, not including flunitrazepam | 0 - 10 years | N | N | All | See Recommendation 5 |

| Statute | Offense | Current Range | Violent Crime (14:2) | Sex Crime (15:541) | Ability to suspend | Felony Class |
|---------|---------|---------------|:---:|:---:|---------|-------------|
| 40:969 | Distribute flunitrazepam | 5 - 30 years | N | N | All | See Recommendation 5 |
| 40:969 | Possession with intent to distribute schedule IV, not including flunitrazepam | 0 - 10 years | N | N | All | See Recommendation 5 |
| 40:969 | Possession with intent to distribute flunitrazepam | 5 - 30 years | N | N | All | See Recommendation 5 |
| 40:969 | Possession of flunitrazepam | 0 - 10 years | N | N | All | See Recommendation 5 |
| 40:969 | Possession of schedule IV drug, not including flunitrazepam | 0 - 5 years | N | N | All | See Recommendation 5 |
| 40:969 | Distribution of schedule V | 0 - 5 years | N | N | All | See Recommendation 5 |
| 40:969 | Possession of  schedule V | 0 - 5 years | N | N | All | See Recommendation 5 |
| 40:971.1 | False representation of a controlled dangerous substance | 0 - 5 years | N | N | All | E |
| 40:981 | Distribution to persons under 18 of any other controlled dangerous substance | Up to 1.5x underlying maximum | N | N | All | F |
| 40:981 | Distribution to persons under 18 which is Schedule I or II narcotic substance | 5 - 30 years | N | N | All | C |
| 40:981.1 | Distribution of CDS to a student | Up to 1.5x underlying maximum | N | N | All | F |
| 40:981.2 | Solicitation of minors to distribute cocaine | 10 - 30 years | N | N | All but 10 years | C |
| 40:981.3 | Violation of controlled dangerous substances law near school | Up to 1.5x underlying maximum | N | N | None | F |
| 40:981.3A(3) | Violation of controlled dangerous substances law near public housing authority | Up to 1.5x underlying maximum | N | N | None | F |
| 40:983 | Operation of a clandestine lab | 5 - 15 years | N | N | All | D |
| 40:1031 | Possession of drug paraphenalia, third or subsequent offense | 0 - 2 years | N | N | None | E |
| 40:1041 | Transactions involving proceeds from drug offense | 0 - 10 years | N | N | All | E |
| 40:1049 | Transactions involving proceeds from drug offense | 0 - 10 years | N | N | All | E |
| 40:1752 | Unlawful handling of a machine gun, first violation | 0 - 5 years | N | N | All | E |
| 40:1752 | Unlawful handling of a machine gune, second or subsequent violation | 5 - 10 years | N | N | All | D |
| 40:1781 | Possession of an illegal weapon, second or subsequent violation | 0 - 5 years | N | N | All | E |
| 40:1781 | Possession of an illegal weapon, first violation | 5 - 10 years | N | N | All | D |
| 40:1785 | Possession of an illegal weapon, first violation | 0 – 5 years | N | N | All | E |
| 40:1785 | Possession of an illegal weapon, second or subsequent violation | 5 – 10  years | N | N | All | D |
| 40:1788 | Obliterating, removing, changing or alterning manufacturer identification mark, first offense | 1 - 5 years | N | N | All | E |
| 40:1788 | Obliterating, removing, changing or alterning manufacturer identification mark, second or subsequent offense | 5 - 10 years | N | N | All | D |
| 40:1791 | Possession of a weapon with a silence, first violation | 0 - 5 years | N | N | All | E |
| 40:1791 | Possession of a weapon with a  silencer, second or subsequent violation | 5 - 10 years | N | N | All | D |
| 40:1792 | Possession of unidentifiable firearm | 5 years | N | N | None | E |
| 47:9071 | Falsifies or alters lottery ticket | 5 - 20 years | N | N | All but 5 years | C |